Exhibit A

Fulton County Superior Court
***EFILED***TV
Date: 1/14/2021 12:47 AM
Cathelene Robinson, Clerk



# IN THE SUPERIOR COURT OF FULTON COUNTY, GEORGIA
### 136 PRYOR STREET, ROOM C-103, ATLANTA, GEORGIA 30303
## SUMMONS

FT Global Capital, Inc. ) Case
                        ) No.:_____  2021CV344614
                        )
_____ )
        **Plaintiff,**     )
                        )
        **vs.**            )   Served Date: 1/14/2021  Time: 10:09 a
                        )   James Kady #065
_____ )   2nd Judicial Circuit
Future Fintech Group, Inc. )
        **Defendant**      )   JK
                        )
                        )
                        )

TO THE ABOVE NAMED DEFENDANT(S):

You are hereby summoned and required to file electronically with the Clerk of said Court at
https://efilega.tylerhost.net/ofsweb and serve upon plaintiff's attorney, whose name and address is:

Matthew H Schwartz
Schwartz Law Center, LLC
2985 Gordy Parkway, Suite 550        Telephone: (678) 401-2400
Marietta, Georgia 30066              Email: matt@schwartzlawgroup.com

An answer to the complaint which is herewith served upon you, within 30 days after service of this
summons upon you, exclusive of the day of service; unless proof of service of this complaint is not filed
within five (5) business days of such service. Then time to answer shall not commence until such proof
of service has been filed. **IF YOU FAIL TO DO SO, JUDGMENT BY DEFAULT WILL BE TAKEN AGAINST YOU
FOR THE RELIEF DEMANDED IN THE COMPLAINT.**

This _____1/14/2021_____ day of _____, 20 _____

                              Honorable Cathelene "Tina" Robinson
                              Clerk of Superior Court
                              By_____
                                        Deputy Clerk

To defendant upon whom this petition is served:
This copy of complaint and summons was served upon you _____, 20_____

                                              _____
                                                  Deputy Sherriff

Instructions: Attach addendum sheet for additional parties if needed, make notation on this sheet if addendum is used

Fulton County Superior Court
***EFILED***TV
Date: 1/14/2021 12:47 AM
Cathelene Robinson, Clerk

## General Civil and Domestic Relations Case Filing Information Form

■ Superior or ☐ State Court of Fulton _____ County

| For Clerk Use Only | |
|---|---|
| Date Filed **1/14/2021** | Case Number **2021CV344614** |
| **MM-DD-YYYY** | |

**Plaintiff(s)**
FT Global Capital, Inc.

| Last | First | Middle I. | Suffix | Prefix |
|---|---|---|---|---|
| Last | First | Middle I. | Suffix | Prefix |
| Last | First | Middle I. | Suffix | Prefix |
| Last | First | Middle I. | Suffix | Prefix |

**Defendant(s)**
Future Fintech Group, Inc.

| Last | First | Middle I. | Suffix | Prefix |
|---|---|---|---|---|
| Last | First | Middle I. | Suffix | Prefix |
| Last | First | Middle I. | Suffix | Prefix |
| Last | First | Middle I. | Suffix | Prefix |

**Plaintiff's Attorney** Matthew H. Schwartz   **State Bar Number** 307111   **Self-Represented** ☐

### Check one case type and one sub-type in the same box (if a sub-type applies):

**General Civil Cases**
- ☐ Automobile Tort
- ☐ Civil Appeal
- ☐ Contempt/Modification/Other Post-Judgment
- ☑ Contract
- ☐ Garnishment
- ☐ General Tort
- ☐ Habeas Corpus
- ☐ Injunction/Mandamus/Other Writ
- ☐ Landlord/Tenant
- ☐ Medical Malpractice Tort
- ☐ Product Liability Tort
- ☐ Real Property
- ☐ Restraining Petition
- ☐ Other General Civil

**Domestic Relations Cases**
- ☐ Adoption
- ☐ Contempt
  - ☐ Non-payment of child support, medical support, or alimony
- ☐ Dissolution/Divorce/Separate Maintenance/Alimony
- ☐ Family Violence Petition
- ☐ Modification
  - ☐ Custody/Parenting Time/Visitation
- ☐ Paternity/Legitimation
- ☐ Support – IV-D
- ☐ Support – Private (non-IV-D)
- ☐ Other Domestic Relations

☐ Check if the action is related to another action pending or previously pending in this court involving some or all of the same: parties, subject matter, or factual issues. If so, provide a case number for each.

_____     _____
**Case Number**          **Case Number**

☑ I hereby certify that the documents in this filing, including attachments and exhibits, satisfy the requirements for redaction of personal or confidential information in OCGA § 9-11-7.1.

☐ Is a foreign language or sign-language interpreter needed in this case? If so, provide the language(s) required.

