UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

FT GLOBAL CAPITAL, INC.,

        Plaintiff,

    v.

FUTURE FINTECH GROUP, INC.,

        Defendant.

CIVIL ACTION NO.
1:21-CV-00594-JPB

## ORDER

    This matter comes before the Court on Future Fintech Group's ("Defendant") Motion to Dismiss [Doc. 5].  This Court finds as follows:

## BACKGROUND

    FT Global Capital, Inc., ("Plaintiff") is a corporation that offers institutional investment banking, merger and acquisition and other financial services, primarily capital-raising services for U.S.- and China-based companies that are publicly listed on U.S. stock exchanges.  [Doc. 1-1, p. 4].  Defendant is a publicly-traded corporation that operates a blockchain-based online shopping platform, an incubator for blockchain-based application projects, a digital payment system and a cross-border e-commerce platform.  Id. at 5.

In July 2020, Plaintiff's principal, Patrick Ko, engaged in negotiations with individuals representing Defendant related to an agreement between their respective companies.  Id. at 11.  Plaintiff identifies these individuals as Shanchun Huang, Defendant's Chief Executive Officer; Yongke Xue, Defendant's Chairman; Lee Hoo, the Secretary of Defendant's Board; Long Yi, an advisor to Defendant; and Jeffrey Li, Defendant's outside legal counsel.  Id.

Following these negotiations, Plaintiff and Defendant entered into an agreement (the "Agreement") on July 28, 2020, pursuant to which Plaintiff would serve as Defendant's "Exclusive Placement Agent . . . in connection with public or private offering[s] or other financing or capital-raising transaction[s]" for three months.  Id. at 17, 6.  Under the terms of the Agreement, if Defendant closed a capital-raising transaction facilitated by Plaintiff, Defendant owed Plaintiff a "Placement Agent Fee."[1]  Id. at 18.  Defendant was also obliged to pay the Placement Agent Fee if, during the twelve months following the Agreement's termination (the "Tail Period"), Defendant entered into a capital-raising transaction with an investor to which Plaintiff had introduced Defendant.  Id.

---

[1] The Placement Agent Fee was calculated as "ten percent (10%) of the aggregate offering price of the total amount of capital received by [Defendant] from the sale of its Securities during the term of [the] Agreement."  [Doc. 1-1, p. 18].  Under the Agreement, Defendant also agreed to reimburse Plaintiff for travel or related expenses up to $30,000 and for legal expenses up to $50,000.  Id.

To facilitate this process, the Agreement required Plaintiff to provide Defendant, at Defendant's request or within ten days following the Agreement's termination, a list of the investors to which Plaintiff had introduced Defendant (the "Protected Investors List," comprised of "Protected Investors"). Id. The Agreement further provided that "[t]he identities of the investors to which [Plaintiff] introduces [Defendant] shall be proprietary information of [Plaintiff] and shall not be divulged to third parties by [Defendant], nor used by [Defendant] outside the scope of [Plaintiff's] engagement as described herein." Id. at 17.

Plaintiff contends that it introduced Defendant to as many as twelve different investors and their affiliates during the term of the Agreement and that it incurred $30,000 in expenses during this process. Id. at 7. Plaintiff provided Defendant with the Protected Investors List on November 2, 2020, after the Agreement's termination. Id.

According to Plaintiff, on December 29, 2020, Defendant initiated a securities purchase agreement with two investors that were named on the Protected Investors List, raising at least $8,000,000. Id. Plaintiff alleges that Defendant then entered into another securities purchase agreement on January 11, 2021, with the same two investors, raising an additional $15,000,000. Id. Plaintiff calculates the

Placement Agent Fee from these two transactions to be $2,380,000 and contends that Defendant has not paid this amount.  Id. at 8.

