Page 1

1

2          UNITED STATES DISTRICT COURT

        FOR THE NORTHERN DISTRICT OF GEORGIA

3

          Civil Action 1:21-CV-00594-JPB

4        -----------------------------x

        FT GLOBAL CAPITAL, INC.,

5            Plaintiff,

6        v.

7        FUTURE FINTECH GROUP, INC.,

8            Defendant.

9        -----------------------------x

10           REMOTE DEPOSITION OF:

11           RICHARD ALLISON

12           VIA ZOOM VIDEOCONFERENCE

13           July 6, 2022

14           1:00 p.m.

15

16

17

18

19

20

21

22       Reported by:

23       Gregory DiDonato, CSR #541

        Notary Public State of New York

24

25

Page 2

1                          RICHARD ALLISON

2          Videotape deposition of Richard Allison

3       held virtually via Zoom teleconference,

4       hosted from Veritext Legal Solutions,

5       pursuant to notice, before Greg DiDonato

6       Certified Court Reporter, License No. XI0541,

7       and Notary Public in and for the State of

8       New York.

9

10                          *  *  *

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1                    RICHARD ALLISON
 2        A P P E A R A N C E S:
 3        Counsel for the Plaintiff:
 4        THE LANG LEGAL GROUP
          2566 Shallowford Road NE
 5        Suite 104 - Number 230
          Atlanta, Georgia 30345
 6        (404) 384-2591
          BY:  ERIC C. LANG, ESQ.
 7        elang@langlegal.com
 8
 9        Counsel for the Defendant:
10        FISHER BROYLES, LLP
          501 Congress Avenue - Suite 150
11        Austin, Texas 78701
          (214) 924-9504
12        BY: WILLIAM J. AKINS, ESQ.
          William.akins@fisherbroyles.com
13
14        On behalf of Hudson Bay Capital Management
          and the Witness:
15
          SCOTT BLACK, ESQ.
16        In-house Counsel
          Hudson Bay Capital Management
17        HUDSON BAY CAPITAL MANAGEMENT LP
          777 Third Avenue, 30th Floor
18        New York, NY 10017
          (212) 571-1244
19        Sblack@hudsonbaycapital.com
20
21
22
23
24
25
```

1                RICHARD ALLISON

2              P R O C E E D I N G S

3              (Commencing at 12:58 p.m.)

4              (The attorneys participating in

5         this deposition acknowledge that I am

6         not physically present in the

7         deposition room and that I will be

8         reporting this deposition remotely.

9           They further acknowledge that, in

10        lieu of an oath administered in

11        person, I will administer the oath

12        remotely.  The parties and their

13        counsel consent to this arrangement

14        and waive any objections to this

15        manner of reporting.)

16             THE REPORTER:  Counsel, please

17        indicate your agreement to these

18        stipulations with your appearances for

19        the record, along with anyone else who

20        is present remotely.

21             MR. LANG:  My name is Eric Lang

22        from Lang Legal in Atlanta, Georgia

23        representing the plaintiff, FT Global.

24             MR. AKINS:  William Akins on

25        behalf of the defendant Future

```
 1                    RICHARD ALLISON
 2         Fintech.
 3              MR. BLACK:  Scott Black on
 4         behalf of Hudson Bay Capital Management
 5         and the deponent.
 6              THE REPORTER:  Would you raise
 7         your right hand, please, Mr. Allison.
 8              Do you swear or affirm under the
 9         threat of perjury that the testimony
10         you will give today will be the truth,
11         the whole truth, and nothing but the
12         truth, so help you God?
13              THE WITNESS:  I do.
14              THE REPORTER:  Proceed, Counsel.
15    RICHARD ALLISON, having been duly sworn to
16    tell the truth, was examined and testified
17    as follows:
18    EXAMINATION BY COUNSEL FOR PLAINTIFF
19    BY MR. LANG:
20         Q.   Mr. Allison, as I said before, my
21    name is Eric Lang, and I represent FT Global.
22              I want to knock out some necessary
23    housekeeping before we start.
24              Where are you relative to
25    Mr. Black?
```

```
 1                    RICHARD ALLISON
 2          A.    I'm in the Greenwich, Connecticut
 3     office, and Scott appears to be in our, from
 4     what I can tell, our New York City office.
 5          Q.    And not the same place?
 6          A.    Not the same place.  We're both
 7     employed by Hudson Bay Capital Management but
 8     physically different locations.
 9          Q.    All right.  Is anyone in the room
10     with you?
11          A.    I am on the trading floor; so,
12     yes, there are people next to me and across
13     behind my screen.
14          Q.    Are they communicating with you?
15          A.    No.
16          Q.    Are you communicating with them?
17          A.    No.
18                MR. LANG:  I'll do that from
19          time to time, that's one of the
20          disadvantages of the Zoom dep.
21          A.    Sure.
22          Q.    On your screen, is there anything
23     other than Zoom or any other deposition-
24     related software app that you can see?
25          A.    No.
```

1                    RICHARD ALLISON

2          Q.    Is your phone on such that you can

3     see what's on your phone?

4          A.    The screen is locked.  I can turn

5     it face down.

6          Q.    Is there anything, such as

7     medication or whatever, that would interfere

8     with your ability to give competent and true

9     testimony today?

10         A.    No.

11         Q.    Sorry about that one.  I have to

12    ask it.

13               Have you ever been deposed before?

14         A.    I have.

15         Q.    So, I'll just very quickly go

16    through the drill.

17               You got to say yes or no, not

18    uh-huh or ha-ha.  If you do that, I will

19    correct it.

20               Another thing that is certain to

21    happen, I will ask a question that doesn't

22    make any sense; when that happens, please,

23    tell me that I've done so, and I will try my

24    hardest to fix the question.  Likewise, you

25    might give an answer that I may need to seek

```
 1                    RICHARD ALLISON
 2     clarification on.
 3                    If you need a break, let us know.
 4     We hope to go short enough so that you won't
 5     need one; the only time we can't grant you one
 6     is if there's a question pending on the floor.
 7          A.     Understood.
 8          Q.     The deposition is pursuant to
 9     notice, formalities of the subpoena were
10     waived; all objections, except to the form of
11     the question or privilege or confidentiality
12     issues, shall be preserved to the time of the
13     issuing deposition.
14                    Is that acceptable?
15          A.     Yes.
16                    MR. BLACK:  Yes.
17                    MR. AKINS:  Yes, that's
18               acceptable.
19                    MR. LANG:  All right.  Let us
20               move even faster.
21                    I think when I press this button
22               that I'm going to introduce Exhibit 26,
23               which is the subpoena in this action.
24                    Did that show up anywhere?
25                    THE WITNESS:  No, it did not.
```

```
 1                  RICHARD ALLISON
 2             MR. LANG:  Why would it.
 3             THE WITNESS:  There's a button
 4        that says "Exhibit Share."  Shall I
 5        hit it?
 6             MR. LANG:  I hit "Exhibit
 7        Share," and then I have shared the
 8        exhibit and introduced the exhibit and
 9        stickered the exhibit.  If you got
10        Exhibit Share up, I think you can
11        click "View Exhibit."
12             THE WITNESS:  I don't have
13        access to Exhibit Share.
14             MR. LANG:  Well, then we're
15        going to use good old Screen Share.
16             How is that?
17             THE WITNESS:  That's fine with
18        me.
19             MR. LANG:  It will be a little
20        bit clunkier and it won't have the
21        stickers but, counsel, you may assume
22        that I am stickering them as I'm
23        going.
24             Is that okay?
25             MR. AKINS:  That's fine.
```

1                  RICHARD ALLISON

2              MR. LANG:  Scott?

3              MR. BLACK:  That's fine.

4              MR. LANG:  All right.  Screen

5          Share.

6              Greg, can you enable screen

7          sharing?

8              THE REPORTER:  Yes.

9              MR. LANG:  Thank you.

10             (Exhibit 26, Notice of Subpoena

11         for Deposition, 17 pages, marked for

12         identification.)

13   BY MR. LANG:

14        Q.   You should see before you, if I've

15   done this correctly, the notice of subpoena

16   for deposition.

17             Do I need to make it bigger?

18             How is that?

19        A.   That's wonderful; yes.

20        Q.   Have you received a copy of the

21   subpoena?

22        A.   Yes.

23        Q.   All right.  I'm going to go to the

24   last page.

25             MR. LANG:  And, Scott, if you

```
 1                      RICHARD ALLISON
 2           want me to not skip pages, let me
 3           know, but I don't think this is one
 4           where you're going to care.
 5                   MR. BLACK:  That's fine.
 6           Q.    Last page of this document is
 7      entitled "Deposition Topics."
 8                   Do you see that?
 9           A.    Yes.
10           Q.    Did you see that before today?
11           A.    I believe so; yes.
12           Q.    Are you prepared and competent to
13      testify on those four topics?
14                   (Pause.)
15           A.    Yes.
16           Q.    All right.  Who is your actual
17      employer?
18           A.    Hudson Bay Capital Management.
19           Q.    What is your title there?
20           A.    Director and senior counsel.
21           Q.    You said, senior counsel.  Is that
22      a lawyer position?
23           A.    Correct.
24           Q.    I did not know that.  You're an
25      attorney?
```

```
 1                    RICHARD ALLISON
 2          A.     Yes.
 3          Q.     Where did you go to law school?
 4          A.     NYU.
 5          Q.     Have you practiced privately?
 6          A.     I have at Ropes & Gray, as well as
 7     Kramer Levin Naftalis & Frankel.
 8          Q.     Off topic, when you were you at
 9     Kramer Levin?
10          A.     That's going back a few years
11     here.  I want to say like 2008 to 2012.
12          Q.     Just curious, I had some overlap
13     with them.
14                 And how long have you been with
15     HBCM?
16          A.     Since 2012.
17          Q.     For what it's worth, we're going
18     to deal with a lot of entities that we can
19     abbreviate as Hudson Bay.  I'm going to try to
20     be a little more specific than that.
21                 When I say HBCM, that will refer
22     to the company that's your employer, Hudson
23     Bay Capital Management.  I'm going to try to.
24     I may not be too perfect with respect to that.
25                 What is your job, what do you do?
```

1                    RICHARD ALLISON

2          A.    I work on the direct investments

3     desk in a quasi-business and legal role,

4     sometimes we normally refer to it as the desk

5     counsel.  So, I'm part of the investment team

6     and sort of separate from our official legal

7     department, which Scott oversees, but I do

8     have some legal function.

9                And often I'm the liaison between

10    the legal group and the desk.

11         Q.    So, part of the time you're doing

12    business work and part of the time you're

13    answering questions, like but not exactly,

14    hey, Rick, what do we do here?

15         A.    That's right.  And the business

16    work includes, you know, correspondence with

17    various bankers and companies about financing.

18         Q.    Know that in questions I'm asking

19    you, if any attorney-client communication

20    comes up that Scott might know about or might

21    not know about, please, assert the privilege

22    as amicable.

23         A.    Will do.

24               MR. LANG:  Didn't have to write

25         that down in the beginning because I

```
1                    RICHARD ALLISON

2          didn't know.

3          Q.    Who is your boss, and then take me

4     up the chain until you hit the top.

5          A.    Sure.  So, the head of the desk

6     is, there are two co-portfolio managers,

7     George Antonopoulos is one of them; the other

8     is Yoav Roth.

9          Q.    Spell that for me, please.

10         A.    Roth is R-O-T-H.

11         Q.    Thank you.  The Q is silent?

12         A.    Yeah, that's right.

13         Q.    First name?

14         A.    Yoav, Y-O-A-V.

15         Q.    Up a level.

16         A.    And then Yoav and George report to

17    our chief investment officer who is Sander

18    Gerber.

19         Q.    And does Sander have a boss?

20         A.    No, other than Scott.

21              MR. LANG:  I knew Sander when he

22         was 18, 19, 20, and the hairline was

23         already here (indicating).

