**THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| FT GLOBAL CAPITAL, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:21-cv-00594-JPB |
| | ) | |
| FUTURE FINTECH GROUP, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**DEFENDANT'S RESPONSE AND OBJECTIONS TO**
**PLAINTIFF'S STATEMENT OF ADDITIONAL FACTS**

In accordance with this Court's Local Rule 56.1, Defendant Future FinTech
Group, Inc. ("Defendant" or "Future FinTech" or the "Company") files its Response
and Objections to the "Statement of Additional Facts" filed by Plaintiff FT Global
Capital, Inc. ("Plaintiff" or "FT Global").

**RESPONSE AND OBJECTIONS**

| Statement of Additional Facts | The Company's Response/Objection |
|---|---|
| 1.      On July 27, 2020, FT Global and Future Fintech executed the PAA. The PAA had been negotiated between FT Global and Future Fintech and their respective counsel. | Undisputed solely for purposes of the pending summary judgment motion. |
| 2.      The PAA provided that FT Global would use its "reasonable best | Undisputed solely for purposes of the pending summary judgment motion. |

| | |
|---|---|
| efforts" to raise capital for Future Fintech. | |
| 3.     Future Fintech Group is a publicly-traded corporation incorporated in the State of Florida. Its stock is traded on the NASDAQ Stock Market under the ticker FTFT. | Objection under LR 56.1(B)(3)(c) that the statement is not material to the issues in dispute in the pending summary judgment motion. |
| 4.     Future Fintech's business headquarters is, and was at the time of the underlying events, located at 1177 Avenue of the Americas, Suite 5100, New York, New York, 10036. | Objection under LR 56.1(B)(3)(c) that the statement is not material to the issues in dispute in the pending summary judgment motion. |
| 5.     Mr. Shanchun Huang is Future Fintech's Chief Executive Officer. | Undisputed solely for purposes of the pending summary judgment motion. |
| 6.     Historically, Future Fintech engaged in the production and sale of fruit juice concentrates and fruit juice in the People's Republic of China under the corporate name "Sky People Fruit Juice, Inc." | Objection under LR 56.1(B)(3)(c) that the statement is not material to the issues in dispute in the pending summary judgment motion. |
| 7.     In 2017, Defendant changed its name to Future Fintech Group, Inc. | Objection under LR 56.1(B)(3)(c) that the statement is not material to the issues in dispute in the pending summary judgment motion. |
| 8.     Defendant's Form 10-K as of fiscal year 2020 states that the Company is "a real-name blockchain based e-commerce platform, supply chain financing services and trading business and financial technology business." | Objection under LR 56.1(B)(3)(c) that the statement is not material to the issues in dispute in the pending summary judgment motion. |
| 9.     As of fiscal year 2019, Defendant reported nominal annual | Objection under Local Rule 56.1(B)(3) (b) that the respondent's evidence does not support the respondent's fact |

| | |
|---|---|
| revenues of $449,989 and a net loss of over $27 million. | insofar as the 2019 annual revenue was $941,117, and the gross profit was $449,989. |
| 10.    Defendant had filed a shelf Registration Statement to raise equity capital with the SEC in May 2018, and at the time FT Global was engaged in July 2020, the SEC had still not declared the filing effective. | Undisputed solely for purposes of the pending summary judgment motion. |
| 11.    As a result, FT Global could only raise capital by placing unregistered securities with sophisticated investors, often hedge funds, in what is commonly referred to as a Private Investment in Public Equity, or "PIPE," financing. | Undisputed solely for purposes of the pending summary judgment motion. |
| 12.    A PIPE financing refers to a placement in which investment funds buy unregistered securities, i.e., shares that cannot be sold in the public markets, with the expectation that the company will later register them. | Undisputed solely for purposes of the pending summary judgment motion. |
| 13.    At the time of the PAA, Defendant had been largely unable to raise equity capital since changing its name in 2017. | Objection under Local Rule 56.1(B)(3)(a) due to lack of knowledge under Federal Rule of Evidence 602. The Company had been able to raise equity capital multiple times after 2017, even in June 2020, before the engagement of FT Global (i.e., Securities Purchase Agreement Between the Company and Qun Xie dated June 16, 2020 and Exchange Agreements to exchange convertible notes for shares of common stock of the Company on June 10, 2020, April |