_____ **Language(s) Required**

☐ Do you or your client need any disability accommodations? If so, please describe the accommodation request.

Version 1.1.20

Fulton County Superior Court
***EFILED***TV
Date: 1/14/2021 12:47 AM
Cathelene Robinson, Clerk

## FULTON COUNTY SUPERIOR COURT

## STATE OF GEORGIA

| | | |
|---|---|---|
| **FT GLOBAL CAPITAL, INC.** | * | |
| **Plaintiff,** | * | |
| **v.** | * | **CASE NO:** |
| | * | 2021CV344614 |
| | * | |
| **FUTURE FINTECH GROUP, INC.:** | * | |
| **Defendant.** | * | |
| | * | |

# COMPLAINT FOR BREACH OF CONTRACT AND FRAUD

COMES NOW FT GLOBAL CAPITAL, INC., Plaintiff in the above-styled action, and brings this Complaint for Breach of Contract, and shows the Court the following:

## *THE PARTIES*

1.

FT GLOBAL CAPITAL, INC. (hereinafter referred to as "Plaintiff") is a corporation organized under the laws of the State of Georgia and maintains its principal place of business in Fulton County, Georgia. Plaintiff is a Broker/Dealer that offers institutional investment banking, merger and acquisition and other financial services. Plaintiff's primary business is to provide capital raising service to US and China based companies which are publicly listed on US stock exchanges.

///

2.

Defendant FUTURE FINTECH GROUP. INC. (hereinafter referred to as "FFG") is a publicly traded corporation (NASDQ: FTFT) registered and qualified to do business in the State of Florida.  FFG maintains its business headquarters at 1177 Avenue of the Americas, Suite 5100, New York, New York 10036.  FFG operates a blockchain based online shopping mall platform, Chain Cloud Mall, an incubator for blockchain based application projects, a digital payment system known as "DCON" and the cross-border ecommerce platform known as "Nonogirl."

### *JURISDICTION AND VENUE*

3.

The parties are contractually bound and subject to the jurisdiction and venue of this Court pursuant to Section 9 of that certain agreement entered into between FFG and Plaintiff on or about July 28, 2020 and more commonly known as "*THE EXCLUSIVE PLACEMENT AGENT AGREEMENT*" (hereinafter referred to as the "Agreement"), a true and correct copy of which is attached hereto as Exhibit "A".  FFG may be personally served by effectuating service upon its registered agent for service of process as follows: Unisearch, Inc., 155 Office Plaza Drive, Tallahassee, Florida 32301.  This Court has subject matter jurisdiction over the claims asserted herein by Plaintiff.

///

///

///

### *FACTUAL BACKGROUND*

4.

On or about July 28, 2020, FFG entered into the Agreement with Plaintiff. Pursuant to

the Agreement, Plaintiff served as FFG's exclusive agent "in connection with any public or

private offering, financing or capital raising transaction" for a period of three (3) months. The

Agreement obligated FFG to pay Plaintiff compensation contingent upon whether FFG closed a

capital raising transaction that was facilitated by Plaintiff. In the event FFG closed a capital

raising transaction facilitated by Plaintiff, FFG would be obligated to pay Plaintiff a "Placement

Agent Fee" in an amount equal to ten percent (10%) of the aggregate offering price of the total

amount of capital received by FFG from the sale of its securities during the term of the

Agreement *plus* $30,000.00 (as reimbursement for expenses) *plus* $50,000.00 (as reimbursement

for attorneys' fees).

5.

Section 1(C) of the Agreement expressly provides that FFG must pay FFG the Placement

Agent Fee if, within twelve months of the termination of the Agreement (hereinafter referred to

as the "Tail Period"), FFG enters into any financing or capital raising transaction with any

investor that was introduced to FFG by Plaintiff.

6.

Plaintiff fully performed its obligations under the Agreement by using its best efforts to

secure financing and/or capitalization for FFG throughout the term of the Agreement. Towards

these ends, Plaintiff drew upon its good will, knowledge, expertise and proprietary data to

introduce FFG to as many as twelve (12) different potential investors and their affiliates. At least three of the investors introduced by Plaintiff have provided term sheets and engaged in active negotiations with FFG as a direct result Plaintiff's efforts. Plaintiff also incurred approximately $30,000.00 worth of expenses in connection with its services. As early as November 2, 2020, Plaintiff complied with its contractual duty to provide FFG with a list of investors to whom Plaintiff introduced FFG during the 3-month term of the Agreement (hereinafter referred to as the "Protected Investors List"). Moreover, Plaintiff sent numerous emails to FFG advising about the Protected Investors List between November 2, 2020 and December 24, 2020. FFG ignored these communications.

7.