Plaintiff alleges further that Defendant disclosed Plaintiff's confidential and proprietary information to third parties and used that information "to circumvent Plaintiff by soliciting capital-raising transactions directly with Plaintiff's [P]rotected [I]nvestors."  Id. at 9.  Plaintiff contends that Defendant "directed Plaintiff's [P]rotected [I]nvestors to use a different business entity or a different fund name through which to fund the transaction[s]."  Id. at 10.  Finally, Plaintiff claims that during the July 2020 negotiations for the Agreement, Defendant's representatives misrepresented to Plaintiff that Defendant "intended to compensate Plaintiff for the rendition of its services" and that "some or all of these individuals knew that [Defendant] had no intention to compensate Plaintiff prior to entering into the Agreement."  Id. at 11–12.

Plaintiff brought suit against Defendant in Fulton County Superior Court on January 14, 2021.  Id. at 4.  Plaintiff alleged four claims:  breach of contract, breach of the covenant of good faith and fair dealing, fraud and attorney's fees under O.C.G.A. § 13-6-11.  Id. at 8–11.  Defendant removed the case to this Court on February 9, 2021, on the basis of diversity jurisdiction.  [Doc. 1, p. 3].  On March 9, 2021, Defendant filed the instant Motion to Dismiss.  [Doc. 5].

## ANALYSIS

**A.**    **Legal Standard**

"At the motion to dismiss stage, all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff." Bryant v. Avado Brands, Inc., 187 F.3d 1271, 1273 n.1 (11th Cir. 1999).  In determining whether this action should be dismissed for failure to state a claim, Federal Rule of Civil Procedure 8(a)(2) provides that a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Although detailed factual allegations are not necessarily required, the pleading must contain more than "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  Importantly, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (quoting Twombly, 550 U.S. at 570).

Under Rule 9(b) of the Federal Rules of Civil Procedure, when "alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.  Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."  The purpose of Rule 9(b) is to "alert[]

defendants to the 'precise misconduct with which they are charged' and protect

defendants 'against spurious charges of immoral and fraudulent behavior.'"

Ziemba v. Cascade Int'l, Inc., 256 F.3d 1194, 1202 (11th Cir. 2001) (quoting

Durham v. Bus. Mgmt. Assocs., 847 F.2d 1505, 1511 (11th Cir. 1988)).  Rule 9(b),

however, must not be applied in a manner that "abrogate[s] the concept of notice

pleading."  Id. (citation and punctuation omitted).  The Eleventh Circuit Court of

Appeals has found that

> Rule 9(b) is satisfied if the complaint sets forth "(1) precisely what
> statements were made in what documents or oral representations or
> what omissions were made, and (2) the time and place of each such
> statement and the person responsible for making (or, in the case of
> omissions, not making) [the] same, . . . (3) the content of such
> statements and the manner in which they misled the plaintiff, and (4)
> what the defendants obtained as a consequence of the fraud."

Id. (quoting Brooks v. Blue Cross & Blue Shield of Fla., Inc., 116 F.3d 1364, 1371

(11th Cir. 1997)); see also U.S. ex rel. Matheny v. Medco Health Sols., Inc., 671

F.3d 1217, 1222 (11th Cir. 2012) ("The particularity requirement of Rule 9(b) is

satisfied if the complaint alleges 'facts as to time, place, and substance of the

defendant's alleged fraud, specifically the details of the defendants' allegedly

fraudulent acts, when they occurred, and who engaged in them.'" (quoting Hopper

v. Solvay Pharm., Inc., 588 F.3d 1318, 1324 (11th Cir. 2009))).

**B.     Breach of Contract**

According to Plaintiff, Defendant committed two material breaches of the Agreement:  (1) Defendant failed to pay Plaintiff the Placement Agent Fee for two transactions completed during the Tail Period with Protected Investors; and (2) Defendant disclosed Plaintiff's confidential and proprietary information to third parties, in violation of provisions in the Agreement prohibiting such disclosure. Defendant argues that Plaintiff has not stated a claim for breach of contract and has made allegations in a merely "conclusory fashion."  [Doc. 5, p. 8].  The Court will address each purported breach in turn.