24              All right.  To make it even

25         clearer that there are a thousand
```

```
 1                    RICHARD ALLISON
 2          entities named Hudson Bay, I'm going
 3          to show you what Scott has provided to
 4          us, and I am marking as Exhibit 27.
 5                  One second while I do the work
 6          here.
 7                  (Pause.)
 8                  All right.  Screen Share.
 9                  (Exhibit 27, Organization chart
10          for Hudson Bay Multi-Strategy Capital
11          Structure, 1 page, marked for
12          identification.)
13     BY MR. LANG:
14          Q.    What has been represented to me as
15       a, for lack of a better phrase, org chart for
16       "Hudson Bay Multi-Strategy Capital Structure,"
17       this one is dated December 20th.
18                  I can tell you that I am reading
19       off of Scott's e-mail description of it.
20                  Do you recognize this chart?
21          A.    Yes.
22          Q.    Can you state for the record what
23       it is, if I've mis-described it?
24          A.    I think your description was
25       accurate.  I mean, sometimes we would refer to
```

```
 1                    RICHARD ALLISON
 2      it as a wire, wire diagram, because it shows
 3      the relationship between the various entities
 4      versus an org chart which often is used to
 5      refer to people in the organization.
 6            Q.    But this shows all the affiliates
 7      of HBCM?
 8            A.    All that I'm aware of; yes.
 9            Q.    I want to make sure I understand
10      this chart -- there's a 50/50-shot there.
11                  At the top of this chart, there
12      are three boxes with dark blue outlines and
13      white tails:  "US Investors, Non US, US
14      Exempt," and, again, the same thing on the
15      right.
16                  Do I read correctly those three
17      boxes are the sources of money that go into
18      all that is Hudson Bay?
19            A.    That is my understanding.
20            Q.    Then the navy blue box, the royal
21      blue boxes, "Hudson Bay Fund, HB Fund, Hudson
22      Bay Master Fund," and the other three over
23      here on the right, are those the entities that
24      the money goes into for distribution?
25            A.    As I understand it, yes.
```

```
 1                    RICHARD ALLISON
 2          Q.    And then scrolling to the bottom,
 3     we have three columns in wider gray boxes, and
 4     two columns of more square gray boxes.
 5                Are those the actual entities that
 6     hold the investments?
 7          A.    Yes.  I mean, I think sometimes
 8     there are other entities that invest,
 9     including the gray boxes above those, as well
10     as some of the royal blue boxes will also
11     invest in some of those entities.
12          Q.    You went to the fourth thing I was
13     going to ask.
14                The gray boxes above -- someone
15     was having fun with PowerPoint -- these are
16     not fully gray but gray with a gradation down
17     to white on the bottom.
18                What is the distinction between
19     those boxes and the plain gray ones?
20          A.    I'm not aware of any.
21          Q.    Who, for lack of a better phrase,
22     manages all of these entities?
23          A.    Manage?  I guess, could you
24     clarify what you mean by managing the
25     entities.
```

```
 1                    RICHARD ALLISON
 2         Q.    There's the first bad question.
 3               Let's look at Hudson Bay Fund LP
 4    for a second.
 5               Does Hudson Bay Fund LP have
 6    employees?
 7         A.    Not that I'm aware of.
 8         Q.    Where are the people who operate
 9    Hudson Bay Fund LP employed?
10         A.    They would be employed by Hudson
11    Bay Capital Management, which would have an
12    agreement with Hudson Bay Fund LP to manage
13    its assets on behalf of the entity.
14         Q.    And that would be true for all of,
15    let's start with, the royal blue boxes?
16         A.    That's my understanding; yes.
17         Q.    Now, let's go down to the gray
18    boxes.  Let's take the one in the top middle,
19    "STUW Ltd (Cayman Islands)."
20               Does STUW Ltd have employees?
21         A.    Not that I'm aware of.
22         Q.    Is it the same situation where
23    they contract all the way up to HBCM?
24         A.    Yes.  The management -- the
25    decisions would be made by Hudson Bay Capital
```

```
 1                    RICHARD ALLISON
 2     Management for each of those entities.
 3            Q.    And that would be true, more
 4     relevantly to today's deposition, in the
 5     fourth column, "Tech Opportunities LLC," they
 6     would be managed by Hudson Bay, HBCM?
 7            A.    Correct.
 8            Q.    Despite someone else owning
 9     .2 percent?
10            A.    Correct.
11            Q.    Out of curiosity, who owns the .2?
12            A.    As I recall, the .2 is owned by
13     Hudson Bay Capital Associates; that's actually
14     reflected in the last line of that gray box
15     where it reads, "(HBCM Member)".
16                  MR. LANG:  Wonderful.  You're
17            plowing right through questions that I
18            have.
19                  All right.  We'll do another
20            exhibit.  I'm going to stop sharing
21            this one.  First I'm going to mark it.
22                  This is going to be Exhibit 28.
23            Screen Share.  All right.
24                  (Exhibit 28, Web page, 1 page,
25            marked for identification.)
```

```
                                            Page 20

 1                    RICHARD ALLISON
 2      BY MR. LANG:
 3            Q.    This is, I'll represent to you,
 4      "Hudson Bay Capital" dot com, forward slash
 5      "Who," underscore "We," underscore "Are,"
 6      that's A-R-E.
 7                  Do you recognize this web page?
 8            A.    It looks familiar, although I
 9      can't say, you know, that I've studied it in
10      the past.
11            Q.    Let me scroll through it a little
12      bit.  That may help.  May not.  Don't know.
13                  (Scrolling; pause.)
14            A.    Yes, I recognize it.
15            Q.    The first time we see "Hudson Bay
16      Capital" on this page is a little sailboat
17      logo up top.
18                  To what company does that refer or
19      does it refer to a company and all of its
20      affiliates?
21            A.    I interpret it as referring to
22      Hudson Bay Capital Management.
23            Q.    And when we go further down the
24      page, the first time a company name is
25      mentioned -- make it bigger -- is in the
```

```
                                            Page 21
 1                    RICHARD ALLISON
 2      "Persistent profitability" section, which
 3      refers to Hudson Bay Capital as a successor to
 4      Gerber Asset Management LLC, and that is again
 5      referring to HBCM?
 6           A.    Yes.
 7           Q.    And would that be Mr. Roth, the
 8      second picture in the top row?
 9           A.    Yes.
10           Q.    And Mr. Antonopoulos, the first
11      picture on the bottom row?
12           A.    Yes.
13           Q.    Who decides what investments, I'll
14      call them the gray companies, the Tech
15      Opportunities' level companies, make?
16                 Bad question.
17                 The companies in the gray box that
18      we talked about, like Tech Opportunities, are
19      companies that hold the actual investments.
20                 What is the process for deciding
21      which of those companies will hold what
22      investments?
23           A.    We have some general policies
24      about investment allocation to entities, and
25      if there are -- for certain types of entities
```

```
 1                    RICHARD ALLISON
 2      that aren't fully-owned or predominantly-owned
 3      by our flagship fund, Hudson Bay Master Fund,
 4      there is a committee that would weigh in on an
 5      allocation away from those entities and have
 6      to provide their approval.
 7           Q.     Is that a committee of HBCM?
 8           A.     Correct; it's all HBCM employees.
 9                  Sorry.  I was going to finish my
10      answer.
11                  For companies that are
12      wholly-owned or predominantly-owned by Hudson
13      Bay Master Fund, the investment professionals
14      managing the investment have discretion to
15      allocate between them.
16                  MR. LANG:  This might be a good
17             time to show you already marked
18             Exhibits 2, 3, 4 and 5.
19                  Before I put them up there, I'm
20             going to tell you that they are the
21             investment agreements that we're
22             talking about in this case.
23                  I am going to want you to look
24             at them, if you haven't, and make sure
25             that they are what you remember them
```

```
 1                    RICHARD ALLISON
 2            being and tell me, yes, that is
 3            Mr. Antonopoulos's signature at the
 4            end if, in fact, it is.
 5                    This is one of those things
 6            that's actually easier in person.
 7                    I'll tell you, I'm impressed
 8            with your having the focus to be
 9            deposed while on a busy trading floor.
10                    THE WITNESS:  You know, part of
11            the job is just being able to focus
12            when other things are going on around
13            you; so, it's years of training.
14                    MR. LANG:  There you go.  All
15            right.
16                    (Exhibit 2, PREVIOUSLY MARKED,
17            Securities Purchase Agreement dated
18            December 24, 2020, 37 pages, used in
19            the deposition.)
20    BY MR. LANG:
21            Q.    All right.  I'm going to start
22    with Exhibit 2 -- once I get the Screen Share
23    going.
24                    This is the Securities Purchase
25    Agreement dated December 24, 2020.
```

```
 1                    RICHARD ALLISON
 2                Do you see that in the first
 3      paragraph?
 4           A.    Yes.
 5           Q.    I'll represent to you that it's 37
 6      pages long and that Mr. Antonopoulos's
 7      purported signature is on page 37.
 8                You may take me through all 37
 9      pages before you answer this question, or
10      whatever you want, I'll be clear about that,
11      do you recognize this document, and is it what
12      it purports to be?
13           A.    Could you scroll down to the
14      signature pages.
15                (Scrolling; pause.)
16           Q.    You didn't want to read the merger
17      clause?
18                MR. BLACK:  Are you representing
19           these are the securities purchase
20           agreements I sent you?
21                MR. LANG:  These are the ones
22           that were used in the A&T deposition
23           but, yeah, I'll represent that to you.
24                MR. BLACK:  So, Rick, these came
25           from our files.
```

1               RICHARD ALLISON

2                THE WITNESS:  Okay.  Do you mind

3          scrolling up to the last page of the

4          document.

5                (Scrolling; pause.)

6                MR. LANG:  There you go.  Want

7          me to make it bigger?

8                THE WITNESS:  Scroll up one

9          more, please.

10                (Scrolling; pause.)

11                MR. LANG:  Bigger?

12                THE WITNESS:  That's fine, but

13          can you scroll up a page, not zooming.

14                (Scrolling; pause.)

15                THE WITNESS:  Keep going up,

16          please.

17                (Scrolling; pause.)

18                THE WITNESS:  One more, please.

19                (Scrolling; pause.)

20                THE WITNESS:  Okay.  So, now can

21          we just flip through the signature

22          pages for a couple seconds on each.

23                (Scrolling; pause.)

24                MR. LANG:  Yes.

25                And, Scott, to be clear, these

```
 1                    RICHARD ALLISON
 2           are identical to yours.  These are
 3           marked as they came from FTFT, which I
 4           believe would be our production.
 5                    THE WITNESS:  Next page, and
 6           stop there.
 7                    (Scrolling; pause.)
 8                    THE WITNESS:  Next page.
 9                    (Scrolling; pause.)
10                    THE WITNESS:  Next page, please.
11                    (Scrolling; pause.)
12                    MR. LANG:  That is it.
13                    THE WITNESS:  I would expect to
14           see exhibits on an agreement like
15           this, but it does appear to be a
16           securities purchase agreement used for
17           a financing.
18                    What was the exact question?
19           Q.    The exact question was, is it the
20      agreement that it purports to be, but I'll go
21      to the front page, so you can answer that
22      question better.
23                    Is this the securities purchase
24      agreement dated December 24, 2020 between
25      Future Fintech and the parties who are listed
```

```
 1                    RICHARD ALLISON
 2      as purchasers on those pages at the end,
 3      meaning, you and A&T?
 4           A.    Yes.
 5           Q.    And this represents a transaction
 6      in which HBCM or an affiliate took part in?
 7           A.    Yes.
 8                 (Exhibit 3, PREVIOUSLY MARKED,
 9           Securities Purchase Agreement dated
10           January 11, 2021, 36 pages, used in
11           the deposition.)
12                 MR. LANG:  Now, we're going to
13           go with Exhibit 3 already marked and
14           have you look at the first page or at
15           least that opening paragraph.
16                 Then we'll do the same thing,
17           we'll go to the end and then back to
18           the first page.
19                 THE WITNESS:  Okay.  If can you
20           just do the same thing where you
21           scrolled through starting with the
22           last page through the signature pages
23           that would be helpful.
24                 (Scrolling; pause.)
25                 MR. LANG:  Yes.  Last page.
```

```
 1                    RICHARD ALLISON
 2                 (Scrolling; pause.)
 3                 Second to the last page.
 4                 (Scrolling; pause.)
 5                 Third to last.
 6                 THE WITNESS:  Yes.  Now I can
 7            answer the question; yes.
 8            Q.    And the question is, is this the
 9       securities purchase agreement between Future
10       Fintech Group and two companies on the
11       signature pages dated on or about January 11,
12       2021?
13            A.    Yes.
14            Q.    And you participated, HBCM or an
15       affiliate participated in this transaction?
16            A.    Yes.
17                 (Exhibit 4, PREVIOUSLY MARKED,
18            Securities Purchase Agreement dated
19            February 9, 2021, 36 pages, used in
20            the deposition.)
21                 MR. LANG:  We're going to do
22            what has previously been marked as
23            Exhibit 4, and we'll do the same
24            thing.
25                 (Scrolling; pause.)
```

```
                                        Page 29

 1                      RICHARD ALLISON

 2                 Antonopoulos; A&T; Future

 3            Fintech.

 4                 (Scrolling; pause.)