| | |
|---|---|
| | 17, 2020, March 11, 2020, and January 15, 2020.<br><br>Objection under Local Rule 56.1(B)(3)(b) that the statement is not supported by the cited evidence and under subsection (c) that the statements are not material. |
| 14.    The Placement Agent Fee under the PAA is computed as follows:<br><br>As compensation for the Placement Agent's services hereunder, the Company shall pay to the Placement Agent a cash placement fee upon each Closing, in an amount equal to ten percent (10%) of the aggregate offering price of the total amount of capital received by the Company from the sale of its Securities during the term of this Agreement (the "Placement Agent Fee"). | Undisputed solely for purposes of the pending summary judgment motion. |
| 15.    Under the PAA, FT Global might also be entitled to a Placement Agent Fee from a financing during the twelve months after the conclusion of the PAA's term:<br><br>The Placement Agent shall be entitled to a Placement Agent Fee,  calculated in  the  manner  provided  in Section 1(A), with respect to any public or private offering or other financing or capital-raising transaction of any kind | Undisputed solely for purposes of the pending summary judgment motion. |

| | |
|---|---|
| ("Tail Financing") to the extent that such financing or capital is provided to the Company by investors whom the Placement Agent had introduced to the Company during the Term or investors "wall-crossed" by the Placement Agent in connection with the Placement, if such Tail Financing is consummated at any time within the 12-month period following the termination of this Agreement (the "Tail Period"), provided that, at the request of the Company or within 10 days after termination of this Agreement. Placement Agent shall provide a written list of such investors Placement Agent had introduced or "wall-crossed" to the Company during the Term. | |
| 16.     FT Global's task under the PAA was to serve as placement agent. | Undisputed solely for purposes of the pending summary judgment motion. |
| 17.     FT Global's principal responsibility was to seek to raise capital for Future Fintech using its network of institutional investors. | Undisputed solely for purposes of the pending summary judgment motion. |
| 18.     FT Global has served as placement agent in many transactions, including both registered direct offerings and PIPE transactions. | Undisputed solely for purposes of the pending summary judgment motion. |
| 19.     Under the PAA, the identities of the investors that FT Global introduced to the Company was confidential and proprietary information. | Objection under LR 56.1(B)(3)(c) that the statement is not material to the issues in dispute in the pending summary judgment motion. |

| | Objection under Local Rule 56.1(B)(3)(b) that the respondent's evidence does not support the respondent's fact. Entity names are not confidential or proprietary. Some of the entities named on the Tail List had already invested in the Company in 2017 and held warrants in the Company from 2017 – 2020. |
|---|---|
| 20.    Between July 28 and October 28, 2020, FT Global spoke with many hedge funds about Future Fintech, introducing them to its new blockchain business. | Objection under Local Rule 56.1(B)(3)(a) due to the statement being conclusory. Conclusory allegations have no probative value unless supported by specific facts. *Leigh v. Warner Bros., Inc.*, 212 F.3d 1210, 1217 (11th Cir. 2000).<br><br>As a result of the statement being conclusory, further objection under Local Rule 56.1(B)(3) (b) that the respondent's evidence does not support the respondent's fact. |
| 21.    FT Global also "wall-crossed" several institutional regarding a potential transaction with Future Fintech. | Objection under Local Rule 56.1(B)(3)(a) due to the statement being conclusory. Conclusory allegations have no probative value unless supported by specific facts. *Leigh v. Warner Bros., Inc.*, 212 F.3d 1210, 1217 (11th Cir. 2000).<br><br>Objection under Local Rule 56.1(B)(3)(b) that the respondent's evidence is conclusory and thus does not support the respondent's fact. FT Global |