On or about December 29, 2020, FFG consummated a securities purchase agreement with two investors that were identified in Plaintiff's Protected Investors List and to whom Plaintiff introduced FFG, or brought "Over-the-wall" during the term of the Agreement. FFG raised at least eight million dollars ($8,000,000.00) pursuant to this securities purchase agreement. On or about January 11, 2021, FFG entered into another securities purchase agreement with these same two investors by which FFG raised an additional fifteen million dollars ($15,000,000.00).

8.

Since the aforementioned securities purchase transactions occurred well within the Tail Period and were consummated with at least two entities identified in Plaintiff's Protected Investor List, FFG is now obligated to pay Plaintiff the Placement Agent Fee in the aggregate

sum of two million three hundred eighty thousand dollars ($2,380,000.00). Plaintiff has
demanded that FFG pay the Placement Agent Fee, however FFG steadfastly refuses to do so.

## *FIRST CAUSE OF ACTION*

## *BREACH OF CONTRACT*

9.

Plaintiff hereby incorporates all the allegations set forth in Paragraphs 1 through 8
as if fully set forth herein.

10.

Plaintiff fully performed on the Agreement.  Having consummated a securities
purchase transaction with two investors to whom Plaintiff introduced FFG during the
term of the Agreement, FFG is now contractually obligated to pay Plaintiff a Placement
in the amount of at least two million three hundred eighty thousand dollars
($2,380,000.00).  FFG's refusal to pay the Placement Agent Fee constitutes a material
breach of the Agreement.  This material breach is inexcusable.

11.

The Agreement expressly designated the identity of any and all potential investors
to whom Plaintiff introduced to FFG as confidential and proprietary information.
Furthermore, the Agreement expressly proscribed FFG from (i) disclosing this
confidential and proprietary information to any third parties; and (ii) using this

confidential and proprietary information for any purpose unrelated to Plaintiff's
performance under the Agreement (hereinafter referred to as the Restrictive Covenants").

12.

FFG violated the Restrictive Covenants on multiple occasions by both disclosing
Plaintiff's confidential and proprietary information to third parties and by using
Plaintiff's confidential and proprietary information in efforts to circumvent Plaintiff by
soliciting capital-raising transactions directly with Plaintiff's protected investors. FFG's
violations of the Restrictive Covenants constitute inexcusable material breaches of the
Agreement and have compromised Plaintiff's business relationships as well as Plaintiff's
ability to exploit the value of its proprietary and confidential information.

13.

As a direct result of FFG's various material breaches of the Agreement, Plaintiff
has suffered damages in an amount to be proven at trial but in no event less than two
million three hundred eighty thousand dollars ($2,380,000.00).

### *SECOND CAUSE OF ACTION*

### *BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING*

14.

Plaintiff hereby incorporates all the allegations set forth in Paragraphs 1 through
13 as if fully set forth herein.

15.

FFG deliberately undertook surreptitious measures to purposefully conceal the fact that it was consummating the securities purchase transaction with protected investors in a bad faith effort to circumvent its contractual duty to pay Plaintiff the Placement Agent Fee. Specifically, FFG (either on its own behalf or by and through its subsequent placement agent) directed Plaintiff's protected investors to use a different business entity or a different fund name through which to fund the transaction.

16.

Despite Plaintiff's numerous inquiries about the underlying facts of the securities purchase transaction, FFG has completely withheld and continues to conceal the truth about the entities from whom FFG secured its financing and the individuals working on behalf of those entities.

17.

FFG's fraudulent scheme to have Plaintiff's protected investors use alternate channels to consummate the securities purchase agreement is a breach of the covenant of good faith and fair dealing implied in the Agreement. It was specifically orchestrated to obviate FFG's contractual duty to pay the Placement Agent Fee, and was therefore an effort to defraud and oppress Plaintiff, and to deprive Plaintiff of compensation that it duly earned.

///

///

18.

As a direct result of FFG's breach of the implied covenant of good faith and fair dealing in the Agreement, Plaintiff has suffered damages in the amount of at least two million three hundred eighty thousand dollars ($2,380,000.00).

### THIRD CAUSE OF ACTION

### FRAUD

19.

Plaintiff hereby incorporates all the allegations set forth in Paragraphs 1 through 18 as if fully set forth herein.

20.

At or around the middle of July 2020, Plaintiff's principal, Patrick Ko, engaged in negotiations with several individuals representing FFG's interests for what ultimately became the Agreement.  These individuals included Shanchun Huang (FFG's Chief Executive Officer), Yongke Xue (FFG's Chairman), Lee Hoo  (FFG's Board Secretary), Long Yi (an FFG advisor) Advisor and Jeffrey Li (FFG's outside legal counsel). Throughout the middle of July 2020 and prior to the bilateral execution of the Agreement, each of the aforementioned individuals falsely misrepresented to Patrick Ko that FFG intended to compensate Plaintiff for the rendition of its services.  In fact, some or all of these individuals knew that FFG had no intention to compensate Plaintiff prior to

entering into the Agreement, and that FFG would undertake measures to circumvent any obligation to pay Plaintiff any compensation whatsoever in the event FFG finalized a financing or capital raising transaction with one of Plaintiff's protected investors.