As to the first alleged breach, Defendant takes issue with the fact that Plaintiff does not specifically name or describe the investors with which Defendant entered into the December 29, 2020 and January 11, 2021 transactions and that Plaintiff alleges were on the Protected Investor List.  As to the second alleged breach, Defendant claims that Plaintiff does not provide any specific facts regarding how or to whom Defendant disclosed Plaintiff's confidential information and what, if any, confidential information was disclosed.

"The elements for a breach of contract claim in Georgia are the (1) breach and the (2) resultant damages (3) to the party who has the right to complain about the contract being broken."  <u>Bates v. JPMorgan Chase Bank, NA</u>, 768 F.3d 1126,

1130 (11th Cir. 2014) (quoting <u>Norton v. Budget Rent A Car Sys., Inc.</u>, 705 S.E.2d

305, 306 (Ga. Ct. App. 2010)).  As to the first alleged breach, Plaintiff contended

in its Complaint that (1) it entered into an agreement with Defendant; (2) the terms

of that agreement required Defendant to pay Plaintiff a Placement Agent Fee if

Defendant closed capital-raising transactions with Protected Investors during the

Tail Period; (3) Defendant closed two transactions with two such investors during

the Tail Period; and (4) Defendant did not pay the required Placement Agent Fee,

amounting to $2,380,000 in damages.  Plaintiff has thus presented facts sufficient

to state a claim that Defendant breached the Agreement by failing to pay the

Placement Agent Fee for the transactions it closed during the Tail Period.  As

noted earlier, at the motion-to-dismiss stage, Plaintiff need not bring "detailed

factual allegations" but instead must only present facts that are "enough to raise a

right to relief above the speculative level."  <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S.

544, 555 (2007).

     Nonetheless, Defendant claims that Plaintiff failed to put it on notice "as to

how its acts harmed Plaintiff because the Complaint is silent" as to which specific

investors were involved in the Tail Period transactions.  [Doc. 11, p. 7].  While it is

true that Plaintiff does not identify the investors by name in the Complaint, the

Eleventh Circuit has described the "pleading specificity standard" as one that

"'simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." <u>Watts v. Fla. Int'l Univ.</u>, 495 F.3d 1289, 1295–96 (11th Cir. 2007) (quoting <u>Twombly</u>, 550 U.S. at 556).  Plaintiff has met this standard by identifying the date and dollar amount of the transactions at issue and presenting facts supporting the claim that these transactions constituted a breach of the Agreement.  Plaintiff's pleading is thus sufficient to put Defendant on notice as to Plaintiff's specific claims, and any further detail can be obtained through discovery.  Defendant's Motion to Dismiss Plaintiff's first claim for breach of contract is thus **DENIED**.

As to the second alleged breach, Plaintiff claims that (1) the Agreement contained provisions prohibiting the disclosure of Plaintiff's confidential and proprietary information to third parties and (2) Defendant violated those provisions by disclosing this information to third parties and by using it "to circumvent Plaintiff by soliciting capital-raising transactions directly with Plaintiff's [P]rotected [I]nvestors."  [Doc. 1-1, p. 9].  Here, Plaintiff's allegations take on a more conclusory form.  Plaintiff does not identify what kind of confidential or proprietary information Defendant disclosed or to whom Defendant disclosed this information.  Plaintiff need not identify these details with granularity, but it must do more than present "an unadorned, the-defendant-unlawfully-harmed-me

accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Plaintiff has not done so here, and the Court thus concludes that Plaintiff has failed to state a claim for breach of contract as to the disclosure of its confidential and proprietary information. Defendant's Motion to Dismiss Plaintiff's second claim for breach of contract is **GRANTED**.