 5                 End of the document.

 6                 (Scrolling; pause.)

 7                 Go to the top.

 8                 (Scrolling; pause.)

 9       Q.     Is this document a securities

10    purchase agreement dated as of February 9,

11    2121 between Future Fintech and the entities

12    on the signatures pages?

13       A.     Yes.

14       Q.     And did HBCM or an affiliate

15    participate in this transaction?

16       A.     Yes.

17                 (Exhibit 5, PREVIOUSLY MARKED,

18            Securities Purchase Agreement dated

19            April 1, 2021, 35 pages, used in the

20            deposition.)

21                 MR. LANG:  And last, but not

22            least -- we're going to switch it up

23            on you.

24                 (Scrolling; pause.)

25                 The last page is A&T; second to
```

```
 1                      RICHARD ALLISON
 2           the last page is Tech Opportunities;
 3           before that is FTFT.
 4                 (Scrolling; pause.)
 5                 And now we're on the text of the
 6           document.  Going up to the first page.
 7           Q.    Is this a securities purchase
 8     agreement dated as of April 1, 2021 between
 9     Future Fintech and the entities on the
10     signature pages?
11           A.    Yes.
12           Q.    And did HBCM or an affiliate
13     participate in this transaction?
14           A.    Yes.
15           Q.    Do you know how Tech Opportunities
16     was chosen to be the investing entity in this
17     transaction?
18           A.    I was involved personally with the
19     documentation for the transaction, and some of
20     the negotiations, and I remember at some
21     point, I don't know if it was communicated to
22     me directly or if it came, you know, somebody
23     mentioned it to another member of our team,
24     but there was a request from the placement
25     agent to use an entity other than Hudson Bay
```

```
                                            Page 31

 1                    RICHARD ALLISON
 2      Master Fund, which would be our flagship fund.
 3            Q.    Do you know why that request was
 4      made?
 5            A.    No, I do not.  I've heard about
 6      this lawsuit that's given me some view about
 7      that.
 8            Q.    I'm asking -- bad question on my
 9      part.
10                  At or around the time the request
11      was made, do you have an understanding as to
12      why the request was made?
13            A.    No.
14            Q.    Had you ever had a request like
15      that before?
16            A.    We've used other entities before
17      but -- yes, yes we have.
18            Q.    How frequently?
19            A.    Not very frequent, maybe once a
20      year, every other year.
21            Q.    And how many transactions do you
22      do in a year?
23            A.    I mean, it varies a lot, depending
24      on, you know, the pace of the market and, you
25      know, how much deal flow is happening; but it
```

```
 1                    RICHARD ALLISON
 2     can be 10 to 15 a month, easily.
 3          Q.    The reason I'm asking is, once a
 4     year is significant, if you do two
 5     transactions a year, once a year.
 6                 So, 10 or 15 a month is a fine
 7     enough estimate?
 8          A.    Yeah, so it's a pretty rare
 9     occurrence.
10                 MR. LANG:  I'm going to show
11          you... bear with me.  Well...
12          Q.    Do you know what it means to be
13     wall-crossed?
14          A.    Yes.
15          Q.    What does it mean?
16          A.    It means when you -- the act of
17     agreeing to receive material, nonpublic
18     information about a publicly-traded issuer,
19     and receiving that information which,
20     according to our policies, results in it being
21     added to our restricted list; the issuer being
22     added.
23          Q.    And what does restricted mean?
24          A.    It means restricted from trading
25     because we are in possession of material,
```

```
                                              Page 33

 1                    RICHARD ALLISON

 2     nonpublic information and subject to a

 3     confidentiality obligation to the source or

 4     the issuer.

 5           Q.    Do you know who Patrick Ko is,

 6     K-O?

 7           A.    Yes.

 8           Q.    And you know if Patrick Ko is

 9     affiliated with FT Global, my client?

10           A.    Yes.

11           Q.    Have you ever spoken to Mr. Ko

12     about Future Fintech?

13           A.    Yes.

14           Q.    Have you ever been wall-crossed by

15     Mr. Ko with respect to Future Fintech?

16           A.    I can't recall off the top of my

17     head.

18                 (Exhibit 29, e-mail from Patrick

19           Ko to Rick Allison dated October 24,

20           2020, 4 pages, marked for

21           identification.)

22    BY MR. LANG:

23           Q.    Let me show you what is being

24     marked as Exhibit 29.

25                 This was a document that you all
```

```
                                        Page 34
 1                    RICHARD ALLISON
 2      produced, an e-mail from Patrick Ko to Rick
 3      Allison dated Saturday, October 24, 2020.
 4                 Do you recognize the e-mail?
 5                 Let me scroll it for you.
 6                 (Scrolling; pause.)
 7                 Do you recognize that e-mail?
 8           A.    Yes.
 9           Q.    What do you recognize that e-mail
10      as?
11           A.    It's an e-mail from Patrick to me
12      about potential financing terms for Future
13      Fintech.
14           Q.    Are potential financing terms
15      material, nonpublic information?
16           A.    Typically, yes.  I don't recall in
17      this case it was material, nonpublic.  There
18      are situations where sometimes a banker may
19      not actually have a mandate, but they might
20      want to explore ideas on a hypothetical basis.
21           Q.    You don't recall one way or
22      another?
23           A.    I don't remember this particular
24      situation, if we were, you know, if this name
25      was on the restricted list at this time.
```

1                    RICHARD ALLISON

2                    MR. LANG:  One moment.  I'm

3          going to show you what we're marking

4          as Exhibit 30, as soon as I actually

5          mark it.

6                    I'm, actually, going to show

7          this e-mail to you backwards, as it

8          were, start from the bottom.

9                    (Scrolling; pause.)

10                   (Exhibit 30, e-mail from Patrick

11         Ko to Rick Allison dated October 24,

12         2020, 3 pages, marked for

13         identification.)

14   BY MR. LANG:

15         Q.    This is an e-mail from Patrick to

16    you dated October 24th, 2020, subject matter

17    is "over-the-wall," reading as follows.

18                   Take a look at it.

19                   Do you now recall receiving that

20    e-mail?

21         A.    Yes.

22         Q.    Do you now recall whether you were

23    over the wall?

24         A.    Yes, I was over the wall after

25    receiving this e-mail.

```
 1                    RICHARD ALLISON
 2          Q.    Then some months later,
 3     December 23rd, 2020 with Allison to Patrick
 4     Ko, the first e-mail up from that, you asked
 5     Patrick to take you off restriction; is that
 6     correct?
 7          A.    Yes.
 8          Q.    And then later that day --
 9          A.    To be clear, I didn't ask him to
10     take me off the restriction.  I asked -- it's
11     a factual determination, which I need his
12     input on, you know, are we still subject to
13     the trading restrictions.
14          Q.    So, going into December 23rd,
15     internally, your records show that you,
16     internally, you believed you could still be on
17     restriction?
18          A.    Based on the material, nonpublic
19     information that we discussed with Patrick
20     starting at the end of October; right.
21          Q.    And Patrick responded to you later
22     that day; is that correct?
23          A.    Yes.
24          Q.    And he told you that you were off
25     restriction?
```

```
                                                  Page 37
 1                        RICHARD ALLISON
 2              A.     Correct.
 3              Q.     Are these three e-mails true and
 4       correct copies of e-mails sent to or from you?
 5              A.     Yes.
 6              Q.     George Antonopoulos who signed
 7       Exhibits 2, 3, 4 and 5, is the same George
 8       Antonopoulos whose picture we saw on the
 9       website?
10              A.     Yes.
11              Q.     And the same George Antonopoulos
12       who you report to?
13              A.     Yes.
14                     MR. LANG:  Mr. Akins, if you
15              have questions and want to ask them, I
16              just want to quickly go through my
17              notes.
18                     MR. AKINS:  Sure.  Thanks.
19       EXAMINATION BY COUNSEL FOR DEFENDANT
20       BY MR. AKINS:
21              Q.     Mr. Allison, I've got a few
22       follow-up questions.  I represent Future
23       Fintech.
24                     First of all, have you read the
25       lawsuit in this case?
```

```
 1                      RICHARD ALLISON
 2          A.    As in the complaint?
 3          Q.    Yes.
 4          A.    I have not.
 5          Q.    Do you have an understanding of
 6    what the case is about, generally speaking?
 7          A.    Scott filled me in; yes.
 8          Q.    So, without divulging -- Scott's
 9    going to take his mute off so he can object to
10    attorney-client privilege, if necessary -- but
11    what is your understanding of what the case is
12    about?
13          A.    My understanding is that there's a
14    disagreement between Patrick and Future
15    Fintech about whether or not he's entitled to
16    any fees based on his work on the behalf of
17    the company.
18          Q.    All right.  Do you have any
19    thoughts on that one way or the other?
20          A.    I don't.  I don't know enough
21    about, you know, whatever agreements exist
22    between Patrick and Future Fintech.
23          Q.    Did you, you being Hudson Bay
24    Capital Management, did you ever see a
25    protected investor list or also referred to as
```

```
                                            Page 39

 1                    RICHARD ALLISON

 2      a tail list from FT Global?

 3           A.    I don't remember seeing anything

 4      like that.

 5                 MR. BLACK:  Just to be clear,

 6           you're asking Rick if he's seen that

 7           as opposed to Hudson Bay Capital

 8           Management; correct?

 9                 MR. AKINS:  My understanding is

10           that he's here to testify on behalf of

11           Hudson Bay.

12                 MR. BLACK:  Just to be clear, I

13           was sent documents as part of the

14           pleadings in this case, and I work at

15           Hudson Bay Capital Management.

16                 You asked if Hudson Bay Capital

17           Management has seen this document.

18                 So, Rick is speaking on behalf

19           of himself.

20                 MR. AKINS:  So, Rick is being

21           deposed individually and not as the

22           representative of Hudson Bay?

23                 MR. BLACK:  He is being deposed

24           as a representative of Hudson Bay,

25           although he cannot know whether any,
```

```
                                            Page 40

 1                    RICHARD ALLISON
 2          what every single employee has or has
 3          not seen.
 4               I think he's most qualified to
 5          be deposed on the Hudson Bay generally
 6          with respect to these questions.
 7               MR. AKINS:  Let me ask maybe a
 8          more general question that can obviate
 9          this line of inquiry.
10          Q.   Mr. Allison, is it fair to say
11     that prior to your deposition today, did you
12     investigate whether or not Hudson Bay received
13     a protected investor list, a tail list, from
14     FT Global?
15               MR. LANG:  I'm going to object
16          because I'm the party who served the
17          subpoena.  That question is outside
18          the scope of the four narrow topics
19          included in the subpoena.
20               You may go ahead and answer but,
21          in terms of the scope of the subpoena,
22          I object.
23               MR. AKINS:  Do you want me to
24          restate the question?
25               THE WITNESS:  Yes, please.
```

```
                                                Page 41
 1                    RICHARD ALLISON
 2               MR. AKINS:  Okay.
 3          Q.     In preparing for your deposition
 4     today, did you investigate whether anyone at
 5     Hudson Bay had received a protected investor
 6     list or tail list from FT Global?
 7          A.     I didn't investigate, but I'm not
 8     personally aware of anyone receiving such a
 9     list.
10               MR. AKINS:  If we can go back to
11               Exhibit 30, Eric.
12                    That's it.  Thank you.
13                    Is this Exhibit 30, even though
14               it says, just to be clear, "Potential
15               29" on the top?
16               MR. LANG:  These are out of my
17               desktop file which has various notes
18               on them.
19                    In the actual record, it is 30.
20               MR. AKINS:  So that Exhibit 30,
21               Mr. Allison, you were referring to
22               this earlier in your deposition
23               testimony.
24                    If I can ask Eric to be so nice
25               just to scroll down to where Patrick
```

```
                                             Page 42

 1                         RICHARD ALLISON
 2              e-mails you, Mr. Allison, initially
 3              with a bunch of links regarding Future
 4              Fintech.
 5                      MR. LANG:  Let me be clear as to
 6              what's happening.
 7                      This is the "Send" information.
 8              As soon as I scroll, the "Send"
 9              information is in this e-mail.
10                      MR. AKINS:  Thank you.
11              Q.    So that the e-mail itself is on --
12         usually these things show on page 2 of 3.
13                      So, Mr. Allison, I have a few
14         questions about what's represented on this
15         document.
16                      Are any of those links material,
17         nonpublic information?
18                      (Pause.)
19              A.    I, actually, would have to
20         typically defer to whoever has provided the
21         information about what could constitute
22         material, nonpublic information or what may
23         not be material, nonpublic information.
24                      I do not note in the e-mail in the
25         bold underlying text, it's pretty clear that
```

Page 43

1                      RICHARD ALLISON
2        Patrick has not given me any material,
3        nonpublic information, other than the
4        information about the proposed transaction.
5             Q.    And so, to pick up on that, what
6        material, nonpublic information do you recall
7        that he gave?
8             A.    I think he told me about a
9        potential financing, and that the company was
10       looking to raise capital; and we talked about
11       potential terms and structures that would be
12       used to achieve that goal.
13            Q.    And we talked about where you have
14       had phone conversations; right?
15            A.    Correct.  I mean, I've met Patrick
16       in person, but most of the time we worked over
17       the phone or e-mail.
18            Q.    Now, as a lawyer, I have to ask
19       questions about that.
20                  Did you ever meet with Patrick in
21       person about the Future Fintech investment?
22            A.    No.
23            Q.    Are there any e-mails that you
24       remember where he e-mailed material, nonpublic
25       information?