| | |
|---|---|
| | "wall-crossed" only L1 Capital "to the Company." |
| 22.   In each case, FT Global communicated with an investment manager empowered to make investment decisions for one or more funds under its control. | Objection under Local Rule 56.1(B)(3)(a) due to the statement being conclusory.  Conclusory allegations have no probative value unless supported by specific facts. *Leigh v. Warner Bros., Inc.*, 212 F.3d 1210, 1217 (11th Cir. 2000).<br><br>Objection under Local Rule 56.1(B)(3)(b) that the respondent's evidence is conclusory and thus does not support the respondent's fact. |
| 23.   "Introduce" and "wall cross" have specific meanings in the securities placement trade. | Objection under Local Rule 56.1(B)(3)(a) due to the statement being conclusory.  Conclusory allegations have no probative value unless supported by specific facts. *Leigh v. Warner Bros., Inc.*, 212 F.3d 1210, 1217 (11th Cir. 2000).<br><br>Objection under Local Rule 56.1(B)(3)(b) that the respondent's evidence is conclusory and thus does not support the respondent's fact. |
| 24.   "Introduce" means to show a company seeking an investment to a potential investor. | Objection under Local Rule 56.1(B)(3)(a) due to the statement being conclusory.  Conclusory allegations have no probative value unless supported by specific facts. *Leigh v. Warner Bros., Inc.*, 212 F.3d 1210, 1217 (11th Cir. 2000). |

| | Objection under Local Rule 56.1(B)(3)(b) that the respondent's evidence is conclusory and thus does not support the respondent's fact. |
|---|---|
| 25.    "Wall-cross" means to share material non-public information about a company, commonly known as "MNPI," with an investor, as a result of which the investor becomes unable to buy and sell shares of that company in the public markets before the transaction becomes public. | Objection under Local Rule 56.1(B)(3)(a) due to the statement being conclusory.  Conclusory allegations have no probative value unless supported by specific facts. *Leigh v. Warner Bros., Inc.*, 212 F.3d 1210, 1217 (11th Cir. 2000). <br><br> Objection under Local Rule 56.1(B)(3)(b) that the respondent's evidence is conclusory and thus does not support the respondent's fact. |
| 26.    The MNPI that FT Global typically shares with potential investors, whether for a PIPE transaction or a registered direct transaction, consists of details regarding a potential investment, such as amounts, timing, and price points. | Objection under Local Rule 56.1(B)(3)(a) due to the statement being conclusory.  Conclusory allegations have no probative value unless supported by specific facts. *Leigh v. Warner Bros., Inc.*, 212 F.3d 1210, 1217 (11th Cir. 2000). <br><br> Objection under Local Rule 56.1(B)(3)(b) that the respondent's evidence is conclusory and thus does not support the respondent's fact. |
| 27.    Under the PAA, "wall-cross[ing] to the Company" means to provide MNPI regarding a potential investment in Future Fintech, as a result of which the potential investor commits not to trade in Future Fintech's securities. | Objection under Local Rule 56.1(B)(3)(a) due to the statement being conclusory.  Conclusory allegations have no probative value unless supported by specific facts. *Leigh v. Warner Bros., Inc.*, 212 F.3d 1210, 1217 (11th Cir. 2000). |