21.

Plaintiff relied on FFG's misrepresentations and false promises of compensation to its detriment by both signing the Agreement and subsequently rendering the extremely valuable services it thereafter became obligated to perform. Had Plaintiff known that FFG had no intention of paying it compensation, Plaintiff would never have signed the Agreement, nor would Plaintiff have ever rendered the valuable services.

22.

As a result of FFG's fraudulent misrepresentations about its intention to pay Plaintiff compensation for services to be rendered and to honor the Agreement, Plaintiff has suffered damages in the amount of two million three hundred eighty thousand dollars ($2,80,000.00), to wit, the agreed upon liquidated value of the services rendered.

///

///

///

///

## *FOURTH CAUSE OF ACTION*

### *ATTORNEYS' FEES PURSUANT TO O.C.G.A. §13-6-11*

23.

Plaintiff hereby incorporates all the allegations set forth in Paragraphs 1 through 22 as if fully set forth herein.

24.

FFG has intentionally misrepresented its intentions about paying Plaintiff any compensation has since been duly earned and has also undertaken furtive efforts to conceal its contractual obligations to pay Plaintiff the obligatory Placement Agent Fee. Defendant's fraudulent misconduct and stubborn refusal to pay its contractual debt to Plaintiff has caused Plaintiff unnecessarily trouble and compelled Plaintiff to file suit and therefor to incur substantial legal expenses in connection therewith.

**WHEREFORE,** Plaintiff FT GLOBAL CAPITAL, INC. prays and respectfully demands verdict and judgment against Defendant FUTURE FINTECH GROUP, INC. as follows:

(a)     That Summons and Process issue and that the named Defendant be served with a copy of this Complaint and that Defendant be required to appear and answer;

(b)     That Plaintiff be awarded damages against Defendant for Defendant's breach of the Agreement and breach of the implied covenant of good faith and fair dealing in the amount according to proof but in no event less than of $2,380,000.00;

(c)     That Plaintiff be awarded punitive damages against Defendant for Defendant's breach of the implied covenant of good faith and fair dealing and for its fraudulent misconduct;

(d)     That Plaintiff be awarded all of its attorneys' fees incurred in connection with all

efforts to secure payment of the Placement Agent Fee incurred in connection with

all efforts to secure payment of the Placement Agent Fee pursuant to the

Agreement;

(e)     That Plaintiff be awarded all of its attorneys' fees incurred in connection with all

efforts to secure payment of the Placement Agent Fee incurred in connection with

all efforts to secure payment of the Placement Agent Fee pursuant to O.C.G.A.

§13-6-11;

(f)     That Plaintiff be awarded pre-judgment interest on all sums due and owing by

Defendant to Plaintiff through the date that judgment is entered against

Defendant;

(g)     That Plaintiff be granted such other and further relief as may be shown by the

evidence and the law, and as this Court may deem just and appropriate.

This 12th Day of January 2020                    */s/ Matthew H. Schwartz*

                                                Matthew H. Schwartz
                                                Attorney for Plaintiff FT Global Capital, Inc.
                                                Georgia Bar No. 307111

Schwartz Law Center, LLC
2985 Gordy Parkway
Suite 550
Marietta, Georgia 30066
(678) 401-2400
matt@schwartzlawgroup.com



SCHWARTZ LAW CENTER

2985 Gordy Parkway, Suite 550

Marietta, Georgia 30066-3078

Unisearch, Inc. (Registered Agent)

For: **Future Fintech Group, Inc.**

155 Office Plaza Drive

Tallahassee, Florida 32301



855510128131950

FULTON COUNTY SUPERIOR COURT

STATE OF GEORGIA

| | | | |
|---|---|---|---|
| **FT GLOBAL CAPITAL, INC.** | * | | |
| **Plaintiff,** | * | | |
| v. | * | **CASE NO:** | **2021CV344614** |
| | * | | |
| | * | | |
| **FUTURE FINTECH GROUP, INC.:** | * | | |
| **Defendant.** | * | | |
| | * | | |

## NOTICE OF FILING EXHIBIT "A" TO COMPLAINT

NOTICE is hereby given that FT GLOBAL CAPITAL, INC., Plaintiff in the above-

styled action, is herewith filing Exhibit "A" to its Complaint in the above-captioned matter.