## C.     Breach of the Covenant of Good Faith and Fair Dealing

Plaintiff alleges that Defendant breached the covenant of good faith and fair dealing by "deliberately undert[aking] surreptitious measures to purposefully conceal the fact that [Defendant] was consummating the securities purchase transaction[s] with [P]rotected [I]nvestors." [Doc. 1-1, p. 10]. Plaintiff further claims that Defendant, either on its own or through a subsequent agent, directed Protected Investors to use a different business entity or name through which to fund the disputed transactions and that Defendant specifically orchestrated these efforts to avoid the Placement Agent Fee.

In the Motion to Dismiss, Defendant argues that "[i]n order to state a claim for breach of the covenant of good faith and fair dealing, there must also be a claim for breach of contract." [Doc. 5, p. 11]. As noted above, Defendant argued that Plaintiff failed to state a claim for breach of contract. Defendant thus contends that

Plaintiff cannot maintain a separate claim for breach of the covenant of good faith and fair dealing.

"Every contract implies a covenant of good faith and fair dealing in the contract's performance and enforcement." Myung Sung Presbyterian Church, Inc. v. N. Am. Ass'n of Slavic Churches & Ministries, Inc., 662 S.E.2d 745, 748 (Ga. Ct. App. 2008). While "the implied covenant modifies and becomes part of the provisions of the contract," this "covenant cannot be breached apart from the contract provisions it modifies and therefore cannot provide an independent basis for liability." Id. The Court held above that Plaintiff stated a claim for breach of contract as to the issue of payment of the Placement Agent Fee. Therefore, Plaintiff can maintain its claim for breach of the covenant of good faith and fair dealing. Because Defendant does not contest this claim on any other grounds, Defendant's Motion to Dismiss Plaintiff's claim for breach of the covenant of good faith and fair dealing is **DENIED**.

**D.     Fraud**

In its Complaint, Plaintiff claims that individuals acting on Defendant's behalf fraudulently misrepresented to Plaintiff during negotiations for the Agreement that Defendant intended to compensate Plaintiff for its services when those individuals knew that Defendant had no such intention. Plaintiff alleges that

it relied on Defendant's misrepresentations to its detriment by signing the

Agreement and subsequently rendering its services.  Essentially, Plaintiff claims

that Defendant lacked the present intent to perform when it entered into the

Agreement with Plaintiff.  In the Motion to Dismiss, Defendant contends that

Plaintiff failed to meet the standards for pleading fraud under Federal Rule of Civil

Procedure 9(b).

As a general rule, "there can be no fraud without an express

misrepresentation."  Miller v. Lomax, 596 S.E.2d 232, 237–38 (Ga. Ct. App.

2004).  "While fraud cannot generally be based on instances of misrepresentations

as to future events, it may consist of such instances if, when the misrepresentation

is made, the defendant knows that the future event will not take place."  Hayes v.

Hallmark Apartments, Inc., 207 S.E.2d 197, 199 (Ga. 1974).  And "[i]n order for a

promise to constitute actionable fraud, [a] plaintiff must demonstrate that the

promisor had a present intent not to perform."  Ultrasound Imaging Corp. v. Hyatt

Corp., No. 1:06-CV-02778-JEC, 2007 WL 2345256, at *9 (N.D. Ga. Aug. 13,

2007).  This requirement avoids transforming every breach of contract allegation

into a fraud claim.  Vernon v. Assurance Forensic Acct., LLC, 774 S.E.2d 197, 210

(Ga. Ct. App. 2015).