```
 1                    RICHARD ALLISON
 2          A.    I think the e-mail attaching the
 3     proposed terms would be included within the
 4     material, nonpublic information that he
 5     provided.
 6          Q.    And then going to a different
 7     topic not regarding this particular exhibit.
 8               If I recall your testimony
 9     correctly, the placement agent had requested
10     that Hudson Bay use an entity other than
11     Hudson Bay for the Future Fintech investment;
12     is that right?
13          A.    Correct, other than Hudson Bay
14     Master Fund.
15          Q.    Yes.
16          A.    I actually remember something
17     about this deal, in general.  They didn't want
18     it to include the words, Hudson Bay.
19          Q.    And who said that when and to
20     whom?
21          A.    I can't recall if it was something
22     that the placement agent -- I believe the
23     placement agent was Alliance Global, and I
24     can't remember if they told it to me directly,
25     as we were working to document the deal, or if
```

Page 45

1                    RICHARD ALLISON
2        it was something that was obtained indirectly
3        via one of my colleagues who also was working
4        on the deal and was speaking with the
5        placement agent about the terms.
6             Q.    Would you happen to remember who
7        at Alliance Global would have made that
8        request?
9             A.    I don't.  Usually, I mean,
10       typically, I'm speaking to either George
11       Antonopoulos or Harry Ioannou -- sorry,
12       pronunciation is not my forte -- it would have
13       likely been one of those two, but I don't
14       remember specifically.
15            Q.    Had you ever done that before for
16       Alliance Global?
17            A.    Not that I recall.
18            Q.    Do you recall whether you or any
19       of your colleagues that you talked to had
20       inquired as to why Alliance Global wanted to
21       make that distinction?
22            A.    I don't recall.  I don't think we
23       did.  I think it was a very quickly moving
24       situation, and the terms were attractive; and
25       it was something we could do without much,

```
                                            Page 46
 1                    RICHARD ALLISON
 2      without any real economic effect on us as
 3      investors; and we were happy to facilitate it
 4      if it could move the deal forward.
 5                  MR. AKINS:  Okay.  Pause for now
 6            and pass the witness back to Mr. Lang.
 7                  MR. LANG:  I had nothing until
 8            Mr. Akins asked all those questions.
 9      EXAMINATION BY COUNSEL FOR PLAINTIFF
10      BY MR. LANG:
11            Q.    FTFT is a public company, correct,
12      Future Fintech?
13            A.    Yes.  Publicly-traded stock; yes.
14            Q.    Would it be of significance to the
15      market to know whether FTFT was seeking
16      financing?
17            A.    Yes.  I think that is often a big
18      part of material, nonpublic information that
19      we receive.
20            Q.    Would the terms of that financing
21      be material to the market?
22            A.    Yes, definitely.
23                  MR. LANG:  I'm going to show you
24            what I'm going to mark as Exhibits 31
25            and 32.
```

```
                                          Page 47
 1                    RICHARD ALLISON
 2              MR. AKINS:  Not only did he have
 3         questions, he has exhibits.
 4              MR. LANG:  You're going to thank
 5         me.  You'll like this.  How's that?
 6                  One more piece of housekeeping.
 7                  Okay.
 8                  These are Exhibits 31 and 32,
 9         which I believe I'm going to show in
10         the right order.
11                  (Exhibit 31, e-mail from Zach
12         Grodko to Shilpi Shah dated December
13         12, 2020, 4 pages, marked for
14         identification.)
15     BY MR. LANG:
16         Q.   I'm going to show you what's been
17     marked as Exhibit 31.
18                  The Screen Shot is there.
19                  This is an e-mail from Zach Grodko
20     to Shilpi Shah -- I am as good at pronouncing
21     as you are.
22                  Do you know either of these
23     people?
24         A.   Yes.  Well, the recipient is
25     Shilpi Shah, but I know both.
```

```
 1                      RICHARD ALLISON
 2          Q.    Golly, it is.
 3                And who are they?
 4          A.    Shilpi Shah works on my team at
 5     Hudson Bay.  She handles a lot of the
 6     operational aspects and processing for our
 7     investments.
 8                And Zach works on the syndicate
 9     team at Alliance Global and has sort of a
10     similar role for the financing where Alliance
11     Global is involved.
12          Q.    So, this is a communication from
13     Alliance Global to you all?
14          A.    Correct.
15          Q.    And do you know what this
16     communication means?
17                MR. LANG:  Let me scroll down
18     more.
19                (Scrolling; pause.)
20                If I'm scrolling too fast, tell
21          me.  I'm going to go back up to the
22          top.
23                (Scrolling; pause.)
24          Q.    I'll ask you if you know what this
25     e-mail means?
```

1              RICHARD ALLISON

2         A.    Well, other than the fact that

3     everyone was working on closing this financing

4     on Christmas Eve 2020 --

5              MR. LANG:  No one was going

6         anywhere on Christmas '20.

7              THE WITNESS:  That is true.

8         A.    It looks like they were trying to

9     verify the wire instructions to fund the

10    purchase price for the closing.

11        Q.    Is Mr. Grodko issuing instructions

12    regarding Tech Opportunities?

13        A.    Well, I think it's Tech

14    Opportunities' obligation to fund the purchase

15    price.  And I know from memory that, you know,

16    our policies require call verification to

17    confirm any wire instructions before we

18    actually send the funds.

19              (Exhibit 32, e-mail from Rick

20         Allison to DI Team dated February 9,

21         2021, 2 pages, marked for

22         identification.)

23    BY MR. LANG:

24        Q.    Let me show you what's been marked

25    as Exhibit 32, it's one of your e-mails, Rick

```
 1                    RICHARD ALLISON
 2     Allison to the DI Team, and a number of other
 3     people.
 4                    You state, "Actually, the banker
 5     is requesting for us to do this through Tech
 6     Opps, same as last FTFT deal."
 7                    What does this refer to?
 8          A.    That refers to the fact that we
 9     were using the Tech Opportunities' entity to
10     participate in the financing, which is the
11     same thing we did with the prior Future
12     Fintech deal.
13          Q.    And, in fact, at 10:45 a.m., in
14     this first e-mail, are you going back and
15     correcting yourself from 10:41 a.m. when you
16     said HBMF?
17          A.    Correct.   Correct.
18          Q.    And does this go all the way down
19     to Mr. Ioannou.
20          A.    Yeah, I believe he's called Harry.
21          Q.    Harry, we'll go with that.
22                    And he is the person who talked to
23     you about using Tech Opportunities?
24          A.    I can't remember -- so, this all
25     goes back to an original request from Alliance
```

Page 51

```
 1                    RICHARD ALLISON
 2      Global, and I can't remember who made the
 3      original request.
 4               I do remember talking earlier --
 5      this e-mail would suggest that we were talking
 6      to Harry about this particular transaction on
 7      February 9th.
 8          Q.    And this is a true and correct
 9      copy of the e-mail chain?
10          A.    Yes.
11               MR. LANG:  Mr. Akins, I tried.
12               MR. AKINS:  Okay.  One more
13          question while keeping with the same
14          Exhibit 32.
15      EXAMINATION BY COUNSEL FOR DEFENDANT
16      BY MR. AKINS:
17          Q.    Your statement, Mr. Allison, is,
18      "Actually the banker is requesting for us to
19      do this through Tech Opps."
20               The banker refers to Alliance
21      Global; right?
22          A.    Correct.  It's another word for
23      placement agent.  And that was Alliance Global
24      for this deal.
25               MR. AKINS:  No further
```

```
                                    Page 52
 1                   RICHARD ALLISON
 2          questions.
 3                  MR. LANG:  I am done unless
 4          Mr. Black is willing to engage in
 5          questions that you and I will follow
 6          up.  He looks competent to me.
 7                  MR. BLACK:  I have about three
 8          hours of questions which I'll cut to
 9          zero.
10                  MR. LANG:  Thank you.
11                  I'm assuming you're going to
12          read and sign?
13                  MR. BLACK:  Yes.
14                  MR. LANG:  Gentleman, I appreciate
15          it.  I will make sure that everyone
16          has the right exhibits and the right
17          numbers.  I am representing for the
18          record that the ones that were loaded
19          up online were the same as the ones
20          that I've been sharing from my hard
21          drive, just to make sure that we are
22          all on the same page.
23                  MR. BLACK:  Thank you, guys.
24                  (Deposition adjourned 1:55 p.m.)
25                      *  *  *  *  *
```

```
 1                    RICHARD ALLISON
 2        July 6, 2022
 3                       I N D E X
 4        WITNESS          EXAMINATION BY        PAGE
 5        R. Allison       by Mr. Lang          5-46
                           by Mr. Akins        37-51
 6
 7                       E X H I B I T S
 8          EXHIBIT   PAGE    DESCRIPTION
 9
          Exhibit 26   10 Notice of Subpoena for
10                        Deposition, 17 pages
11        Exhibit 27   15 Organization chart for
                          Hudson Bay
12                        Multi-Strategy Capital
                          Structure, 1 page
13
          Exhibit 28   19 Web page, 1 page
14
15        Exhibit 2    23 PREVIOUSLY MARKED,
                          Securities Purchase
16                        Agreement dated
                          December 24, 2020, 37
17                        pages
18        Exhibit 3    27 PREVIOUSLY MARKED,
                          Securities Purchase
19                        Agreement dated
                          January 11, 2021, 36
20                        pages
21        Exhibit 4    28 PREVIOUSLY MARKED,
                          Securities Purchase
22                        Agreement dated
                          February 9, 2021, 36
23                        pages
24
25
```

Page 54

```
 1                         RICHARD ALLISON
 2         Exhibit 5     29 PREVIOUSLY MARKED,
                            Securities Purchase
 3                          Agreement dated April
                            1, 2021, 35 pages
 4
           Exhibit 29    33 E-mail from Patrick Ko
 5                          to Rick Allison dated
                            October 24, 2020, 4
 6                          pages
 7         Exhibit 30    35 E-mail from Patrick Ko
                            to Rick Allison dated
 8                          October 24, 2020, 3
                            pages
 9
           Exhibit 31    47 E-mail from Zach
10                          Grodko to Shilpi Shah
                            dated December 12,
11                          2020, 4 pages
12         Exhibit 32    49 E-mail from Rick
                            Allison to DI Team
13                          dated February 9,
                            2021, 2 pages
14
15
16
17                     (EXHIBITS ATTACHED)
18
19
20
21
22
23
24
25
```

Page 55

```
 1              RICHARD ALLISON
 2            C E R T I F I C A T E
 3        STATE OF NEW YORK        )
                                   )    :ss.
 4        COUNTY OF SARATOGA       )
 5            I, GREGORY T. DIDONATO, CSR#541,
 6        Certified Realtime Reporter and Notary
 7        Public within and for the State of New
 8        York, do hereby certify:
 9              That RICHARD ALLISON, the
10        witness whose deposition is
11        hereinbefore set forth, was duly sworn
12        by me and that such deposition is a
13        true record of the testimony given by
14        the witness.
15              I further certify that I am not
16        related to any of the parties to this
17        action by blood or marriage, and that
18        I am in no way interested in the
19        outcome of this matter.
20              IN WITNESS WHEREOF, I have
21        hereunto set my hand this 11th day of
22        July, 2022.
23
                 _Gregory T. DiDonato_____
24             GREGORY T. DiDONATO
          Notary Public State of New York
25        Notary ID No. 01D16137822
```

```
                                              Page 56
 1    SCOTT BLACK, ESQ.