| | |
|---|---|
| | Objection under Local Rule 56.1(B)(3)(b) that the respondent's evidence is conclusory and thus does not support the respondent's fact. |
| 28.    During the engagement, FT Global spent many hours negotiating possible term sheets. | Objection under Local Rule 56.1(B)(3)(a) due to the statement being conclusory.  Conclusory allegations have no probative value unless supported by specific facts. *Leigh v. Warner Bros., Inc.*, 212 F.3d 1210, 1217 (11th Cir. 2000).<br><br>Objection under Local Rule 56.1(B)(3)(b) that the respondent's evidence is conclusory and thus does not support the respondent's fact. |
| 29.    FT Global submitted to Future Fintech a $5 million term sheet from L1 Capital. | Undisputed solely for purposes of the pending summary judgment motion, but requires clarification: FT Global failed to have L1 accept multiple counteroffers from the Company during the term of the PAA and did not meet its obligations to successfully complete a transaction for the Company. |
| 30.    After the PAA concluded, FT Global submitted a $5 million term sheet from Ayrton Capital and a $6 million term sheet from Ll Capital. Both term sheets involved notes convertible into common stock, which would be registered at a later time. | Objection under LR 56.1(B)(3)(c) that the statement is not material to the issues in dispute in the pending summary judgment motion.    Those events occurred after the expiration of the PAA and those entities are not at issue here. |
| 31.    Future Fintech declined to pursue these offers. | Objection under LR 56.1(B)(3)(c) that the statement is not material to the |

| | issues in dispute in the pending summary judgment motion.   And because this statement references "these offers" in No. 30, the Company incorporates its response to No. 30. |
|---|---|
| 32.    FT Global brought Future Fintech to the attention of both Amin Nathoo of Anson Funds Management ("Anson") and Richard Allison of Hudson Bay Capital Management ("Hudson Bay") during FT Global's engagement. | Undisputed solely for purposes of the pending summary judgment motion. |
| 33.    FT Global wall-crossed Hudson Bay and Anson to Future Fintech within the term of the engagement. | Objection under Local Rule 56.1(B)(3)(a) due to the statement being conclusory.  Conclusory allegations have no probative value unless supported by specific facts. *Leigh v. Warner Bros., Inc.*, 212 F.3d 1210, 1217 (11th Cir. 2000).<br><br>Objection under Local Rule 56.1(B)(3)(b) that the respondent's evidence is conclusory and thus does not support the respondent's fact. |
| 34.    FT Global sent Anson an inquiry to wall-cross Mr. Nathoo about Future Fintech, and wall-crossed him over the phone shortly thereafter, sometime in August 2020. | Objection under Local Rule 56.1(B)(3)(a) due to the statement being conclusory.  Conclusory allegations have no probative value unless supported by specific facts. *Leigh v. Warner Bros., Inc.*, 212 F.3d 1210, 1217 (11th Cir. 2000).<br><br>Objection under Local Rule 56.1(B)(3)(b) that the respondent's evidence is |

| | |
|---|---|
| | conclusory and thus does not support the respondent's fact. |
| 35.        On October 24, 2020, FT Global sent Hudson Bay an email memorializing the wall-cross and a sample term sheet with proposed terms for an investment into Future Fintech. | Objection under Local Rule 56.1(B)(3)(b) that the respondent's evidence does not support the respondent's fact. |
| 36.        On November 2, 2020, four days after the engagement ended, FT Global sent Future Fintech a "Tail List" pursuant to Section 1(C) of the PAA. | Objection under Local Rule 56.1(B)(3)(b) that the respondent's evidence does not support the respondent's fact. The Company disputes that the document qualified as a valid "Tail List" pursuant to Section 1(C) of the PAA because it included investors who were not introduced or "wall-crossed to the Company" and otherwise expanded what was permissible under the PAA. |
| 37.        The Tail List identified the investors by reference to an investment manager and "its affiliates," i.e., the family of investment vehicles that it managed.  Many of the potential investors that FT Global contacted for Future Fintech operated a family of hedge funds, all managed by the same investment advisor. | Objection under Local Rule 56.1(B)(3)(a) due to the statement being conclusory.  Conclusory allegations have no probative value unless supported by specific facts. *Leigh v. Warner Bros., Inc.*, 212 F.3d 1210, 1217 (11th Cir. 2000).  Moreover, this statement is based on facts not in the record – namely, that the Tail List identified each entity as an "investment manager" or "the family of investment vehicles that it managed" or "family of hedge funds, all managed by the same investment advisor" when it clearly did not state any of those concepts.  It named entities and then purported to expand "investors" to |