This 27th Day of January 2020

*/s/ Matthew H. Schwartz*

Matthew H. Schwartz
Attorney for Plaintiff FT Global Capital, Inc.
Georgia Bar No. 307111

Schwartz Law Center, LLC
2985 Gordy Parkway
Suite 550
Marietta, Georgia 30066
(678) 401-2400
matt@schwartzlawgroup.com



July 28, 2020

Mr. Shanchun Huang
Chairman & CEO
Future Fintech Group, Inc.
Room 2103, 6A, Jianguomeng Wai Ave.
Chaoyang District
Beijing, China, 100022

Re:   Exclusive Placement Agent Agreement

Dear Mr. Huang:

The purpose of this letter agreement (this "Engagement Letter" or this "Agreement") is to set forth the terms and conditions pursuant to which FT Global Capital, Inc. ("FTGC" or the "Placement Agent"), shall serve as the Exclusive Placement Agent for Future Fintech Group, Inc., NASDAQ: FTFT (the "Company"), on a "best efforts" basis, in connection with public or private offering or other financing or capital-raising transaction (each, a "Placement") of unregistered or registered securities (the "Securities") of the Company, which may include shares (the "Shares") of the Company's common stock (the "Common Stock") or securities convertible into Shares, pursuant to a private placement or, if registered, pursuant to a registration statement.

This Agreement shall become effective upon the date it is signed by the Company (the "Effective Date"). The terms of such Placement(s) and the Securities shall be mutually agreed upon by the Company and the investors (each, an "Investor" and collectively, the "Investors") and nothing herein enables the Placement Agent to bind the Company or any Investor. This Agreement and the documents executed and delivered by the Company and the Investors in connection with the Placement(s) shall be collectively referred to herein as the "Transaction Documents." The date of each of the closings of the Placement(s) shall be referred to herein as the "Closing Date." The Company expressly acknowledges and agrees that the Placement Agent's obligations hereunder are on a reasonable "best efforts" basis only and that the execution of this Agreement does not constitute a commitment by the Placement Agent to purchase or to sell any Securities and does not ensure the successful placement of any Securities or any portion thereof. The identities of the investors to which the Placement Agent introduces the Company shall be proprietary information of the Placement Agent and shall not be divulged to third parties by the Company, nor used by the Company outside the scope of the Placement Agent's engagement as described herein, other than as required by applicable law.

SECTION 1.   COMPENSATION AND OTHER FEES.

(A)    As compensation for the Placement Agent's services hereunder. the Company shall pay to the Placement Agent a cash placement fee upon each Closing. in an amount equal to ten percent (10%) of the aggregate offering price of the total amount of capital received by the Company from the sale of its Securities during the term of this Agreement (the "Placement Agent Fee"). Notwithstanding anything to the contrary in this Agreement, the compensation provided for in this Agreement shall be subject to such reduction as may be necessary for the compensation to comply with Financial Industry Regulatory Authority ("FINRA") Rule 5110. The Company agrees to pay the Placement Agent for all travel. due diligence or related expenses. up to $30,000 in the aggregate. The Company shall also reimburse Placement Agent for its legal expenses in an amount of $50,000. The expenses in this Section 1(A) shall only be paid out of the proceeds of the financing contemplated in this agreement.

(B)    [Reserved]

(C)    The Placement Agent shall be entitled to a Placement Agent Fee, calculated in the manner provided in Section 1(A). with respect to any public or private offering or other financing or capital-raising transaction of any kind ("Tail Financing") to the extent that such financing or capital is provided to the Company by investors whom the Placement Agent had introduced to the Company during the Term or investors "wall-crossed" by the Placement Agent in  connection with the Placement, if such Tail Financing is consummated at any time within the 12-month period following the termination of this Agreement (the "Tail Period"). provided that, at the request of the Company or within 10 days after termination of this Agreement. Placement Agent shall provide a written list of such investors Placement Agent had introduced or "wall-crossed" to the Company during the Term.

SECTION 2.   COMPANY REPRESENTATIONS AND WARRANTIES. The Company represents and warrants to, and agrees with, the Placement Agent on the date hereof and on each date on which any Securities are offered that:

(A)    If the Placement is completed on a registered basis. the Company will file with the Securities and Exchange Commission (the "Commission") a registration statement under the Securities Act of 1933, as amended (the "Securities Act"). for the registration under the Securities Act of the Securities.

(B)    There are no affiliations with any FINRA member firm among the Company's officers, directors or. to the knowledge of the Company. any five percent (5%) or greater stockholder of the Company.