According to Defendant, Plaintiff has not "precisely [pled] an express misrepresentation evincing that [Defendant] had a present intent not to perform under the Agreement or that payment would not take place."  [Doc. 5, p. 14]. Plaintiff does not identify express misrepresentations made by Defendant's representatives; Plaintiff offers only the general claim that these individuals "misrepresented . . . that [Defendant] intended to compensate Plaintiff for the rendition of its services."  [Doc. 1-1, p. 11].  Plaintiff makes the conclusory statement that "some or all of these individuals knew that [Defendant] had no intention to compensate Plaintiff prior to entering into the Agreement," but Plaintiff does not otherwise demonstrate that Defendant lacked the present intent to perform.  Id. at 11–12.  Plaintiff has thus failed to identify with particularity "the details of the defendant['s] allegedly fraudulent acts."  U.S. ex rel. Clausen v. Lab'y Corp. of Am., 290 F.3d 1301, 1310 (11th Cir. 2002); see also Dodds v. BAC Home Loans Servicing LP, No. 3:12-CV-37-TCB-RGV, 2012 WL 13028646, at *13 (N.D. Ga. June 7, 2012), R. & R. adopted, No. 3:12-CV-00037-TCB, 2012 WL 13028687 (N.D. Ga. June 26, 2012) (finding that the plaintiff failed to meet the Rule 9(b) requirements because "her complaint [did] not identify any specific false information provided by defendants, contain[ed] no details about the alleged

misrepresentations that constitute[d] the fraud, and instead rest[ed] on conclusory allegations").

Defendant also contends that Plaintiff failed to identify "the time and place of each statement and the person responsible for making it." [Doc. 5, p. 14]. Specifically, Defendant faults Plaintiff's attribution of the purported misrepresentations to a group of persons rather than to individuals. In its Response, Plaintiff claims that it sufficiently identified who made the misrepresentations—"[Defendant], through its leadership," then listing five individuals—and to whom those statements were made, namely Plaintiff's principal, Patrick Ko. [Doc. 8, p. 14].

"In a case with multiple defendants, the complaint should contain specific allegations with respect to each defendant; generalized allegations 'lumping' multiple defendants together are insufficient." W. Coast Roofing & Waterproofing, Inc. v. Johns Manville, Inc., 287 F. App'x 81, 86 (11th Cir. 2008). Although this case has a single defendant, Plaintiff has alleged fraud against multiple individuals representing that defendant. Plaintiff did not, though, specify which individual made which misrepresentation (and, as noted above, Plaintiff does not identify any specific misrepresentations at all). Plaintiff thus "failed to identify with sufficient particularity 'who' exactly made the statements that they

14

allege to be fraudulent." <u>Techjet Innovations Corp. v. Benjelloun</u>, 203 F. Supp. 3d 1219, 1232 (N.D. Ga. 2016).  Thus, even if Plaintiff had identified specific statements constituting fraud, Plaintiff did not attribute those statements to their speakers with the requisite specificity.  The Court concludes that Plaintiff has failed to satisfy the particularity standard under Federal Rule of Civil Procedure 9(b) for pleading fraud because its Complaint has failed to identify at least two necessary elements:  the precise misrepresentations made and the persons responsible for those misrepresentations.  As such, Defendant's Motion to Dismiss Plaintiff's fraud claim is **GRANTED**.

## E.     Attorney's Fees

Plaintiff seeks attorney's fees pursuant to O.C.G.A. § 13-6-11 because "Defendant's fraudulent misconduct and stubborn refusal to pay its contractual debt . . . caused Plaintiff unnecessary trouble" and "to incur substantial legal expenses."  [Doc. 1-1, p. 13].  Plaintiff also contends that Defendant's allegedly bad-faith conduct warrants an award of attorney's fees.  Defendant objects on the grounds that "a bona fide controversy exists" as to Plaintiff's claims.  [Doc. 5, p. 16].

Under O.C.G.A. § 13-6-11, a plaintiff may recover litigation expenses "where the defendant has acted in bad faith, has been stubbornly litigious, or has

caused the plaintiff unnecessary trouble and expense." When a plaintiff seeks to recover attorney's fees based on stubborn litigiousness or unnecessary trouble and expense, an award is permitted only "when the evidence reveals that no bona fide controversy or genuine dispute existed." Wilson v. Redmond Constr., Inc., 860 S.E.2d 118, 123 (Ga. Ct. App. 2021). A "bona fide controversy" requires a "'genuine dispute' of law or fact." Zedan v. Bailey, 522 F. Supp. 3d 1363, 1381 (M.D. Ga. 2021).