 2    Sblack@hudsonbaycapital.com

 3                       July 15, 2022

 4    RE:    FT Global Capital Inc. v. Future Fintech Group Inc.

 5         7/6/2022, Rick  Allison (#5307498)

 6         The above-referenced transcript is available for

 7    review.

 8         Within the applicable timeframe, the witness should

 9    read the testimony to verify its accuracy. If there are

10    any changes, the witness should note those with the

11    reason, on the attached Errata Sheet.

12         The witness should sign the Acknowledgment of

13    Deponent and Errata and return to the deposing attorney.

14    Copies should be sent to all counsel, and to Veritext at

15    erratas-cs@veritext.com.

16

17     Return completed errata within 30 days from

18    receipt of testimony.

19      If the witness fails to do so within the time

20    allotted, the transcript may be used as if signed.

21

22                     Yours,

23                     Veritext Legal Solutions

24

25
```

```
                                             Page 57
 1    FT Global Capital Inc. v. Future Fintech Group Inc.
 2    Rick  Allison (#5307498)
 3                E R R A T A   S H E E T
 4    PAGE_____ LINE_____ CHANGE_____
 5    _____
 6    REASON_____
 7    PAGE_____ LINE_____ CHANGE_____
 8    _____
 9    REASON_____
10    PAGE_____ LINE_____ CHANGE_____
11    _____
12    REASON_____
13    PAGE_____ LINE_____ CHANGE_____
14    _____
15    REASON_____
16    PAGE_____ LINE_____ CHANGE_____
17    _____
18    REASON_____
19    PAGE_____ LINE_____ CHANGE_____
20    _____
21    REASON_____
22
23    _____   _____
24    Rick  Allison                              Date
25
```

Page 58

1   FT Global Capital Inc. v. Future Fintech Group Inc.

2   Rick  Allison (#5307498)

3                   ACKNOWLEDGEMENT OF DEPONENT

4       I, Rick  Allison, do hereby declare that I

5   have read the foregoing transcript, I have made any

6   corrections, additions, or changes I deemed necessary as

7   noted above to be appended hereto, and that the same is

8   a true, correct and complete transcript of the testimony

9   given by me.

10

11   _____    _____

12   Rick  Allison                       Date

13   *If notary is required

14                       SUBSCRIBED AND SWORN TO BEFORE ME THIS

15                       _____ DAY OF _____, 20___.

16

17

18                       _____

19                       NOTARY PUBLIC

20

21

22

23

24

25

| & |
|---|
| **&**   12:6,7 |

| **0** |
|---|
| **00594**   1:3 |
| **01d16137822** |
| 55:25 |

| **1** |
|---|
| **1**   15:11 19:24 |
| 29:19 30:8 53:12 |
| 53:13 54:3 |
| **10**   32:2,6 53:9 |
| **10017**   3:18 |
| **104**   3:5 |
| **10:41**   50:15 |
| **10:45**   50:13 |
| **11**   27:10 28:11 |
| 53:19 |
| **11th**   55:21 |
| **12**   47:13 54:10 |
| **12887**   55:23 |
| **12:58**   4:3 |
| **15**   32:2,6 53:11 |
| 56:3 |
| **150**   3:10 |
| **17**   10:11 53:10 |
| **18**   14:22 |
| **19**   14:22 53:13 |
| **1:00**   1:14 |
| **1:21**   1:3 |
| **1:55**   52:24 |

| **2** |
|---|
| **2**   19:9,11,12 22:18 |
| 23:16,22 37:7 |
| 42:12 49:21 53:15 |
| 54:13 |
| **20**   14:22 49:6 |
| 58:15 |
| **2008**   12:11 |

| **2012**   12:11,16 |
|---|
| **2020**   23:18,25 |
| 26:24 33:20 34:3 |
| 35:12,16 36:3 |
| 47:13 49:4 53:16 |
| 54:5,8,11 |
| **2021**   27:10 28:12 |
| 28:19 29:19 30:8 |
| 49:21 53:19,22 |
| 54:3,13 |
| **2022**   1:13 53:2 |
| 55:22 56:3 |
| **20th**   15:17 |
| **212**   3:18 |
| **2121**   29:11 |
| **214**   3:11 |
| **23**   53:15 |
| **230**   3:5 |
| **23rd**   36:3,14 |
| **24**   23:18,25 26:24 |
| 33:19 34:3 35:11 |
| 53:16 54:5,8 |
| **24th**   35:16 |
| **2566**   3:4 |
| **26**   8:22 10:10 53:9 |
| **27**   15:4,9 53:11,18 |
| **28**   19:22,24 53:13 |
| 53:21 |
| **29**   33:18,24 41:15 |
| 54:2,4 |

| **3** |
|---|
| **3**   22:18 27:8,13 |
| 35:12 37:7 42:12 |
| 53:18 54:8 |
| **30**   35:4,10 41:11 |
| 41:13,19,20 54:7 |
| 56:17 |
| **30345**   3:5 |
| **30th**   3:17 |
| **31**   46:24 47:8,11 |
| 47:17 54:9 |

| **32**   46:25 47:8 |
|---|
| 49:19,25 51:14 |
| 54:12 |
| **33**   54:4 |
| **35**   29:19 54:3,7 |
| **36**   27:10 28:19 |
| 53:19,22 |
| **37**   23:18 24:5,7,8 |
| 53:16 |
| **37-51**   53:5 |
| **384-2591**   3:6 |

| **4** |
|---|
| **4**   22:18 28:17,23 |
| 33:20 37:7 47:13 |
| 53:21 54:5,11 |
| **404**   3:6 |
| **47**   54:9 |
| **49**   54:12 |

| **5** |
|---|
| **5**   22:18 29:17 37:7 |
| 54:2 |
| **5-46**   53:5 |
| **50/50**   16:10 |
| **501**   3:10 |
| **5307498**   56:5 57:2 |
| 58:2 |
| **541**   1:23 55:5 |
| **571-1244**   3:18 |

| **6** |
|---|
| **6**   1:13 53:2 |

| **7** |
|---|
| **7/6/2022**   56:5 |
| **777**   3:17 |
| **78701**   3:11 |

| **9** |
|---|
| **9**   28:19 29:10 |
| 49:20 53:22 54:13 |
| **924-9504**   3:11 |

| **9th**   51:7 |
|---|

| **a** |
|---|
| **a&t**   24:22 27:3 |
| 29:2,25 |
| **a.m.**   50:13,15 |
| **abbreviate**   12:19 |
| **ability**   7:8 |
| **able**   23:11 |
| **acceptable**   8:14 |
| 8:18 |
| **access**   9:13 |
| **accuracy**   56:9 |
| **accurate**   15:25 |
| **achieve**   43:12 |
| **acknowledge**   4:5 |
| 4:9 |
| **acknowledgement** |
| 58:3 |
| **acknowledgment** |
| 56:12 |
| **act**   32:16 |
| **action**   1:3 8:23 |
| 55:17 |
| **actual**   11:16 17:5 |
| 21:19 41:19 |
| **added**   32:21,22 |
| **additions**   58:6 |
| **adjourned**   52:24 |
| **administer**   4:11 |
| **administered**   4:10 |
| **affiliate**   27:6 |
| 28:15 29:14 30:12 |
| **affiliated**   33:9 |
| **affiliates**   16:6 |
| 20:20 |
| **affirm**   5:8 |
| **agent**   30:25 44:9 |
| 44:22,23 45:5 |
| 51:23 |
| **agreeing**   32:17 |

**agreement** 4:17 18:12 23:17,25 26:14,16,20,24 27:9 28:9,18 29:10,18 30:8 53:16,19,22 54:3
**agreements** 22:21 24:20 38:21
**ahead** 40:20
**akins** 3:12 4:24,24 8:17 9:25 37:14 37:18,20 39:9,20 40:7,23 41:2,10 41:20 42:10 46:5 46:8 47:2 51:11 51:12,16,25 53:5
**alliance** 44:23 45:7,16,20 48:9 48:10,13 50:25 51:20,23
**allison** 1:11 2:1,2 3:1 4:1 5:1,7,15 5:20 6:1 7:1 8:1 9:1 10:1 11:1 12:1 13:1 14:1 15:1 16:1 17:1 18:1 19:1 20:1 21:1 22:1 23:1 24:1 25:1 26:1 27:1 28:1 29:1 30:1 31:1 32:1 33:1,19 34:1,3 35:1,11 36:1,3 37:1,21 38:1 39:1 40:1,10 41:1,21 42:1,2,13 43:1 44:1 45:1 46:1 47:1 48:1 49:1,20 50:1,2 51:1,17 52:1 53:1 53:5 54:1,5,7,12 55:1,9 56:5 57:2

57:24 58:2,4,12
**allocate** 22:15
**allocation** 21:24 22:5
**allotted** 56:20
**amicable** 13:22
**answer** 7:25 22:10 24:9 26:21 28:7 40:20
**answering** 13:13
**antonopoulos** 14:7 21:10 29:2 37:6,8,11 45:11
**antonopoulos's** 23:3 24:6
**app** 6:24
**appear** 26:15
**appearances** 4:18
**appears** 6:3
**appended** 58:7
**applicable** 56:8
**appreciate** 52:14
**approval** 22:6
**april** 29:19 30:8 54:3
**arrangement** 4:13
**asked** 36:4,10 39:16 46:8
**asking** 13:18 31:8 32:3 39:6
**aspects** 48:6
**assert** 13:21
**asset** 21:4
**assets** 18:13
**associates** 19:13
**assume** 9:21
**assuming** 52:11
**atlanta** 3:5 4:22
**attached** 54:17 56:11

**attaching** 44:2
**attorney** 11:25 13:19 38:10 56:13
**attorneys** 4:4
**attractive** 45:24
**austin** 3:11
**available** 56:6
**avenue** 3:10,17
**aware** 16:8 17:20 18:7,21 41:8

### b

**b** 53:7
**back** 12:10 27:17 41:10 46:6 48:21 50:14,25
**backwards** 35:7
**bad** 18:2 21:16 31:8
**banker** 34:18 50:4 51:18,20
**bankers** 13:17
**based** 36:18 38:16
**basis** 34:20
**bay** 3:14,16,17 5:4 6:7 11:18 12:19 12:23 15:2,10,16 16:18,21,22 18:3 18:5,9,11,12,25 19:6,13 20:4,15 20:22 21:3 22:3 22:13 30:25 38:23 39:7,11,15,16,22 39:24 40:5,12 41:5 44:10,11,13 44:18 48:5 53:11
**bear** 32:1
**beginning** 13:25
**behalf** 3:14 4:25 5:4 18:13 38:16 39:10,18

**believe** 11:11 26:4 44:22 47:9 50:20
**believed** 36:16
**better** 15:15 17:21 26:22
**big** 46:17
**bigger** 10:17 20:25 25:7,11
**bit** 9:20 20:12
**black** 3:15 5:3,3 5:25 8:16 10:3 11:5 24:18,24 39:5,12,23 52:4,7 52:13,23 56:1
**blood** 55:17
**blue** 16:12,20,21 17:10 18:15
**bold** 42:25
**boss** 14:3,19
**bottom** 17:2,17 21:11 35:8
**box** 16:20 19:14 21:17
**boxes** 16:12,17,21 17:3,4,9,10,14,19 18:15,18
**break** 8:3
**broyles** 3:10
**bunch** 42:3
**business** 13:3,12 13:15
**busy** 23:9
**button** 8:21 9:3

### c

**c** 3:2,6 4:2 55:2,2
**call** 21:14 49:16
**called** 50:20
**capital** 1:4 3:14,16 3:17 5:4 6:7 11:18 12:23 15:10,16 18:11,25 19:13

20:4,16,22 21:3
38:24 39:7,15,16
43:10 53:12 56:4
57:1 58:1
care  11:4
case  22:22 34:17
37:25 38:6,11
39:14
cayman  18:19
certain  7:20 21:25
certified  2:6 55:6
certify  55:8,15
chain  14:4 51:9
change  57:4,7,10
57:13,16,19
changes  56:10
58:6
chart  15:9,15,20
16:4,10,11 53:11
chief  14:17
chosen  30:16