| | include "and its affiliates."  The Company refers the Court to the Tail List itself.<br><br>Objection under Local Rule 56.1(B)(3)(b) that the respondent's evidence is conclusory and thus does not support the respondent's fact. |
|---|---|
| 38.     The Tail List included "Anson Funds Management and its affiliates" and "Hudson Bay Capital Management and its affiliates." | Undisputed solely for purposes of the pending summary judgment motion. |
| 39.     Hudson Bay Capital Management is, according to its public filings, a registered investment advisor with more than $5 billion in assets held in a variety of private investment entities, all of which it controls. | Objection under Local Rule 56.1(B)(3)(a) due to the statement being conclusory.  Conclusory allegations have no probative value unless supported by specific facts. *Leigh v. Warner Bros., Inc.*, 212 F.3d 1210, 1217 (11th Cir. 2000).<br><br>Objection under Local Rule 56.1(B)(3)(b) that the respondent's evidence is conclusory and thus does not support the respondent's fact. |
| 40.     According to its public filings, Anson Funds Management manages over $1 billion through a family of three or more private investment funds. | Objection under Local Rule 56.1(B)(3)(a) due to the statement being conclusory.  Conclusory allegations have no probative value unless supported by specific facts. *Leigh v. Warner Bros., Inc.*, 212 F.3d 1210, 1217 (11th Cir. 2000).<br><br>Objection under Local Rule 56.1(B)(3)(b) that the respondent's evidence is |

| | |
|---|---|
| | conclusory and thus does not support the respondent's fact. |
| 41.      Future Fintech accepted FT Global's Tail List without challenge or dispute. | Objection under Local Rule 56.1(B)(3)(a) due to the statement being conclusory.  Conclusory allegations have no probative value unless supported by specific facts. *Leigh v. Warner Bros., Inc.*, 212 F.3d 1210, 1217 (11th Cir. 2000).<br><br>Objection under Local Rule 56.1(B)(3)(b) that the respondent's evidence is conclusory and thus does not support the respondent's fact.<br><br>The Company received an email from Patrick Ko of FT Global but never accepted the Tail List. |
| 42.      Future Fintech has never stated to FT Global that it rejected the use of the term "affiliates." | Objection under Local Rule 56.1(B)(3)(b) that the respondent's evidence does not support the respondent's fact.  The assumption made by FT Global is that without an explicit rejection of the use of "affiliates," FT Global was free to amend the PAA despite the PAA having expired and despite the explicit requirement that any amendment must have been in accordance with the amendment provision in the PAA.  The PAA did not permit post-expiration amendment by silence, as FT Global advocates. |
| 43.      Future Fintech never sent FT Global any written communication challenging the Tail List. | Objection under Local Rule 56.1(B)(3)(b) that the respondent's evidence does not support the respondent's fact.  The |

| | assumption made by FT Global is that without an explicit rejection of the use of "affiliates," FT Global was free to amend the PAA despite the PAA having expired and despite the explicit requirement that any amendment must have been in accordance with the amendment provision in the PAA.  The PAA did not permit post-expiration amendment by silence, as FT Global advocates. |
|---|---|
| 44.      On December 11, 2020, the SEC declared Future Fintech's shelf registration statement effective, enabling it to sell up to $80 million of its shares in the public markets. | Undisputed solely for purposes of the pending summary judgment motion. |
| 45.      On December 13, 2020, Future Fintech sent the entire contents of the Tail List to Alliance Global Partners ("AGP"), asking it not to obtain investments from the listed investors. Future Fintech's email contained no instruction to disregard "and its affiliates." ECF No. 35-5. | Objection under Local Rule 56.1(B)(3)(a) and (b) that the respondent's evidence is conclusory and thus does not support the respondent's fact.  The email speaks for itself and shows that only the entity names and FT Global's addition of "and its affiliates" was sent to AGP. The Tail List is a stand-alone document that contains "contents" that were not shared with AGP in that email.  Again, this email did not change the plain language of the then-expired PAA. |
| 46.      The next day, Future Fintech engaged AGP as a placement agent. | Undisputed solely for purposes of the pending summary judgment motion. |
| 47.      AGP testified that it only solicited three potential investors. | Undisputed solely for purposes of the pending summary judgment motion. |