(C)    The Placement Agent shall have received on each Closing Date a written Opinion of counsel for the Company, dated the Closing Date and addressed to the Placement Agent in form and substance satisfactory to the Placement Agent. which shall include, without limitation, opinions related to (i) the corporate existence of the Company and power to operate its business: (ii) the corporate power and authority of the Company to execute all agreements and perform its obligations related in the Placement; (iii) the ability of the Company to enter into all agreements and perform its obligations related to the Placement without contravening or violating (or causing the triggering of any anti-dilution or similar provisions in) its charter documents. any other agreements or any applicable law, regulation or rule; (iv) that any Securities (and any Common Stock underlying such Securities) will be duly authorized. fully paid. validly issued and non-assessable. as applicable; (v) that no approval,

consent, order, filing or notice is required to complete the Placement and for the Company to perform its obligations in the Placement other than Nasdaq approval or notification if so required by Nasdaq rules; (vi) if the Placement is being completed pursuant to a Registration Statement, the effectiveness of the Registration Statement and that all filings required by the Securities Act of 1933, as amended, have been made; and (vii) the Company's status as an "investment company" as defined in the Investment Company Act of 1940, as amended.  The Placement Agent shall also have received on each Closing Date a negative assurance letter from counsel for the Company, dated the Closing Date and addressed to the Placement Agent in form and substance satisfactory to the Placement Agent.

(D)     None of the Company or the Company's directors, executive officers or affiliates is a "bad actor" as defined in Rule 506(d) of the Securities Act.

(E)     The Placement Agent shall be entitled to rely upon any and all representations and warranties of the Company included in the purchase agreements entered into by the Company and the Investors in connection with the Placement, subject to the qualifications and limitations therein, including, but not limited to, any disclosure set forth on an applicable schedule.

SECTION 3.   REPRESENTATIONS AND WARRANTIES OF PLACEMENT AGENT.  The Placement Agent represents and warrants to the Company that: (i) it will comply with all applicable federal laws regarding trading in securities of the Company, (ii) it will not disclose any non-public material information of the Company without the prior written consent of the Company during the Term for a period of one (1) year from the termination date of this Agreement, and (iii) that it is a registered broker-dealer in good standing with the relevant regulatory agencies.

SECTION 4.   ENGAGEMENT TERM & SURVIVAL.  The term of this Agreement shall be for a period of the earlier of three months from the Effective Date or the completion of the Placement (the "Term").  In the event of the termination of this Agreement, the Placement Agent's compensation due under this Agreement will be payable in full and the compensation payable under Section 1(A) will continue for the twelve (12) month period commencing with such termination as set forth in Section 1(C). The provisions of Sections 1, 2, 3, 4, 5, 6, 7, 9, 10 and 11 of this Agreement and Appendix A shall survive this Agreement's expiration or termination.

SECTION 5.   PLACEMENT AGENT INFORMATION.  The Company agrees that any information or advice rendered by the Placement Agent in connection with this engagement is for the confidential use of the Company only in its evaluation of the Placement and, except as otherwise required by law, the Company will not disclose or otherwise refer to the advice or information in any manner without prior written consent of the Placement Agent.

SECTION 6.   NO FIDUCIARY RELATIONSHIP; THIRD PARTY BENEFICIARIES.  This Agreement does not create, and shall not be construed as creating rights enforceable by any person or entity that is not a party hereto, except those entitled hereto by virtue of the indemnification provisions hereof.  The Company acknowledges and agrees that the Placement Agent is not and shall not be construed as a fiduciary of the Company and that the Placement Agent shall not have any duties or liabilities to the equity holders or the creditors of the Company or to any other person by virtue of this Agreement or the retention of the Placement Agent hereunder, all of which are hereby expressly waived.

SECTION 7.   INDEMNIFICATION  The parties agree to the terms of the Placement Agent's standard indemnification agreement, which is attached hereto as Appendix A and incorporated herein by reference.

SECTION 8.   ANNOUNCEMENTS.  The Company grants to the Placement Agent the right to place customary announcement(s) of the Placement in certain newspapers and to mail announcement(s) to persons and firms selected by Placement Agent, at the Placement Agent's expense, subject to the Company's prior approval, which shall not be unreasonably withheld.

SECTION 9.   GOVERNING LAW.  This Agreement will be governed by, and construed in accordance with, the laws of the State of Georgia applicable to agreements made and to be performed entirely in such State.  This Agreement may not be assigned by either party without the prior written consent of the other party.  This Agreement shall be binding upon and inure to the benefit of the parties hereto, and their respective successors and permitted assigns.  Any right to trial by jury with respect to any dispute arising under this Agreement or any transaction or conduct in connection herewith is waived.  Any dispute arising under this Agreement may be brought into the courts of the State of Georgia located in Fulton County or into the Federal Court located in Atlanta, Georgia  and, by execution and delivery of this Agreement, the Company hereby accepts for itself and in respect of its property, generally and unconditionally, the jurisdiction of aforesaid courts.  Each party hereto hereby irrevocably waives personal service of process and consents to process being served in any such suit, action or proceeding by delivering a copy thereof via overnight delivery (with evidence of delivery) to such party at the address in effect for notices to it under this Agreement and agrees that such service shall constitute good and sufficient service of process and notice thereof.  Nothing contained herein shall be deemed to limit in any way any right to serve process in any manner permitted by law.  If either party shall commence an action or proceeding to enforce any provisions of this Agreement, then the prevailing party in such action or proceeding shall be reimbursed by the other party for its reasonable attorneys' fees and other costs and expenses incurred with the investigation, preparation and prosecution of such action or proceeding.