Plaintiff alleges that Defendant's purported fraud and refusal to pay the Placement Agent Fee caused Plaintiff unnecessary trouble and amount to stubbornly litigious conduct. According to Defendant, "there can be little doubt that a bona fide controversy exists" as to Plaintiff's claims and, consequently, Plaintiff "fails to raise a possible claim of recovery against [Defendant] for attorney's fees." [Doc. 5, p. 16, pp. 16–17]. However, "it is for the jury to determine whether there was a bona fide controversy, unless the facts preclude such a finding as a matter of law." Webster v. Brown, 446 S.E.2d 522, 524 (Ga. Ct. App. 1994) (citation and punctuation omitted). When viewed at the motion-to-dismiss stage, the facts in this case are not sufficient to support a finding, as a matter of law, about whether a bona fide controversy exists. The Court thus declines to dismiss Plaintiff's claim for attorney's fees on this basis. See, e.g.,

Laddin v. Tauber & Balser, P.C., No. 1:11-CV-2995-AT, 2012 WL 12892430, at

*8 (N.D. Ga. June 8, 2012) (denying a motion to dismiss a claim for attorney's fees

under O.C.G.A. § 13-6-11 because the "allegations pose[d] an issue of fact for later

resolution").

    Plaintiff also seeks attorney's fees because Defendant allegedly acted in bad

faith.  In the context of O.C.G.A. § 13-6-11, "[b]ad faith is bad faith arising out of

the transaction upon which the complaint is based and refers to a time prior to the

institution of action."  Brannon Enters., Inc. v. Deaton, 285 S.E.2d 58, 60 (Ga. Ct.

App. 1981); see also Jeff Goolsby Homes Corp. v. Smith, 308 S.E.2d 564, 567

(Ga. Ct. App. 1983) ("[Bad faith] generally refers to bad faith in entering the

contract or bad faith during the course of dealings with the plaintiff.").

Specifically, Plaintiff claims that Defendant acted in bad faith by relying on

"surreptitious measures to purposefully conceal the fact that it was consummating

the securities purchase transaction with [P]rotected [I]nvestors."  [Doc. 1-1, p. 10].

According to Plaintiff, Defendant instructed Plaintiff's Protected Investors to use a

different business entity or a different fund name when completing the transaction.

If "there is evidence that the defendant has acted in bad faith in the underlying

transaction," a plaintiff may recover attorney's fees under O.C.G.A. § 13-6-11

despite the existence of a bona fide controversy.  Grange Mut. Cas. Co. v. Kay,

589 S.E.2d 711, 716 (Ga. Ct. App. 2003).  Earlier, the Court declined to reach the issue of whether a bona fide controversy existed for the purpose of awarding attorney's fees on the grounds of stubborn litigiousness or causing unnecessary trouble and expense.  However, bona fide controversy or not, Plaintiff has presented sufficient evidence of Defendant's bad faith in the underlying transaction to survive a motion to dismiss its claim for attorney's fees.

Finally, Defendant argues that Plaintiff "cannot independently maintain a claim for attorney's fees" because, according to Defendant, Plaintiff "failed to allege facts sufficient to state a claim for breach of contract, breach of [the] covenant of good faith and fair dealing, and fraud."  [Doc. 5, p. 17].  The Court held above that Plaintiff stated a claim for breach of contract and breach of the covenant of good faith and fair dealing.  Plaintiff can thus maintain its attorney's fees claim, too.  For the foregoing reasons, Defendant's Motion to Dismiss Plaintiff's claim for attorney's fees is **DENIED**.

## CONCLUSION

Defendant's Motion to Dismiss [Doc. 5] is **GRANTED IN PART AND DENIED IN PART**.  It is **HEREBY ORDERED** that Plaintiff's first breach of contract claim and fraud claim are **DISMISSED**.

**SO ORDERED** this 10th day of November, 2021.

J. P. BOULEE
United States District Judge