christmas  49:4,6
city  6:4
civil  1:3
clarification  8:2
clarify  17:24
clause  24:17
clear  24:10 25:25
36:9 39:5,12
41:14 42:5,25
clearer  14:25
click  9:11
client  13:19 33:9
38:10
closing  49:3,10
clunkier  9:20
colleagues  45:3,19
column  19:5
columns  17:3,4
com  20:4

comes  13:20
commencing  4:3
committee  22:4,7
communicated
30:21
communicating
6:14,16
communication
13:19 48:12,16
companies  13:17
21:14,15,17,19,21
22:11 28:10
company  12:22
20:18,19,24 38:17
43:9 46:11
competent  7:8
11:12 52:6
complaint  38:2
complete  58:8
completed  56:17
confidentiality
8:11 33:3
confirm  49:17
congress  3:10
connecticut  6:2
consent  4:13
constitute  42:21
contract  18:23
conversations
43:14
copies  37:4 56:14
copy  10:20 51:9
correct  7:19 11:23
19:7,10 22:8 36:6
36:22 37:2,4 39:8
43:15 44:13 46:11
48:14 50:17,17
51:8,22 58:8
correcting  50:15
corrections  58:6

correctly  10:15
16:16 44:9
correspondence
13:16
counsel  3:3,9,16
4:13,16 5:14,18
9:21 11:20,21
13:5 37:19 46:9
51:15 56:14
county  55:4
couple  25:22
court  1:2 2:6
crossed  32:13
33:14
cs  56:15
csr  1:23 55:5
curiosity  19:11
curious  12:12
cut  52:8
cv  1:3

**d**

d  4:2 53:3
dark  16:12
date  57:24 58:12
dated  15:17 23:17
23:25 26:24 27:9
28:11,18 29:10,18
30:8 33:19 34:3
35:11,16 47:12
49:20 53:16,19,22
54:3,5,7,10,13
day  36:8,22 55:21
58:15
days  56:17
deal  12:18 31:25
44:17,25 45:4
46:4 50:6,12
51:24
december  15:17
23:18,25 26:24
36:3,14 47:12

53:16 54:10
decides  21:13
deciding  21:20
decisions  18:25
declare  58:4
deemed  58:6
defendant  1:8 3:9
4:25 37:19 51:15
defer  42:20
definitely  46:22
dep  6:20
department  13:7
depending  31:23
deponent  5:5
56:13 58:3
deposed  7:13 23:9
39:21,23 40:5
deposing  56:13
deposition  1:10
2:2 4:5,7,8 6:23
8:8,13 10:11,16
11:7 19:4 23:19
24:22 27:11 28:20
29:20 40:11 41:3
41:22 52:24 53:10
55:10,12
described  15:23
description  15:19
15:24 53:8
desk  13:3,4,10
14:5
desktop  41:17
despite  19:8
determination
36:11
di  49:20 50:2
54:12
diagram  16:2
didonato  1:23 2:5
55:5,24

**different** 6:8 44:6
**direct** 13:2
**directly** 30:22
  44:24
**director** 11:20
**disadvantages**
  6:20
**disagreement**
  38:14
**discretion** 22:14
**discussed** 36:19
**distinction** 17:18
  45:21
**distribution** 16:24
**district** 1:2,2
**divulging** 38:8
**document** 11:6
  24:11 25:4 29:5,9
  30:6 33:25 39:17
  42:15 44:25
**documentation**
  30:19
**documents** 39:13
**doing** 13:11
**dot** 20:4
**drill** 7:16
**drive** 52:21
**duly** 5:15 55:11

**e**

**e** 3:2,2 4:2,2 15:19
  20:6 33:18 34:2,4
  34:7,9,11 35:7,10
  35:15,20,25 36:4
  37:3,4 42:2,9,11
  42:24 43:17,23,24
  44:2 47:11,19
  48:25 49:19,25
  50:14 51:5,9 53:3
  53:7 54:4,7,9,12
  55:2,2 57:3,3,3

**earlier** 41:22 51:4
**easier** 23:6
**easily** 32:2
**economic** 46:2
**effect** 46:2
**either** 45:10 47:22
**elang** 3:7
**employed** 6:7 18:9
  18:10
**employee** 40:2
**employees** 18:6,20
  22:8
**employer** 11:17
  12:22
**enable** 10:6
**engage** 52:4
**entities** 12:18 15:2
  16:3,23 17:5,8,11
  17:22,25 19:2
  21:24,25 22:5
  29:11 30:9 31:16
**entitled** 11:7
  38:15
**entity** 18:13 30:16
  30:25 44:10 50:9
**eric** 3:6 4:21 5:21
  41:11,24
**errata** 56:11,13,17
**erratas** 56:15
**esq** 3:6,12,15 56:1
**estimate** 32:7
**eve** 49:4
**exact** 26:18,19
**exactly** 13:13
**examination** 5:18
  37:19 46:9 51:15
  53:4
**examined** 5:16
**exempt** 16:14
**exhibit** 8:22 9:4,6
  9:8,8,9,10,11,13

10:10 15:4,9
  19:20,22,24 23:16
  23:22 27:8,13
  28:17,23 29:17
  33:18,24 35:4,10
  41:11,13,20 44:7
  47:11,17 49:19,25
  51:14 53:8,9,11
  53:13,15,18,21
  54:2,4,7,9,12
**exhibits** 22:18
  26:14 37:7 46:24
  47:3,8 52:16
  54:17
**exist** 38:21
**expect** 26:13
**explore** 34:20

**f**

**f** 55:2
**face** 7:5
**facilitate** 46:3
**fact** 23:4 49:2 50:8
  50:13
**factual** 36:11
**fails** 56:19
**fair** 40:10
**familiar** 20:8
**fast** 48:20
**faster** 8:20
**february** 28:19
  29:10 49:20 51:7
  53:22 54:13
**fees** 38:16
**file** 41:17
**files** 24:25
**filled** 38:7
**financing** 13:17
  26:17 34:12,14
  43:9 46:16,20
  48:10 49:3 50:10

**fine** 9:17,25 10:3
  11:5 25:12 32:6
**finish** 22:9
**fintech** 1:7 5:2
  26:25 28:10 29:3
  29:11 30:9 33:12
  33:15 34:13 37:23
  38:15,22 42:4
  43:21 44:11 46:12
  50:12 56:4 57:1
  58:1
**first** 14:13 18:2
  19:21 20:15,24
  21:10 24:2 27:14
  27:18 30:6 36:4
  37:24 50:14
**fisher** 3:10
**fisherbroyles.com**
  3:12
**fix** 7:24
**flagship** 22:3 31:2
**flip** 25:21
**floor** 3:17 6:11 8:6
  23:9
**flow** 31:25
**focus** 23:8,11
**follow** 37:22 52:5
**follows** 5:17 35:17
**foregoing** 58:5
**form** 8:10
**formalities** 8:9
**forte** 45:12
**forth** 55:11
**forward** 20:4 46:4
**four** 11:13 40:18
**fourth** 17:12 19:5
**frankel** 12:7
**frequent** 31:19
**frequently** 31:18
**front** 26:21

**ft**   1:4 4:23 5:21
33:9 39:2 40:14
41:6 56:4 57:1
58:1
**ftft**   26:3 30:3
46:11,15 50:6
**fully**   17:16 22:2
**fun**   17:15
**function**   13:8
**fund**   16:21,21,22
18:3,5,9,12 22:3,3
22:13 31:2,2
44:14 49:9,14
**funds**   49:18
**further**   4:9 20:23
51:25 55:15
**future**   1:7 4:25
26:25 28:9 29:2
29:11 30:9 33:12
33:15 34:12 37:22
38:14,22 42:3
43:21 44:11 46:12
50:11 56:4 57:1
58:1

**g**

**g**   4:2
**general**   21:23 40:8
44:17
**generally**   38:6
40:5
**gentleman**   52:14
**george**   14:7,16
37:6,7,11 45:10
**georgia**   1:2 3:5
4:22
**gerber**   14:18 21:4
**give**   5:10 7:8,25
**given**   31:6 43:2
55:13 58:9
**global**   1:4 4:23
5:21 33:9 39:2

40:14 41:6 44:23
45:7,16,20 48:9
48:11,13 51:2,21
51:23 56:4 57:1
58:1
**go**   7:15 8:4 10:23
12:3 16:17 18:17
20:23 23:14 25:6
26:20 27:13,17
29:7 37:16 40:20
41:10 48:21 50:18
50:21
**goal**   43:12
**god**   5:12
**goes**   16:24 50:25
**going**   8:22 9:15,23
10:23 11:4 12:10
12:17,19,23 15:2
17:13 19:20,21,22
22:9,20,23 23:12
23:21,23 25:15
27:12 28:21 29:22
30:6 32:10 35:3,6
36:14 38:9 40:15
44:6 46:23,24
47:4,9,16 48:21
49:5 50:14 52:11
**golly**   48:2
**good**   9:15 22:16
47:20
**gradation**   17:16
**grant**   8:5
**gray**   12:6 17:3,4,9
17:14,16,16,19
18:17 19:14 21:14
21:17
**greenwich**   6:2
**greg**   2:5 10:6
**gregory**   1:23 55:5
55:24

**grodko**   47:12,19
49:11 54:10
**group**   1:7 3:4
13:10 28:10 56:4
57:1 58:1
**guess**   17:23
**guys**   52:23

**h**

**h**   14:10 53:7 57:3
**ha**   7:18,18
**hairline**   14:22
**hand**   5:7 55:21
**handles**   48:5
**happen**   7:21 45:6
**happening**   31:25
42:6
**happens**   7:22
**happy**   46:3
**hard**   52:20
**hardest**   7:24
**harry**   45:11 50:20
50:21 51:6
**hb**   16:21
**hbcm**   12:15,21
16:7 18:23 19:6
19:15 21:5 22:7,8
27:6 28:14 29:14
30:12
**hbmf**   50:16
**head**   14:5 33:17
**heard**   31:5
**held**   2:3
**help**   5:12 20:12
**helpful**   27:23
**hereinbefore**
55:11
**hereto**   58:7
**hereunto**   55:21
**hey**   13:14
**hit**   9:5,6 14:4

**hold**   17:6 21:19,21
**hope**   8:4
**hosted**   2:4
**hours**   52:8
**house**   3:16
**housekeeping**
5:23 47:6
**how's**   47:5
**hudson**   3:14,16,17
5:4 6:7 11:18
12:19,22 15:2,10
15:16 16:18,21,21
18:3,5,9,10,12,25
19:6,13 20:4,15
20:22 21:3 22:3
22:12 30:25 38:23
39:7,11,15,16,22
39:24 40:5,12
41:5 44:10,11,13
44:18 48:5 53:11
**hudsonbaycapit...**
3:19 56:2
**huh**   7:18
**hypothetical**
34:20

**i**

**ideas**   34:20
**identical**   26:2
**identification**
10:12 15:12 19:25
33:21 35:13 47:14
49:22
**impressed**   23:7
**include**   44:18
**included**   40:19
44:3
**includes**   13:16
**including**   17:9
**indicate**   4:17
**indicating**   14:23

**indirectly** 45:2
**individually** 39:21
**information** 32:18
  32:19 33:2 34:15
  36:19 42:7,9,17
  42:21,22,23 43:3
  43:4,6,25 44:4
  46:18
**initially** 42:2
**input** 36:12
**inquired** 45:20
**inquiry** 40:9
**instructions** 49:9
  49:11,17
**interested** 55:18
**interfere** 7:7
**internally** 36:15
  36:16
**interpret** 20:21
**introduce** 8:22
**introduced** 9:8
**invest** 17:8,11
**investigate** 40:12
  41:4,7
**investing** 30:16
**investment** 13:5
  14:17 21:24 22:13
  22:14,21 43:21
  44:11
**investments** 13:2
  17:6 21:13,19,22
  48:7
**investor** 38:25
  40:13 41:5
**investors** 16:13
  46:3
**involved** 30:18
  48:11
**ioannou** 45:11
  50:19

**islands** 18:19
**issuer** 32:18,21
  33:4
**issues** 8:12
**issuing** 8:13 49:11

### j

**j** 3:12
**january** 27:10
  28:11 53:19
**job** 12:25 23:11
**jpb** 1:3
**july** 1:13 53:2
  55:22 56:3

### k

**k** 33:6
**keep** 25:15
**keeping** 51:13
**knew** 14:21
**knock** 5:22
**know** 8:3 11:3,24
  13:16,18,20,21
  14:2 20:9,12
  23:10 30:15,21,22
  31:3,24,25 32:12
  33:5,8 34:24
  36:12 38:20,21
  39:25 46:15 47:22
  47:25 48:15,24
  49:15,15
**ko** 33:5,8,11,15,19
  34:2 35:11 36:4