| | |
|---|---|
| 48. Two of these solicitations were to representatives of Anson and Hudson Bay. | Objection under Local Rule 56.1(B)(3)(b) that the respondent's evidence does not support the respondent's fact. |
| 49. With Alliance Global Partners ("AGP") acting as placement agent, Future Fintech signed a Securities Purchase Agreement (a "Subscription Agreement") on December 24, 2020. | Undisputed solely for purposes of the pending summary judgment motion. |
| 50. The placement was announced December 28, 2020 on a Form 8-K filed with the SEC. | Undisputed solely for purposes of the pending summary judgment motion. |
| 51. The names of the investors were not publicly disclosed in any SEC filing or elsewhere. | Undisputed solely for purposes of the pending summary judgment motion. |
| 52. The subscribing entities in this transaction were A&T SPV LLC ("A&T SPV") and Tech Opportunities LLC ("Tech Opportunities"). | Undisputed solely for purposes of the pending summary judgment motion. |
| 53. Future Fintech and its lawyers received an email on December 29, 2020, from AGP indicating that its two investors were "Anson" and "Hudson." | Objection under Local Rule 56.1(B)(3)(a) due to the statement being conclusory. Conclusory allegations have no probative value unless supported by specific facts. *Leigh v. Warner Bros., Inc.*, 212 F.3d 1210, 1217 (11th Cir. 2000).<br><br>Objection under Local Rule 56.1(B)(3)(b) that the respondent's evidence is conclusory and thus does not support the respondent's fact. More specifically, AGP testified that its employee who sent an email to the Company with those entity names recalled that email within seconds of sending it. (Ex. 38 at 106:25-107:13). |

| | |
|---|---|
| 54. Defendant executed three additional Subscription Agreements with A&T SPV and Tech Opportunities. | Undisputed solely for purposes of the pending summary judgment motion. |
| 55. The names of the subscribing entities were not publicly disclosed, in any SEC filing or elsewhere. | Undisputed solely for purposes of the pending summary judgment motion. |
| 56. The three additional transactions closed January 14, 2021, February 11, 2021, and April 1, 2021. | Undisputed solely for purposes of the pending summary judgment motion. |
| 57. FT Global only learned the identity of the subscribing entities, A&T SPV and Tech Opportunities, through discovery in this action. | Objection under Local Rule 56.1(B)(3)(b) that the respondent's does not support the respondent's fact. |
| 58. The address on the subscription page for A&T SPV was also the address for Anson at the time. | Undisputed solely for purposes of the pending summary judgment motion. |
| 59. The signatory on the Subscription Agreement for A&T SPV was Bruce Winson, the founder and Chairman of Anson; the contact email given was that of Amin Nathoo. | Undisputed solely for purposes of the pending summary judgment motion. |
| 60. Mr. Nathoo appears as a "principal" on Anson's webpage. | Undisputed solely for purposes of the pending summary judgment motion. |
| 61. Mr. Winson and Mr. Nathoo made the decision for A&T to invest in Future Fintech. | Undisputed solely for purposes of the pending summary judgment motion. |
| 62. A&T SPV is a wholly-owned subsidiary of Anson Investment Master Fund, the flagship investment fund managed by Anson. | Objection under Local Rule 56.1(B)(3)(b) that the respondent's evidence does not support the respondent's fact. |
| 63. The signatory for Tech Opportunities was George | Undisputed solely for purposes of the pending summary judgment motion. |