SECTION 10.   ENTIRE AGREEMENT/MISC.  This Agreement embodies the entire agreement and understanding between the parties hereto, and supersedes all prior agreements and understandings, relating to the subject matter hereof.  If any provision of this Agreement is determined to be invalid or unenforceable in any respect, such determination will not affect such provision in any other respect or any other provision of this Agreement, which will remain in full force and effect.  This Agreement may not be amended or otherwise modified or waived except by an instrument in writing signed by each of the Placement Agent and the Company.  The representations, warranties, agreements and covenants contained herein shall survive the closing of the Placement and delivery and/or exercise of the Securities, as applicable.  This Agreement may be executed in two or more counterparts, all of which when taken together shall be considered one and the same agreement and shall become effective when counterparts have been signed by each party and delivered to the other party, it being understood that both parties need not sign the same counterpart.  In the event that any signature is delivered by facsimile transmission or a .pdf format file, such signature shall create a valid and binding obligation of the party executing (or on whose behalf such signature is executed) with the same force and effect as if such facsimile or .pdf signature page were an original thereof.

SECTION 11.  NOTICES.  Any and all notices or other communications or deliveries required or permitted to be provided hereunder shall be in writing and shall be deemed given and effective on the

earliest of (a) the date of transmission, if such notice or communication is delivered via facsimile at the facsimile number specified on the signature pages attached hereto prior to 6:30 p.m. (Atlanta, Georgia time) on a business day, (b) the next business day after the date of transmission, if such notice or communication is delivered via facsimile at the facsimile number on the signature pages attached hereto on a day that is not a business day or later than 6:30 p.m. (Atlanta, Georgia time) on any business day, (c) the business day following the date of mailing, if sent by U.S. nationally recognized overnight courier service, or (d) upon actual receipt by the party to whom such notice is required to be given. The address for such notices and communications shall be as set forth on the signature pages hereto.

Please confirm that the foregoing correctly sets forth our agreement by signing and returning an executed copy of this Agreement to FTGC.

FT GLOBAL CAPITAL, INC.

By
    Name:   Patrick J. Ko
    Title:    President

Address for notice:
FT Global Capital, Inc.
5 Concourse Parkway, Suite 3000
Atlanta, GA, 30328
Fax: 770-353-0756
Email: pko@ftglobalcap.com

Accepted and Agreed to as of
the date first written above:

By:   Huang Shanchun
      Name:   Shanchun Huang
Title:    Chairman & CEO

Address for notice:
Future Fintech Group, Inc.
Room 2103, 6A, Jianguomeng Wai Ave.
Chaoyang District
Beijing, China, 10022
Fax:
Email: sh@ftftex.com

APPENDIX A -- INDEMNIFICATION PROVISIONS

(A)     The Company agrees to indemnify and hold harmless the Placement Agent and its affiliates and their respective officers, directors, employees, agents, counsel, advisers and consultants, and any persons controlling the Placement Agent or any of its affiliates within the meaning of Section 15 of the Securities Act of 1933 or Section 20 of the Securities Exchange Act of 1934 (the Placement Agent and each such other person or entity being referred to herein as an "Indemnified Person"), from and against all claims, liabilities, losses or damages (or actions in respect thereof) or other expenses (and further agrees to advance all expenses) which (A) are related to or arise out of (i) actions taken or omitted to be taken (including any untrue statements made or any statements omitted to be made) by the Company or its respective affiliates in connection with this Agreement, the Placement or which affect the Placement or (ii) actions taken or omitted to be taken by an Indemnified Person with the consent or in conformity with the actions or omissions of the Company or their respective affiliates in connection with this Agreement, the Placement or which affect the Placement or (iii) any investigation, litigation, or inquiry by a regulatory or self-regulatory agency or authority involving the Company or any transaction arising under any agreements between the Company and the Placement Agent or (B) are otherwise related to or arise out of the Placement Agents' activities on behalf of the Company or its respective affiliates pursuant to this Agreement or (C) in any way involving or alleged to involve the Company, any Placement or any Securities. The Company will not be responsible, however, for any losses, claims, damages, liabilities or expenses pursuant to clause (A)(iii), (B) and (C) of the preceding sentence which are finally judicially determined to have resulted solely from such Indemnified Person's gross negligence or willful misconduct. In addition, the Company agrees to advance (and in the absence of advancement required hereunder) to promptly reimburse each Indemnified Person for all reasonable out-of-pocket expenses (including fees and expenses of counsel) as they are incurred by such Indemnified Person in connection with investigating, preparing, conducting or defending any such action or claim, whether or not in connection with litigation in which any Indemnified Person is a named party, or in connection with enforcing the rights of such Indemnified Person under this Agreement, including the costs of any claims asserted by an Indemnified Person against any indispensable party or by way of a counterclaim in any litigation within the scope of this provision. The Company agrees to advance such expenses incurred by an Indemnified Person pursuant to which indemnity may be sought hereunder within thirty (30) days after receipt by the Company of a statement requesting such advances from time to time, whether prior to or after final disposition of any proceeding. Such advances shall be unsecured and interest free and without regard to the Indemnified Person's ultimate entitlement to indemnification under the other provisions of this Agreement. Indemnified Persons shall be entitled to continue to receive advancement of expenses pursuant to this section unless and until the matter of an Indemnified Person's entitlement to indemnification hereunder has been finally adjudicated by court order or judgment from which no further right of appeal exists. Each Indemnified Person undertakes to repay such amounts advanced only if and to the extent that, it ultimately is determined that the Indemnified Person is not entitled to be indemnified by the Company under the provisions of this Agreement.