  54:4,7
**kramer** 12:7,9

### l

**lack** 15:15 17:21
**lang** 3:4,6 4:21,21
  4:22 5:19,21 6:18
  8:19 9:2,6,14,19
  10:2,4,9,13,25
  13:24 14:21 15:13

19:16 20:2 22:16
  23:14,20 24:21
  25:6,11,24 26:12
  27:12,25 28:21
  29:21 32:10 33:22
  35:2,14 37:14
  40:15 41:16 42:5
  46:6,7,10,23 47:4
  47:15 48:17 49:5
  49:23 51:11 52:3
  52:10,14 53:5
**langlegal.com** 3:7
**law** 12:3
**lawsuit** 31:6 37:25
**lawyer** 11:22
  43:18
**legal** 2:4 3:4 4:22
  13:3,6,8,10 56:23
**level** 14:15 21:15
**levin** 12:7,9
**liaison** 13:9
**license** 2:6
**lieu** 4:10
**likewise** 7:24
**line** 19:14 40:9
  57:4,7,10,13,16
  57:19
**links** 42:3,16
**list** 32:21 34:25
  38:25 39:2 40:13
  40:13 41:6,6,9
**listed** 26:25
**little** 9:19 12:20
  20:11,16
**llc** 19:5 21:4
**llp** 3:10
**loaded** 52:18
**locations** 6:8
**locked** 7:4
**logo** 20:17

**long** 12:14 24:6
**look** 18:3 22:23
  27:14 35:18
**looking** 43:10
**looks** 20:8 49:8
  52:6
**lot** 12:18 31:23
  48:5
**lp** 3:17 18:3,5,9,12

### m

**mail** 15:19 33:18
  34:2,4,7,9,11 35:7
  35:10,15,20,25
  36:4 42:9,11,24
  43:17 44:2 47:11
  47:19 48:25 49:19
  50:14 51:5,9 54:4
  54:7,9,12
**mailed** 43:24
**mails** 37:3,4 42:2
  43:23 49:25
**manage** 17:23
  18:12
**managed** 19:6
**management** 3:14
  3:16,17 5:4 6:7
  11:18 12:23 18:11
  18:24 19:2 20:22
  21:4 38:24 39:8
  39:15,17
**managers** 14:6
**manages** 17:22
**managing** 17:24
  22:14
**mandate** 34:19
**manner** 4:15
**mark** 19:21 35:5
  46:24
**marked** 10:11
  15:11 19:25 22:17
  23:16 26:3 27:8

27:13 28:17,22
29:17 33:20,24
35:12 47:13,17
49:21,24 53:15,18
53:21 54:2
**market**  31:24
46:15,21
**marking**  15:4 35:3
**marriage**  55:17
**master**  16:22 22:3
22:13 31:2 44:14
**material**  32:17,25
34:15,17 36:18
42:16,22,23 43:2
43:6,24 44:4
46:18,21
**matter**  35:16
55:19
**mean**  15:25 17:7
17:24 31:23 32:15
32:23 43:15 45:9
**meaning**  27:3
**means**  32:12,16,24
48:16,25
**medication**  7:7
**meet**  43:20
**member**  19:15
30:23
**memory**  49:15
**mentioned**  20:25
30:23
**merger**  24:16
**met**  43:15
**middle**  18:18
**mind**  25:2
**mis**  15:23
**moment**  35:2
**money**  16:17,24
**month**  32:2,6
**months**  36:2

**move**  8:20 46:4
**moving**  45:23
**multi**  15:10,16
53:12
**mute**  38:9

**n**

**n**  3:2 4:2 53:3
**naftalis**  12:7
**name**  4:21 5:21
14:13 20:24 34:24
**named**  15:2
**narrow**  40:18
**navy**  16:20
**ne**  3:4
**necessary**  5:22
38:10 58:6
**need**  7:25 8:3,5
10:17 36:11
**negotiations**  30:20
**new**  1:23 2:8 3:18
6:4 55:3,7,24
**nice**  41:24
**non**  16:13
**nonpublic**  32:17
33:2 34:15,17
36:18 42:17,22,23
43:3,6,24 44:4
46:18
**normally**  13:4
**northern**  1:2
**notary**  1:23 2:7
55:6,24,25 58:13
58:19
**note**  42:24 56:10
**noted**  58:7
**notes**  37:17 41:17
**notice**  2:5 8:9
10:10,15 53:9
**number**  3:5 50:2
**numbers**  52:17

**ny**  3:18
**nyu**  12:4

**o**

**o**  4:2 14:10,14
33:6
**oath**  4:10,11
**object**  38:9 40:15
40:22
**objections**  4:14
8:10
**obligation**  33:3
49:14
**obtained**  45:2
**obviate**  40:8
**occurrence**  32:9
**october**  33:19
34:3 35:11,16
36:20 54:5,8
**office**  6:3,4
**officer**  14:17
**official**  13:6
**okay**  9:24 25:2,20
27:19 41:2 46:5
47:7 51:12
**old**  9:15
**once**  23:22 31:19
32:3,5
**ones**  17:19 24:21
52:18,19
**online**  52:19
**opening**  27:15
**operate**  18:8
**operational**  48:6
**opportunities**  19:5
21:15,18 30:2,15
49:12,14 50:9,23
**opposed**  39:7
**opps**  50:6 51:19
**order**  47:10
**org**  15:15 16:4

**organization**  15:9
16:5 53:11
**original**  50:25
51:3
**outcome**  55:19
**outlines**  16:12
**outside**  40:17
**overlap**  12:12
**oversees**  13:7
**owned**  19:12 22:2
22:2,12,12
**owning**  19:8
**owns**  19:11

**p**

**p**  3:2,2 4:2
**p.m.**  1:14 4:3
52:24
**pace**  31:24
**page**  10:24 11:6
15:11 19:24,24
20:7,16,24 24:7
25:3,13 26:5,8,10
26:21 27:14,18,22
27:25 28:3 29:25
30:2,6 42:12
52:22 53:4,8,12
53:13,13 57:4,7
57:10,13,16,19
**pages**  10:11 11:2
23:18 24:6,9,14
25:22 27:2,10,22
28:11,19 29:12,19
30:10 33:20 35:12
47:13 49:21 53:10
53:17,20,23 54:3
54:6,8,11,13
**paragraph**  24:3
27:15
**part**  13:5,11,12
23:10 27:6 31:9
39:13 46:18

**participate** 29:15
30:13 50:10
**participated** 28:14
28:15
**participating** 4:4
**particular** 34:23
44:7 51:6
**parties** 4:12 26:25
55:16
**party** 40:16
**pass** 46:6
**patrick** 33:5,8,18
34:2,11 35:10,15
36:3,5,19,21
38:14,22 41:25
43:2,15,20 54:4,7
**pause** 11:14 15:7
20:13 24:15 25:5
25:10,14,17,19,23
26:7,9,11 27:24
28:2,4,25 29:4,6,8
29:24 30:4 34:6
35:9 42:18 46:5
48:19,23
**pending** 8:6
**people** 6:12 16:5
18:8 47:23 50:3
**percent** 19:9
**perfect** 12:24
**perjury** 5:9
**persistent** 21:2
**person** 4:11 23:6
43:16,21 50:22
**personally** 30:18
41:8
**phone** 7:2,3 43:14
43:17
**phrase** 15:15
17:21
**physically** 4:6 6:8

**pick** 43:5
**picture** 21:8,11
37:8
**piece** 47:6
**place** 6:5,6
**placement** 30:24
44:9,22,23 45:5
51:23
**plain** 17:19
**plaintiff** 1:5 3:3
4:23 5:18 46:9
**pleadings** 39:14
**please** 4:16 5:7
7:22 13:21 14:9
25:9,16,18 26:10
40:25
**plowing** 19:17
**point** 30:21
**policies** 21:23
32:20 49:16
**portfolio** 14:6
**position** 11:22
**possession** 32:25
**potential** 34:12,14
41:14 43:9,11
**powerpoint** 17:15
**practiced** 12:5
**predominantly**
22:2,12
**prepared** 11:12
**preparing** 41:3
**present** 4:6,20
**preserved** 8:12
**press** 8:21
**pretty** 32:8 42:25
**previously** 23:16
27:8 28:17,22
29:17 53:15,18,21
54:2
**price** 49:10,15

**prior** 40:11 50:11
**privately** 12:5
**privilege** 8:11
13:21 38:10
**proceed** 5:14
**process** 21:20
**processing** 48:6
**produced** 34:2
**production** 26:4
**professionals**
22:13
**profitability** 21:2
**pronouncing**
47:20
**pronunciation**
45:12
**proposed** 43:4
44:3
**protected** 38:25
40:13 41:5
**provide** 22:6
**provided** 15:3
42:20 44:5
**public** 1:23 2:7
46:11 55:7,24
58:19
**publicly** 32:18
46:13
**purchase** 23:17,24
24:19 26:16,23
27:9 28:9,18
29:10,18 30:7
49:10,14 53:15,18
53:21 54:2
**purchasers** 27:2
**purported** 24:7
**purports** 24:12
26:20
**pursuant** 2:5 8:8
**put** 22:19

**q**

**qualified** 40:4
**quasi** 13:3
**question** 7:21,24
8:6,11 18:2 21:16
24:9 26:18,19,22
28:7,8 31:8 40:8
40:17,24 51:13
**questions** 13:13
13:18 19:17 37:15
37:22 40:6 42:14
43:19 46:8 47:3
52:2,5,8
**quickly** 7:15 37:16
45:23

**r**

**r** 3:2 4:2 14:10
20:6 53:5 55:2
57:3,3
**raise** 5:6 43:10
**rare** 32:8
**read** 16:16 24:16
37:24 52:12 56:9
58:5
**reading** 15:18
35:17
**reads** 19:15
**real** 46:2
**realtime** 55:6
**reason** 32:3 56:11
57:6,9,12,15,18
57:21
**recall** 19:12 33:16
34:16,21 35:19,22
43:6 44:8,21
45:17,18,22
**receipt** 56:18
**receive** 32:17
46:19

**received** 10:20 40:12 41:5
**receiving** 32:19 35:19,25 41:8
**recipient** 47:24
**recognize** 15:20 20:7,14 24:11 34:4,7,9
**record** 4:19 15:22 41:19 52:18 55:13
**records** 36:15
**refer** 12:21 13:4 15:25 16:5 20:18 20:19 50:7
**referenced** 56:6
**referred** 38:25
**referring** 20:21 21:5 41:21
**refers** 21:3 50:8 51:20
**reflected** 19:14
**regarding** 42:3 44:7 49:12
**related** 6:24 55:16
**relationship** 16:3
**relative** 5:24
**relevantly** 19:4
**remember** 22:25 30:20 34:23 39:3 43:24 44:16,24 45:6,14 50:24 51:2,4
**remote** 1:10
**remotely** 4:8,12 4:20
**report** 14:16 37:12
**reported** 1:22
**reporter** 2:6 4:16 5:6,14 10:8 55:6

**reporting** 4:8,15
**represent** 5:21 20:3 24:5,23 37:22
**representative** 39:22,24
**represented** 15:14 42:14
**representing** 4:23 24:18 52:17
**represents** 27:5
**request** 30:24 31:3 31:10,12,14 45:8 50:25 51:3
**requested** 44:9
**requesting** 50:5 51:18
**require** 49:16
**required** 58:13
**respect** 12:24 33:15 40:6
**responded** 36:21
**restate** 40:24
**restricted** 32:21 32:23,24 34:25
**restriction** 36:5,10 36:17,25
**restrictions** 36:13
**results** 32:20
**return** 56:13,17
**review** 56:7
**richard** 1:11 2:1,2 3:1 4:1 5:1,15 6:1 7:1 8:1 9:1 10:1 11:1 12:1 13:1 14:1 15:1 16:1 17:1 18:1 19:1 20:1 21:1 22:1 23:1 24:1 25:1 26:1 27:1 28:1 29:1 30:1 31:1

32:1 33:1 34:1 35:1 36:1 37:1 38:1 39:1 40:1 41:1 42:1 43:1 44:1 45:1 46:1 47:1 48:1 49:1 50:1 51:1 52:1 53:1 54:1 55:1,9
**rick** 13:14 24:24 33:19 34:2 35:11 39:6,18,20 49:19 49:25 54:5,7,12 56:5 57:2,24 58:2 58:4,12
**right** 5:7 6:9 8:19 10:4,23 11:16 13:15 14:12,24 15:8 16:15,23 19:17,19,23 23:15 23:21 36:20 38:18 43:14 44:12 47:10 51:21 52:16,16
**road** 3:4
**role** 13:3 48:10
**room** 4:7 6:9
**ropes** 12:6
**roth** 14:8,10 21:7
**row** 21:8,11
**royal** 16:20 17:10 18:15

---