| | |
|---|---|
| Antonopoulos, a managing partner and portfolio manager at Hudson Bay. | |
| 64.     A simple internet search would have identified him as a principal at Hudson Bay. | Objection under Local Rule 56.1(B)(3)(a) due to the statement being speculative and conclusory. Conclusory allegations have no probative value unless supported by specific facts. *Leigh v. Warner Bros., Inc.*, 212 F.3d 1210, 1217 (11th Cir. 2000).<br><br>Objection under Local Rule 56.1(B)(3)(b) that the respondent's does not support the respondent's fact. |
| 65.     The address for Tech Opportunities is also the address for Hudson Bay's New York City office. | Undisputed solely for purposes of the pending summary judgment motion. |
| 66.     Hudson Bay made the decision for Tech Opportunities to invest in Future Fintech, and Hudson Bay controls Tech Opportunities. | Objection under Local Rule 56.1(B)(3)(b) that the respondent's does not support the respondent's fact. |
| 67.     Hudson Bay confirmed that "Hudson Bay or its affiliate" invested in Future Fintech. | Undisputed insofar as an "affiliate" invested; disputed under Local Rule 56.1(B)(3) that the respondent's evidence does not support the respondent's fact insofar as intended to show that Hudson Bay invested in the Company. |
| 68.     AGP negotiated the investment with Richard Allison at Hudson Bay. | Objection under Local Rule 56.1(B)(3)(b) that the respondent's evidence does not support the respondent's fact. |
| 69.     AGP asked Hudson Bay to invest through an entity that did not reveal Hudson Bay's name. | Objection under Local Rule 56.1(B)(3)(b) that the respondent's evidence does not support the respondent's fact. |

| | |
|---|---|
| 70.      AGP negotiated the investment with Amin Nathoo. | Objection under Local Rule 56.1(B)(3)(b) that the respondent's evidence does not support the respondent's fact. |
| 71.      A simple internet or LinkedIn search would have identified Mr. Nathoo as a principal at Anson. | Objection under Local Rule 56.1(B)(3)(a) due to the statement being speculative and conclusory. Conclusory allegations have no probative value unless supported by specific facts. *Leigh v. Warner Bros., Inc.*, 212 F.3d 1210, 1217 (11th Cir. 2000).<br><br>Objection under Local Rule 56.1(B)(3)(b) that the respondent's evidence does not support the respondent's fact. |
| 72.      Mr. Ko spoke to Mr. Nathoo in August 2020, introducing him Future Fintech's new business to Anson and seeking to wall-cross him. | Objection under Local Rule 56.1(B)(3)(b) that the respondent's evidence does not support the respondent's fact. |
| 73.      AGP asked Anson to invest through an entity that did not reveal Anson's name and to keep Anson's name off deal documentation. | Objection under Local Rule 56.1(B)(3)(b) that the respondent's evidence does not support the respondent's fact. |
| 74.      Mr. Nathoo decided to use A&T SPV as the vehicle for that reason. | Undisputed solely for purposes of the pending summary judgment motion. |
| 75.      FT Global learned through contacts in the industry that the investors on the Tail List were subscribing for Future Fintech shares using names intended to disguise their affiliation with the investment advisor. | Objection under Local Rule 56.1(B)(3)(b) that the respondent's does not support the respondent's fact.  FT Global stated that it did not learn the names until discovery commenced in this case. |