(B)     Promptly after receipt by the Placement Agent of notice of any claim or the commencement of any action or proceeding with respect to which the Placement Agent is entitled to indemnify hereunder, the Placement Agent will notify the Company in writing of such claim or of the commencement of such action or proceeding, and the Company will assume the defense of such action or proceeding and will employ counsel reasonably satisfactory to the Placement Agent and will pay the reasonable fees and expenses of such counsel. Notwithstanding the preceding sentence, the Placement Agent will be entitled to employ counsel separate from counsel for the Company and from any other party in such action if counsel for the Placement Agent determines that there is a conflict of interest for the Company counsel to defend the Placement Agent in the case. In such event, the reasonable fees and disbursements of no more than one such separate counsel will be paid by the Company. The Company will have the exclusive right to settle the claim or proceeding at its sole expense provided that the Company obtains a full and unconditional release of any claims against the Placement Agent and the Indemnified Persons from all liability on claims that are the subject matter of such proceeding and does not include a statement as to or an admission of fault, culpability or a failure to act by or on behalf of Placement Agent or any Indemnified Person.

(C)     The Company and the Placement Agent and any Indemnified Persons agree to notify each other promptly of the assertion of any claim or the commencement of any action or proceeding relating to a transaction contemplated by this engagement letter.

(D)     If for any reason the foregoing indemnity is unavailable to the Placement Agent or insufficient to hold the Placement Agent harmless, then the Company shall contribute to the amount paid or payable by the Placement Agent as a result of such losses, claims, damages or liabilities in such proportion as is appropriate to reflect not only the relative benefits received by the Company on the one hand and the Placement Agent on the other, but also the relative fault of the Company on the one hand and the Placement Agent on the other that resulted in such losses, claims, damages or liabilities, as well as any relevant equitable considerations. The amounts paid or payable by a party in respect of losses, claims, damages and liabilities referred to above shall be deemed to include any legal or other fees and expenses reasonably incurred in defending any litigation, proceeding or other action or claim. Notwithstanding the provisions hereof, the Placement Agent's share of the liability hereunder shall not be in excess of the amount of fees actually received by Placement Agent under this engagement letter (excluding any amounts received as reimbursement of expenses incurred by Placement Agent).

(E)     These indemnification provisions shall remain in full force and effect whether or not the transaction contemplated by this Agreement is completed and shall survive the termination of this Agreement, and shall be in addition to any liability that the Company might otherwise have to any indemnified party under this engagement letter or otherwise.

## FULTON COUNTY SUPERIOR COURT
## STATE OF GEORGIA

| | | | |
|---|---|---|---|
| **FT GLOBAL CAPITAL, INC.** | * | | |
| **Plaintiff,** | * | | |
| **v.** | * | **CASE NO:** | **2021CV344614** |
| | * | | |
| | * | | |
| **FUTURE FINTECH GROUP, INC.:** | * | | |
| **Defendant.** | * | | |
| | * | | |

### CERTIFICATE OF SERVICE

This is to certify that I have this day served the Defendant in this action with the

foregoing **NOTICE OF FILING EXHIBIT "A" TO COMPLAINT,** by placing same in the

United States Mail with proper postage affixed thereto and addressed to Defendant's registered

agent for service of process as follows:

Future Fintech Group, Inc.
c/o Unisearch, Inc. (*its registered agent*)
155 Office Plaza Drive
Tallahassee, Florida 32301

This the 27th day of January, 2021                    /s/ *Matthew H. Schwartz*
                                                      Georgia State Bar # 307111
                                                      FT Global Capital, Inc.

Schwartz Law Center, LLC
2985 Gordy Parkway, Suite 550
Marietta, Georgia 30066
Tel: (678) 401-2400
Fax: (678) 669-1776