**s**

**s** 3:2 4:2 53:7 57:3
**sailboat** 20:16
**sander** 14:17,19 14:21
**saratoga** 55:4
**saturday** 34:3
**saw** 37:8
**says** 9:4 41:14
**sblack** 3:19 56:2

**school** 12:3
**scope** 40:18,21
**scott** 3:15 5:3 6:3 10:2,25 13:7,20 14:20 15:3 25:25 38:7 56:1
**scott's** 15:19 38:8
**screen** 6:13,22 7:4 9:15 10:4,6 15:8 19:23 23:22 47:18
**scroll** 20:11 24:13 25:8,13 34:5 41:25 42:8 48:17
**scrolled** 27:21
**scrolling** 17:2 20:13 24:15 25:3 25:5,10,14,17,19 25:23 26:7,9,11 27:24 28:2,4,25 29:4,6,8,24 30:4 34:6 35:9 48:19 48:20,23
**second** 15:5 18:4 21:8 28:3 29:25
**seconds** 25:22
**section** 21:2
**securities** 23:17 23:24 24:19 26:16 26:23 27:9 28:9 28:18 29:9,18 30:7 53:15,18,21 54:2
**see** 6:24 7:3 10:14 11:8,10 20:15 24:2 26:14 38:24
**seeing** 39:3
**seek** 7:25
**seeking** 46:15
**seen** 39:6,17 40:3
**send** 42:7,8 49:18

**senior** 11:20,21
**sense** 7:22
**sent** 24:20 37:4
  39:13 56:14
**separate** 13:6
**served** 40:16
**set** 55:11,21
**shah** 47:12,20,25
  48:4 54:10
**shallowford** 3:4
**share** 9:4,7,10,13
  9:15 10:5 15:8
  19:23 23:22
**shared** 9:7
**sharing** 10:7
  19:20 52:20
**sheet** 56:11
**shilpi** 47:12,20,25
  48:4 54:10
**short** 8:4
**shot** 16:10 47:18
**show** 8:24 15:3
  22:17 32:10 33:23
  35:3,6 36:15
  42:12 46:23 47:9
  47:16 49:24
**shows** 16:2,6
**sign** 52:12 56:12
**signature** 23:3
  24:7,14 25:21
  27:22 28:11 30:10
  55:23
**signatures** 29:12
**signed** 37:6 56:20
**significance** 46:14
**significant** 32:4
**silent** 14:11
**similar** 48:10
**single** 40:2
**situation** 18:22
  34:24 45:24

**situations** 34:18
**skip** 11:2
**slash** 20:4
**software** 6:24
**solutions** 2:4
  56:23
**somebody** 30:22
**soon** 35:4 42:8
**sorry** 7:11 22:9
  45:11
**sort** 13:6 48:9
**source** 33:3
**sources** 16:17
**speaking** 38:6
  39:18 45:4,10
**specific** 12:20
**specifically** 45:14
**spell** 14:9
**spoken** 33:11
**square** 17:4
**ss** 55:3
**start** 5:23 18:15
  23:21 35:8
**starting** 27:21
  36:20
**state** 1:23 2:7
  15:22 50:4 55:3,7
  55:24
**statement** 51:17
**states** 1:2
**stickered** 9:9
**stickering** 9:22
**stickers** 9:21
**stipulations** 4:18
**stock** 46:13
**stop** 19:20 26:6
**strategy** 15:10,16
  53:12
**structure** 15:11,16
  53:12

**structures** 43:11
**studied** 20:9
**stuw** 18:19,20
**subject** 33:2 35:16
  36:12
**subpoena** 8:9,23
  10:10,15,21 40:17
  40:19,21 53:9
**subscribed** 58:14
**successor** 21:3
**suggest** 51:5
**suite** 3:5,10
**sure** 6:21 14:5
  16:9 22:24 37:18
  52:15,21
**swear** 5:8
**switch** 29:22
**sworn** 5:15 55:11
  58:14
**syndicate** 48:8

**t**

**t** 14:10 53:7 55:2,2
  55:5,24 57:3,3
**tail** 39:2 40:13
  41:6
**tails** 16:13
**take** 14:3 18:18
  24:8 35:18 36:5
  36:10 38:9
**talked** 21:18 43:10
  43:13 45:19 50:22
**talking** 22:22 51:4
  51:5
**team** 13:5 30:23
  48:4,9 49:20 50:2
  54:12
**tech** 19:5 21:14,18
  30:2,15 49:12,13
  50:5,9,23 51:19
**teleconference** 2:3

**tell** 5:16 6:4 7:23
  15:18 22:20 23:2
  23:7 48:20
**terms** 34:12,14
  40:21 43:11 44:3
  45:5,24 46:20
**testified** 5:16
**testify** 11:13 39:10
**testimony** 5:9 7:9
  41:23 44:8 55:13
  56:9,18 58:8
**texas** 3:11
**text** 30:5 42:25
**thank** 10:9 14:11
  41:12 42:10 47:4
  52:10,23
**thanks** 37:18
**thing** 7:20 16:14
  17:12 27:16,20
  28:24 50:11
**things** 23:5,12
  42:12
**think** 8:21 9:10
  11:3 15:24 17:7
  40:4 43:8 44:2
  45:22,23 46:17
  49:13
**third** 3:17 28:5
**thoughts** 38:19
**thousand** 14:25
**threat** 5:9
**three** 16:12,16,22
  17:3 37:3 52:7
**time** 6:19,19 8:5
  8:12 13:11,12
  20:15,24 22:17
  31:10 34:25 43:16
  56:19
**timeframe** 56:8
**title** 11:19

**today** 5:10 7:9
 11:10 40:11 41:4
**today's** 19:4
**told** 36:24 43:8
 44:24
**top** 14:4 16:11
 18:18 20:17 21:8
 29:7 33:16 41:15
 48:22
**topic** 12:8 44:7
**topics** 11:7,13
 40:18
**traded** 32:18
 46:13
**trading** 6:11 23:9
 32:24 36:13
**training** 23:13
**transaction** 27:5
 28:15 29:15 30:13
 30:17,19 43:4
 51:6
**transactions** 31:21
 32:5
**transcript** 56:6,20
 58:5,8
**tried** 51:11
**true** 7:8 18:14
 19:3 37:3 49:7
 51:8 55:13 58:8
**truth** 5:10,11,12
 5:16
**try** 7:23 12:19,23
**trying** 49:8
**turn** 7:4
**two** 14:6 17:4
 28:10 32:4 45:13
**types** 21:25
**typically** 34:16
 42:20 45:10

**u**

**uh** 7:18
**underlying** 42:25
**underscore** 20:5,5
**understand** 16:9
 16:25
**understanding**
 16:19 18:16 31:11
 38:5,11,13 39:9
**understood** 8:7
**united** 1:2
**use** 9:15 30:25
 44:10
**usually** 42:12 45:9

**v**

**v** 1:6 14:14 56:4
 57:1 58:1
**varies** 31:23
**various** 13:17 16:3
 41:17
**verification** 49:16
**verify** 49:9 56:9
**veritext** 2:4 56:14
 56:23
**veritext.com.**
 56:15
**versus** 16:4
**videoconference**
 1:12
**videotape** 2:2
**view** 9:11 31:6
**virtually** 2:3

**w**

**waive** 4:14
**waived** 8:10
**wall** 32:13 33:14
 35:17,23,24
**want** 5:22 11:2
 12:11 16:9 22:23
 24:10,16 25:6

 34:20 37:15,16
 40:23 44:17
**wanted** 45:20
**way** 18:23 34:21
 38:19 50:18 55:18
**we've** 31:16
**web** 19:24 20:7
 53:13
**website** 37:9
**weigh** 22:4
**went** 17:12
**whereof** 55:20
**white** 16:13 17:17
**wholly** 22:12
**wider** 17:3
**william** 3:12 4:24
**william.akins** 3:12
**willing** 52:4
**wire** 16:2,2 49:9
 49:17
**witness** 3:14 5:13
 8:25 9:3,12,17
 23:10 25:2,8,12
 25:15,18,20 26:5
 26:8,10,13 27:19
 28:6 40:25 46:6
 49:7 53:4 55:10
 55:14,20 56:8,10
 56:12,19
**wonderful** 10:19
 19:16
**word** 51:22
**words** 44:18
**work** 13:2,12,16
 15:5 38:16 39:14
**worked** 43:16
**working** 44:25
 45:3 49:3
**works** 48:4,8
**worth** 12:17

**write** 13:24

**x**

**x** 1:4,9 53:3,7
**xi0541** 2:6

**y**

**y** 14:14
**yeah** 14:12 24:23
 32:8 50:20
**year** 31:20,20,22
 32:4,5,5
**years** 12:10 23:13
**yoav** 14:8,14,16
**york** 1:23 2:8 3:18
 6:4 55:3,8,24

**z**

**zach** 47:11,19 48:8
 54:9
**zero** 52:9
**zoom** 1:12 2:3
 6:20,23
**zooming** 25:13

Federal Rules of Civil Procedure

Rule 30

(e) Review By the Witness; Changes.

(1) Review; Statement of Changes. On request by the deponent or a party before the deposition is completed, the deponent must be allowed 30 days after being notified by the officer that the transcript or recording is available in which:

(A) to review the transcript or recording; and

(B) if there are changes in form or substance, to sign a statement listing the changes and the reasons for making them.

(2) Changes Indicated in the Officer's Certificate. The officer must note in the certificate prescribed by Rule 30(f)(1) whether a review was requested and, if so, must attach any changes the deponent makes during the 30-day period.

DISCLAIMER:  THE FOREGOING FEDERAL PROCEDURE RULES ARE PROVIDED FOR INFORMATIONAL PURPOSES ONLY. THE ABOVE RULES ARE CURRENT AS OF APRIL 1, 2019.  PLEASE REFER TO THE APPLICABLE FEDERAL RULES OF CIVIL PROCEDURE FOR UP-TO-DATE INFORMATION.

VERITEXT LEGAL SOLUTIONS
COMPANY CERTIFICATE AND DISCLOSURE STATEMENT

Veritext Legal Solutions represents that the
foregoing transcript is a true, correct and complete
transcript of the colloquies, questions and answers
as submitted by the court reporter. Veritext Legal
Solutions further represents that the attached
exhibits, if any, are true, correct and complete
documents as submitted by the court reporter and/or
attorneys in relation to this deposition and that
the documents were processed in accordance with
our litigation support and production standards.

Veritext Legal Solutions is committed to maintaining
the confidentiality of client and witness information,
in accordance with the regulations promulgated under
the Health Insurance Portability and Accountability
Act (HIPAA), as amended with respect to protected
health information and the Gramm-Leach-Bliley Act, as
amended, with respect to Personally Identifiable
Information (PII). Physical transcripts and exhibits
are managed under strict facility and personnel access
controls. Electronic files of documents are stored
in encrypted form and are transmitted in an encrypted
fashion to authenticated parties who are permitted to
access the material. Our data is hosted in a Tier 4
SSAE 16 certified facility.

Veritext Legal Solutions complies with all federal and
State regulations with respect to the provision of
court reporting services, and maintains its neutrality
and independence regardless of relationship or the
financial outcome of any litigation. Veritext requires
adherence to the foregoing professional and ethical
standards from all of its subcontractors in their
independent contractor agreements.

Inquiries about Veritext Legal Solutions'
confidentiality and security policies and practices
should be directed to Veritext's Client Services
Associates indicated on the cover of this document or
at www.veritext.com.