| 76.     After the first transaction was announced, Mr. Ko and Mr. Huang spoke over the phone. | Undisputed solely for purposes of the pending summary judgment motion. |
|---|---|
| 77.     Mr. Ko told Mr. Huang that certain investors in his recent transaction had been on the Tail List. | Undisputed solely for purposes of the pending summary judgment motion. |
| 78.     Mr. Ko does not remember Mr. Huang asking him about the identities of the investors. | Objection under Local Rule 56.1(B)(3)(a) due to the statement being conclusory.  Conclusory allegations have no probative value unless supported by specific facts. *Leigh v. Warner Bros., Inc.*, 212 F.3d 1210, 1217 (11th Cir. 2000). |
| 79.     On January 12, 2021 Mr. Ko sent AGP a cease and desist letter. | Undisputed solely for purposes of the pending summary judgment motion. |
| 80.     The letter advised that "FTFT and your organization deliberately conspired to undertake surreptitious measure to purposefully conceal the fact that FTFT was consummating the subject transactions with protected investors in a bad faith and fraudulent effort to circumvent FTFT's contractual duty to pay FT Global the Placement Agent Fee under the transaction." | Undisputed solely for purposes of the pending summary judgment motion. |
| 81.     FTFT was aware of this letter through its attorneys. | Undisputed solely for purposes of the pending summary judgment motion. |
| 82.     FTFT did nothing other than looking at the names of the two subscribing entities to determine whether they were on the Tail List. | Objection under Local Rule 56.1(B)(3)(b) that the respondent's does not support the respondent's fact. |
| 83.     FT Global would never have agreed to serve as placement agent if | Objection under Local Rule 56.1(B)(3)(a) due to the statement |

| | |
|---|---|
| "investors" under the PAA meant only one entity and could not include that entity's affiliates. | being conclusory.  Conclusory allegations have no probative value unless supported by specific facts. *Leigh v. Warner Bros., Inc.*, 212 F.3d 1210, 1217 (11th Cir. 2000).  Moreover, the PAA is FT Global's own standard document.  FT Global's position in this statement indicates that there never was a meeting of the minds and thus the PAA was never a valid contract to begin with.  "O.C.G.A. §§ 13-3-1 and 13-3-2 provide that a contract is not complete and enforceable until there is a meeting of the minds as to all essential terms." *Peace v. Dominy Holdings*, 554 S.E.2d 314, 315 (Ga. App. 2001). |

Respectfully submitted,

FISHERBROYLES, LLP

*/s/ Diem N. Kaelber*
Diem N. Kaelber
Georgia Bar No. 0087155
(Also barred in California, Florida, and Ohio)

*Attorneys for Defendant*
*Future FinTech Group, Inc.*

Mail: 21081 Canyon View Drive
Saratoga, CA 95070
(408) 898-3170 (Office)
(866) 414-5083 (Facsimile)
diem.kaelber@fisherbroyles.com

20

**THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| FT GLOBAL CAPITAL, INC., | ) | |
| | ) | |
| FT Global, | ) | |
| | ) | |
| v. | ) | Civil Case No. 1:21-cv-00594-JPB |
| | ) | |
| FUTURE FINTECH GROUP, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

---

## LR 7.1(D) CERTIFICATE OF FONT COMPLIANCE

I hereby certify that the foregoing has been prepared with one of the font and point selections approved by the Court in Local Rule 5.1(C), Northern District of Georgia, specifically Times New Roman 14 point.

/s/ Diem N. Kaelber
Diem N. Kaelber

21

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the foregoing *Defendant's Response and Objections to Plaintiff's Statement of Additional Facts* was filed electronically on November 16, 2022.  Notice of this filing will be sent by operation of the Court's electronic filing system upon the following counsel of record:

> Eric Lang
> The Lang Legal Group, LLC
> 2566 Shallowford Road, Suite 104, No. 230
> Atlanta, Georgia 30345
>
> Thomas J. Fleming
> Jacqueline Y. Ma
> Olshan Frome Wolosky LLP
> 1325 Avenue of the Americas
> New York, New York 10019
>
> Matthew H. Schwartz
> Schwartz Law Center, LLC
> 2985 Gordy Parkway
> Suite 550
> Marietta, Georgia 30066

Respectfully submitted,

FISHERBROYLES, LLP

*/s/ Diem N. Kaelber*
Diem N. Kaelber

Georgia Bar No. 0087155
(Also barred in California, Florida,
and Ohio)

*Attorneys for Future FinTech*
*Future FinTech Group, Inc.*

Mail: 21081 Canyon View Drive
Saratoga, CA 95070
(408) 898-3170 (Office)
(866) 414-5083 (Facsimile)
diem.kaelber@fisherbroyles.com