**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| FT GLOBAL CAPITAL, INC., | |
| Plaintiff, | |
| v. | Case No. 1:21-cv-00594-JPB |
| FUTURE FINTECH GROUP, INC., | |
| Defendant. | |

## [JOINT] PROPOSED COURT'S INSTRUCTIONS TO THE JURY

### Request for Charge 1

**(From the Eleventh Circuit Pattern, 3.1, Introduction)**

**Introduction**

Members of the jury:

It's my duty to instruct you on the rules of law that you must use in deciding this case.

When I have finished you will go to the jury room and begin your discussions, sometimes called deliberations.

1

**Request to Charge 2**

**(From the Eleventh Circuit Pattern, 3.2.2)**

**The Duty to Follow Instructions – Corporate Party Involved**

Your decision must be based only on the evidence presented here. You must not be influenced in any way by either sympathy for or prejudice against anyone.

You must follow the law as I explain it – even if you do not agree with the law – and you must follow all of my instructions as a whole. You must not single out or disregard any of the instructions on the law.

The fact that a corporation is involved as a party must not affect your decision in any way. A corporation and all other persons stand equal before the law and must be dealt with as equals in a court of justice. When a corporation is involved, of course, it may act only through people as its employees; and, in general, a corporation is responsible under the law for the acts and statements of its employees that are made within the scope of their duties as employees of the company.

**Request to Charge 3**

**(From Eleventh Circuit Pattern, 3.3)**

**Consideration of Direct and Circumstantial Evidence; Argument of Counsel; Comments by the Court**

As I said before, you must consider only the evidence that I have admitted in the case. Evidence includes the testimony of witnesses and the exhibits admitted. But, anything the lawyers say is not evidence and isn't binding on you.

You shouldn't assume from anything I've said that I have any opinion about any factual issue in this case. Except for my instructions to you on the law, you should disregard anything I may have said during the trial in arriving at your own decision about the facts.

Your own recollection and interpretation of the evidence is what matters.

In considering the evidence you may use reasoning and common sense to make deductions and reach conclusions. You shouldn't be concerned about whether the evidence is direct or circumstantial.

"Direct evidence" is the testimony of a person who asserts that he or she has actual knowledge of a fact, such as an eyewitness.

"Circumstantial evidence" is proof of a chain of facts and circumstances that tend to prove or disprove a fact. There's no legal difference in the weight you may give to either direct or circumstantial evidence.

**Request to Charge 4**

**(From Eleventh Circuit Pattern, 3.4)**

**Credibility of Witnesses**

When I say you must consider all the evidence, I don't mean that you must accept all the evidence as true or accurate. You should decide whether you believe what each witness had to say, and how important that testimony was. In making that decision you may believe or disbelieve any witness, in whole or in part. The number of witnesses testifying concerning a particular point doesn't necessarily matter.

To decide whether you believe any witness I suggest that you ask yourself a few questions:

1. Did the witness impress you as one who was telling the truth?

2. Did the witness have any particular reason not to tell the truth?

3. Did the witness have a personal interest in the outcome of the case?

4. Did the witness seem to have a good memory?

5. Did the witness have the opportunity and ability to accurately observe the things he or she testified about?

6. Did the witness appear to understand the questions clearly and answer them directly?

7. Did the witness's testimony differ from other testimony or other evidence?

## **Request For Jury Charge 5**

### **Admissions**

An admission is a statement by a party that tends to aid the opposing party. All admissions shall be carefully considered.

Authority

O.C.G.A. § 24-5-53

Counsel of Superior Court Judges, Georgia Pattern Jury Instruction 02.170

**<u>Request for Charge 6</u>**

**(From Eleventh Circuit Pattern, 3.5.1)**

**Impeachment of Witnesses Because of Inconsistent Statements**

You should also ask yourself whether there was evidence that a witness testified falsely about an important fact. And ask whether there was evidence that at some other time a witness said or did something, or didn't say or do something, that was different from the testimony the witness gave during this trial.

But keep in mind that a simple mistake doesn't mean a witness wasn't telling the truth as he or she remembers it. People naturally tend to forget some things or remember them inaccurately. So, if a witness misstated something, you must decide whether it was because of an innocent lapse in memory or an intentional deception. The significance of your decision may depend on whether the misstatement is about an important fact or about an unimportant detail.

6

**<u>Request for Charge 7</u>**

**(From O'Malley, Federal Jury Practice and Instructions, § 105:02 (2023 Update))**

**Use of Depositions as Evidence**

During the trial, certain testimony has been presented by way of deposition. The deposition consisted of sworn, recorded answers to questions asked of the witnesses in advance of trial by the attorneys for the parties to this case. The testimony of a witness who, for some reason, is not present to testify to the same consideration as is to be judge as to credibility, and weighed, and otherwise considered by you, insofar as possible, in the same way as if the witness had been present and had testified from the witness stand.

**Request for Charge 8**

**Responsibility for Proof – Plaintiff's Claim[s], Cross Claims, Counterclaims – Preponderance of the Evidence**

**(From Eleventh Circuit Pattern, 3.7.1)**

In this case it is the responsibility of the [Plaintiff] to prove every essential part of [its] claim[s] by a "preponderance of the evidence." This is sometimes called the "burden of proof" or the "burden of persuasion."

A "preponderance of the evidence" simply means an amount of evidence that is enough to persuade you that [the Plaintiff's] claim is more likely true than not true.

If the proof fails to establish any essential part of a claim or contention by a preponderance of the evidence, you should find against the [Plaintiff].

When more than one claim is involved, you should consider each claim separately.

In deciding whether any fact has been proved by a preponderance of the evidence, you may consider the testimony of all of the witnesses, regardless of who may have called them, and all of the exhibits received in evidence, regardless of who may have produced them.

If the proof fails to establish any essential part of [the Plaintiff's] claim[s] by a preponderance of the evidence, you should find for the [Defendant] as to that claim.

**Request for Charge 9**

Contracts: Definition

I will now explain the elements of Plaintiff FT Global Capital's first claim, for breach of contract.  A contract is an agreement between two or more parties for the doing or not doing of some specified thing.

**Authority:**

O.C.G.A. § 13-1-1

Council of Superior Ct. Judges, Georgia Suggested Jury Pattern Instructions, 16.010 (2022 ed.)

**Request for Charge 10**

Contracts: Essentials

To constitute a lawful contract, there must be parties able to contract, consideration for the contract, the agreement of the parties to the contract, and a lawful subject matter. In this case, the plaintiff and defendant both agree that they entered into a lawful binding contract on July 28, 2020, the "Placement Agent Agreement," identified as Joint Exhibit [2].

**Authority:**

O.C.G.A. § 13-1-1

Council of Super. Ct. Judges, Georgia Suggested Jury Pattern Instructions, § 16.02

10

**Request for Charge 11**

Contracts: Definition of Breach

A breach of contract is defined as the nonperformance without legal excuse by a party to the contract of an act the contract obligated them to perform. To prevail on its claim for breach of contract, FT Global Capital must prove each of the following elements by a preponderance of the evidence:

- A valid contract existed between FT Global Capital and Future FinTech;

- FT Global Capital performed the contract according to its terms;

- Future FinTech breached the contract by not paying fees that FT Global was entitled to receive according to the contract's terms;

- FT Global Capital suffered damages as a result of Future FinTech's breach, because it did not receive the money it was due.

**Authority:**

*Kuritzky v. Emory Univ.*, 669 S.E. 2d 179, 181 (Ga. Ct. App. 2008)

*UWork.com, Inc. v. Paragon Techs. Inc.*, 740 S.E.2d 887, 893 (Ga. Ct. App. 2013)

*Clark's Super Gas, Inc. v. Tri-State Sys., Inc.*, 200 S.E.2d 472, 473 (Ga. Ct. App. 1973)

**Request for Charge 12**

Contract Interpretation

*The parties agree on the following language. Additional disputed proposed language for Charge 12 appears in the Appendix.*

The parties in this case dispute the meaning of certain words in the Placement Agent Agreement.  You must attempt to determine what the parties intended these words to mean at the time they entered the Placement Agent Agreement. In determining the meaning of contractual terms, you may examine the language of the contract. You may also look to the parties' conduct before the dispute arose.

**<u>Request for Charge 13</u>**

*<u>The parties agree on the following language. Defendant proposes additional language for Charge 13, which Plaintiff opposes, and which appears in the Appendix.</u>*

<u>Notice Condition</u>

Section 1(C) of the Placement Agent Agreement states, in relevant part, that FT Global Capital would be entitled to a placement-agent fee with respect to capital-raising transactions made by investors whom FT Global Capital had introduced or wall-crossed, "provided that at the request of the Company or within 10 days after termination of this Agreement, Placement Agent shall provide a written list of such investors Placement Agent had introduced or 'wall-crossed' to the Company during the Term."

## **Request for Charge 14**

**Implied Covenant**

### ***The parties dispute the substance of the Request for Charge 14 (Implied Covenant of Good Faith and Fair Dealing)***

*Plaintiff seeks an instruction regarding the second cause of action, breach of the covenant of good faith and fair dealing, which Defendant opposes. Defendant has also offered a proposed instruction, in case the Court decides to include a charge on the implied covenant claim.*

**Request for Charge 15**
**(From Eleventh Circuit Pattern, 3.7.2)**

**Responsibility for Proof – Affirmative Defense, Preponderance of the Evidence**

In this case, the [Defendant], asserts the affirmative defense[s] of estoppel. Even if the [Plaintiff] proves [its] claim[s] by a preponderance of the evidence, the [Defendant] can prevail in this case if [it] proves an affirmative defense by a preponderance of the evidence.

[When more than one affirmative defense is involved, you should consider each one separately.]

I caution you that the [Defendant] does not have to disprove the [Plaintiff's] claim[s], but if the [Defendant] raises an affirmative defense, the only way [it] can prevail on that specific defense is if [it] proves that defense by a preponderance of the evidence.

15

**Request for Charge 16**

Affirmative Defense: Estoppel

*Plaintiff objects to the inclusion of a charge on estoppel, which Defendant seeks. The dispute is explained in the Appendix.*

**<u>Request for Charge 17</u>**

*<u>The parties agree on the following language regarding damages. Plaintiff has presented one additional proposed instruction in the Appendix, which Defendant opposes.</u>*

<u>Damages</u>

Damages are given as compensation for injury sustained.

Damages recoverable for a breach of contract are those that arise naturally and according to the usual course of things from the breach, and such as the parties contemplated when the contract was made as a probable result of the breach.

<u>Authority:</u>

O.C.G.A. §§ 13-6-1, 13-6-2, 13-6-7

Council of Super. Ct. Judges, Georgia Suggested Jury Pattern Instructions, 18.010

**Request for Charge 18**

Interest: O.C.G.A. § 13-6-13

I will now instruct you on the law concerning pre-judgment interest. Under the law, the fact-finder may increase the amount of damages at the date of breach of contract by the addition of legal interest from that time until the time of recovery. The legal rate of interest is 7% per year.

If you decide such interest should be awarded, the Court will calculate the interest due.

Authority:

O.C.G.A. §§ 13-6-13, 7-4-15, 7-4-2(a)(1)(A)

Council of Superior Court Judges, Georgia Suggested Pattern Jury Instructions 18.040

18

**Request for Charge 19**

Attorneys' Fees under O.C.G.A. § 13-6-11

I will now instruct you on the law concerning the Plaintiff's claim for attorneys' fees. Generally, the expenses of litigation are not allowed as a part of damages. However, if a party has acted in bad faith, or has been stubbornly litigious or has caused the other party unnecessary trouble and expenses, you may allow them.


Authority:

O.C.G.A. § 13-6-11

Suggested Pattern Jury Instructions 18.020

19

**Request for Charge 20**

**<u>Bad Faith</u>**

Under Georgia law, "bad faith" means bad purpose, bad intent, and bad state of knowledge or desire.  Examples of bad faith conduct can include: acting dishonestly, willfully breaching an agreement based on ulterior motives and not an honest mistake; directing or participating in fraud; and consciously refusing to take any action to remedy a harm despite having notice of that harm.

*Authority:*

*Smith v. Maples*, 151 S.E.2d 815, 815-16 (Ga. Ct. App. 1966).

*St. Holmes v. St. Holmes*, 312 S.E. 2d 370 (Ga. Ct. App. 1983) (bad faith shown when defendant willfully breached an agreement with ulterior motives not prompted by an honest mistake as to the defendant's rights or duties under the agreement).

*City of Warner Robins v. Holt*, 469 S.E.2d 759 (Ga. Ct. App. 1996) (evidence existed that city acted in bad faith because it failed to take remedial measures to protect plaintiff's property despite notice of harm).

*CSX Transp. Inc. v. West*, 523 S.E.2d 63 (Ga. Ct. App. 1999) (evidence existed of bad faith where defendant refused to maintain drainage control around the defendant's rails despite knowledge that the property flooded as a result, because defendant consciously refused to take action to alleviate damage being caused to plaintiff's property), *overruled on other grounds*.

20

**Request for Charge 21**

**<u>Attorneys' Fees if Bad Faith is Not Found</u>**

Should you find that Defendant Future Fintech did not act in bad faith but has been stubbornly litigious or has caused FT Global Capital unnecessary expense with respect to the contractual claims, you may award FT Global the expenses of litigation, including reasonable attorney's fees. A party is stubbornly litigious when there is no valid reason for refusing to pay a claim, and it has taken a so-sue-me attitude.

If, however, you find that a bona fide controversy or reasonable defense existed as to Future Fintech's obligation to pay FT Global, then FT Global is not entitled to recover its expense of litigation and attorneys' fees.

<u>Authority:</u>

O.C.G.A. § 13-6-11

*U-Haul Co. of W. Ga. v. Ford*, 320 S.E.2d 868, 871 (Ga. Ct. App. 1984) ("The court stated that it deplored the 'so sue me' attitude of such defendants, who have no valid reason for refusing to pay a claim, and held that the recovery of attorney fees was authorized. We find no error in the court's ruling.").

*S. Ry. Co. v. Crowe*, 366 S.E.2d 846, 849 (Ga. Ct. App. 1988) ("'The evidence here shows 'that there existed no bona fide controversy as to appellant's *liability,* but rather that appellant was merely "stonewalling," as contemporary idiom has it—that is, that appellant was attempting to utilize what this court has denominated "the 'so sue me' ploy."'") (quoting *Thompson Enters. v. Coskrey*, 308 S.E.2d 399, 402 (Ga. Ct. App. 1983)).

**Request for Charge 22**

**(From Eleventh Circuit Pattern, 3.8.1)**

**<u>Duty to Deliberate When Only the Plaintiff Claims Damages</u>**

Of course, the fact that I have given you instructions concerning the issue of Plaintiff's damages should not be interpreted in any way as an indication that I believe that the Plaintiff should, or should not, prevail in this case.

Your verdict must be unanimous – in other words, you must all agree. Your deliberations are secret, and you'll never have to explain your verdict to anyone.

Each of you must decide the case for yourself, but only after fully considering the evidence with the other jurors. So you must discuss the case with one another and try to reach an agreement. While you're discussing the case, don't hesitate to reexamine your own opinion and change your mind if you become convinced that you were wrong. But don't give up your honest beliefs just because others think differently or because you simply want to get the case over with.

Remember that, in a very real way, you're judges – judges of the facts. Your only interest is to seek the truth from the evidence in the case.

**Request for Charge 23**

**(From Eleventh Circuit Pattern, 3.9)**

**Election of Foreperson, Explanation of Verdict Form[s])**

When you get to the jury room, choose one of your members to act as foreperson. The foreperson will direct your deliberations and speak for you in court.

A verdict form has been prepared for your convenience.

[Explain verdict]

Take the verdict form with you to the jury room. When you've all agreed on the verdict, your foreperson must fill in the form, sign it and date it. Then you'll return it to the courtroom.

If you wish to communicate with me at any time, please write down your message or question and give it to the court security officer. The court security officer will bring it to me and I'll respond as promptly as possible – either in writing or by talking to you in the courtroom. Please understand that I may have to talk to the lawyers and the parties before I respond to your question or message, so you should be patient as you await my response. But I caution you not to tell me how many jurors have voted one way or the other at that time. That type of information should remain in the jury room and not be shared with anyone, including me, in your note or question.

APPENDIX: DISPUTED CHARGE LANGUAGE

1. **Charge 12: Contract Interpretation**

   A. **Plaintiff's Proposed Additional Language regarding Contract Interpretation**

   You are to determine the exact meaning of the term "introduce" and "wall-cross" as the parties intended it here.

   You should assume both that the parties intended the disputed terms in their contract to have their plain and ordinary meaning, and that technical words, or "terms of art," have the particular meaning they would have in the art or industry in which they are used.

   In looking to the parties' conduct before the dispute arose, you may take into account a party's silence or inaction. For example, if one party makes a statement to the other showing an interpretation of the meaning of a contract, the latter's silence can indicate agreement or acquiescence.

   In coming to your decision, you should be guided by a few principles. First, I will explain my prior findings.  I have previously found that the term 'introduce,' does not *necessitate* personal contact between Defendant and the investor. I have also previously found that the term "wall-crossing" is a technical term that does not require a personal introduction between a company and a potential investor.

   Second, you should know that someone signing a document has a duty to read it and is bound by the terms of a document he does not read. This is true even

if the signer cannot read it, because in that circumstance the signer has a duty to

procure a reliable person to read and explain it to him.

*Authority*:

O.C.G.A. §§ 13-2-2(2), 13-2-4

*Bellsouth Telecommunications, Inc. v. Nuvox Commc'ns, Inc.*, 2006 WL 2617123, at *18

(N.D. Ga. Sept. 12, 2006) ("Contractual terms [of art] are to be accorded their plain and

ordinary meaning, and technical terms of art are accorded their meaning in the art.")

*Vernon v. Assurance Forensic Acct., LLC*, 774 S.E.2d 197, 205-206 (Ga. Ct. App. 2015)

("[W]here a letter from one party to a contract to the other party showed that the writer

placed a different construction on a contract than did the other party, the latter's silence

was acquiescence in such construction.")

*Jerkins v. Jerkins*, 686 S.E. 2d 324 (Ga. Ct. App. 2009)

*Gill Plumbing Co. v. Jimenez*, 714 S.E.2d 342, 350 (Ga. Ct. App. 2011) (party who

claimed he did not read English and did not understand the contract was still bound by his

signature)

**Plaintiff's basis for proposing the instruction:**  In drafting these instructions,

Plaintiff used the cases cited in Court's order on summary judgment (Dkt. 43) as well as

the opinion itself.  Furthermore, Plaintiff's instruction tracks the language of the statute.

**Defendant's basis for opposing the instruction:  (i)** The Court has not held as a

matter of law that the terms "introduced" and "wall-crossed" have a single plain and

unambiguous meaning. Rather, the Court held that "after reviewing in full the terms of

the PAA, the parties' arguments and the record in this case, the Court concludes that a jury question remains about whether Defendant's conduct constituted a breach of the parties' agreement." (ECF. No. 43 at 22).  In any event, the Court's jury-charge decision is <u>not</u> constrained by any of its prior rulings.  *See Vintilla v. United States*, 931 F.2d 1444, 1447 (11th Cir. 1991).  **(ii)** Plaintiff's proposed charge on "term of art" misleadingly omits the high burden of proof a party asserting an industry-specific meaning must satisfy.  *See* Authority In App'x 1.B.  **(iii)** Plaintiff's proposed charge that "silence can indicate agreement" is unwarranted because Defendant's alleged "silence" came after the contract expired and is not probative parties' intent at the time of formation.

### B.  <u>Defendant's Proposed Additional Language regarding Contract Interpretation</u>

The parties in this case dispute the meaning of contract terms, such as the phrases "investors whom the Placement Agent had introduced to the Company" and "investors 'wall-crossed' by the Placement Agent" that appear in Section 1(C) of the Placement Agent Agreement.  You must attempt to determine what the parties intended the terms of the contract to mean at the time they entered the Placement Agent Agreement.

In determining the meaning of contractual terms, you may examine the language of the contract.  Language used in contracts generally bears its usual and common meaning.

In order for an industry-specific meaning of certain words to become part of a contract, it must be shown that the industry-specific meaning was known to both parties. The burden of proving such industry-specific

meaning is on the party who asserts it. Language should only be interpreted to have industry-specific meaning if a party proves, by a preponderance of the evidence, that a certain industry-specific meaning is so universally known within the relevant industry as to justify the conclusion that it was known by both parties to the contract.

If a contract is capable of being construed in two ways, it will be construed against the preparer and in favor of the non-preparer.  In other words, unclear language must <u>not</u> be interpreted in a way that rewards the party that put the unclear language into the contract.

You may also look to the parties' conduct before the dispute arose for any evidence of what the parties intended to agree upon at the time they entered the contract.

A contract cannot be enforced if its terms are incomplete, incomprehensible, or so vague and indefinite so as to make it impossible to determine what was agreed upon.  If you conclude that the contract's terms are incomplete, incomprehensible, or so vague and indefinite so as to make it impossible to determine what was agreed upon, you must not find any breach of the contract based on such terms.

<u>Authority</u>:

O.C.G.A. § 13-2-2

*All Angles Const. & Demolition, Inc. v. Metro. Atlanta Rapid Transit Auth.*, 539 S.E.2d 831, 833 (Ga. Ct. App. 2000) ("[T]he burden of proving a usage of trade is on the party who asserts it.")

*Lander Motors, Inc. v. Lee Tire & Rubber Co. of N. Y.*, 78 S.E.2d 839, 844 (Ga. Ct. App. 1953) (affirming instruction that "you must determine whether that custom is of such universal practice as to justify the conclusion that it became, by implication, a part of the contract in this case. In other words, did not parties [sic.] to this case understand that the meaning of the word 'seconds' as it was used in this case was that meaning which is contended for by the plaintiff in this case" and noting the question was whether "the parties hereto each had the same understanding").

John K. Larkins, Jr., GEORGIA CONTRACTS: LAW AND LITIGATION § 9:4 (2d ed.) ("In order for a business usage or custom to become part of a contract, it must be shown that it was known to both parties.")

*Ptacek v. Edwards*, 193 S.E.2d 54, 55 (Ga. Ct. App. 1972) ("[T]here was no evidence showing the defendant seller knew of such custom and in the absence of knowledge of the custom on the part of the defendant, there could be no contract made in reference thereto.")

*Dep't of Transp. v. Dalton Paving & Const., Inc.*, 489 S.E.2d 329, 343 (Ga. Ct. App. 1997) (affirming trial court's decision to "instruct[ed] the jury that ambiguous contract terms must be construed against the drafter" because the instruction "was a correct statement of law, and was supported by the evidence presented").

*Fletcher v. C.W. Matthews Contracting Co.*, 746 S.E.2d 230, 232 (Ga. Ct. App. 2013) (recognizing an instruction "that a contract is construed against the drafter" is proper when "the author of the disputed provision" is a party to the contract dispute, as opposed to a third party).

*Hertz Equip. Rental Corp. v. Evans*, 397 S.E.2d 692, 694 (Ga. 1990) ("[I]f a contract is capable of being construed two ways, it will be construed against the preparer and in favor of the non-preparer[.]")

*Langley v. MP Spring Lake, LLC*, 834 S.E.2d 800, 804 (Ga. 2019) ("[W]here there is ambiguity, the agreement will be construed against the drafter and in favor of the non-drafter" as long as "the interpretation put forward by the non-drafting party" is "reasonable[.]")

*Stefano Arts v. Sui*, 690 S.E.2d 197, 201 (Ga. Ct. App. 2010) (contract provision that "fails to specific what Stefano Arts is supposed to do" is unenforceable because an agreement "must be expressed plainly and explicitly enough to show what the parties agree upon[.]")

*Sentinel Ins. Co., Ltd. v. Tropical Smoothie Cafe, LLC*, 2017 WL 5639932, at *4 (N.D. Ga. June 16, 2017) ("A contract cannot be enforced in any form of action if its terms incomplete or incomprehensible.")

*Whitesell Corp. v. Electrolux Home Prod., Inc.*, 2008 WL 11417608, at *7 (S.D. Ga. Oct. 14, 2008) ("[T]he parties—and the Court—are left without a reasonably certain basis for giving an appropriate remedy" when a term in a writing lacks a "a stable or objectively intelligible meaning" or "or a workable definition that clearly identifies [its] scope[.]")

*Jackson v. Williams*, 434 S.E.2d 98, 100–01 (Ga. Ct. App. 1993) ("[T]he first requirement of the law relative to contracts is that there must be a meeting of the minds of the parties" and no enforcement is possible when "the agreement relied upon was so vague, indefinite and uncertain as to make it impossible for courts to determine what, if anything, was agreed upon, therefore rendering it impossible to determine whether there had been performance[.]")

John K. Larkins, Jr., GEORGIA CONTRACTS: LAW AND LITIGATION § 5:1 (2d ed. 2023)

**<u>Defendant's basis for seeking the instruction</u>:**  This charge is proper and necessary, including because it articulates vital contract-law safeguards against "Trojan horse" tactics whereby a party induces its counterparty to sign a contract by drafting it in a manner that masks major hazards or disadvantages.

**<u>Plaintiff's basis for opposing the instruction:</u>** Plaintiff objects to Defendant's proposed instruction as improper, to the extent it tries to resurrect theories that the Court's summary judgment order had put to bed. *See Echo Acceptance Corp. v. Household Retail Servs., Inc.*, 267 F.3d 1068, 1087 (10th Cir. 2001) (district court properly rejected proposed instruction that attempted to resurrect a theory rejected as a matter of law on summary judgment), such as whether "introduce" requires contact between the parties. Defendants continue to claim that the evidence will show that FT Global only introduced one investor, L1 Capital, to FT Global, when the record unambiguously reflects that FT Global introduced several investors.

First, its "contra proferentem" argument fails. While generally, terms in a contract will be construed against the party that drafted them, this is a public policy principle that generally applies to contracts that are drafted by one party, not negotiated contracts. *See, e.g.*, *Davis v. Boyd*, 162 S.E.2d 880, 883 (Ga. Ct. App. 1968) ("Here the printed agreement was drawn up by plaintiff and will be construed against him."); 3 Corbin, Contracts § 559, at 270 (noting that contra proferentem is "chiefly a rule of public policy"). The *contra proferentem* rule's application changes depending on "the degree of sophistication of the contracting parties or the degree to which the contract was negotiated." *11 R. Lord, Williston on Contracts* § 32:12, pp. 788–792 (4th ed. 2012); *see also Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407, 1417 (2019) (noting that "contra proferentem" rule applies "only as a last resort" when the meaning of a provision "remains ambiguous after exhausting the ordinary methods of interpretation," and nothing that "*contra proferentem* seeks ends other than the intent of the parties.")

Here, the evidence will show the fact finder that both parties, standing at arms'-length and advised by counsel, contributed to the drafting of the agreement, which went through multiple drafts. Furthermore, Plaintiff believes adding this instruction will likely confuse the jury.

Second, the instruction regarding industry-specific meanings requiring it to be "so universally known within the relevant industry as to justify the conclusion that it was known by both parties to the contract," will also be misleading because it may be misinterpreted to meant that the parties themselves must be in the industry to understand the term of art.  However, both parties were advised by experienced capital markets

lawyers at well-reputed firms, who would have known the definition of the term of art at issue here, "wall-crossing."

Third, Defendant's proposed instruction will confuse the jury by asking it to consider whether the contract's terms are "incomplete," "incomprehensible," or "so vague and indefinite" that it is impossible to determine what was agreed upon. Defendant has only argued that the term "affiliate" is so vague and indefinite as to be unenforceable, which the Court rejected as a matter of law. Second, these elements were never at issue. The record shows no evidence that the contract is "incomprehensible" or "incomplete." This is a last-minute pivot by Defendant, and Plaintiff also believes this portion of the instruction will confuse the jury.

2. **Charge 13: Notice Condition**

A. <u>**Defendant's Proposed Additional Instruction on Notice Condition**</u>:

You must decide whether the Plaintiff proved, by a preponderance of the evidence, that it complied with the notice provision by giving the Defendant actual notice of the investors FT Global Capital had introduced or "wall-crossed" to the Company during the contract's term. "Actual notice" differs from "inquiry notice." To receive "inquiry notice" of something is to receive information that should cause one to conduct an inquiry that leads one to discover the thing. On the other hand, to receive "actual notice" of something is to be actually informed of the thing, such that one immediately knows it.

If you find that the Plaintiff did not prove that Plaintiff complied with the above contractual provision by giving the Defendant actual notice of the required information, then you must find that the Defendant has not breached the contract.

<u>**Authorities:**</u>

*Clark's Super Gas, Inc. v. Tri-State Sys., Inc.*, 200 S.E.2d 472, 473–74 (Ga. Ct. App. 1973) (plaintiff suing "to recover a balance alleged to be due under a contract" bears the burden to "establish that it complied with the conditions of the contract")

*Irvindale Farms v. W. O. Pierce Dairy*, 51 S.E.2d 712, 721 (Ga. Ct. App. 1949) ("When a plaintiff's right to recover on a contract depends on a condition precedent, to be performed by him, he must allege, and prove the performance of such condition precedent, or allege a sufficient legal excuse for its non-performance")

*APAC-Georgia, Inc. v. Dep't of Transp.*, 472 S.E.2d 97, 99–100 (Ga. Ct. App. 1996) (contractual notice requirements require "actual notice")

*Veolia Water N. Am. Operating Servs. LLC v. City of Atlanta*, No. CIV.A. 1:06CV1457TWT, 2008 WL 5169525, at *5 (N.D. Ga. Dec. 8, 2008) (contractual notice requirements require "actual notice," and "actual notice" means "actual knowledge")

*WW3 Ventures, LLC v. Bank of New York Mellon as Tr. Under Novastar Mortg. Funding Tr. Series 2006-2*, 894 S.E.2d 680, 687–90 (Ga. Ct. App. 2023) (distinguishing actual notice from inquiry notice)

*Newitt v. First Union Nat. Bank*, 607 S.E.2d 188, 194 (Ga. Ct. App. 2004) (acknowledging difference between actual notice and inquiry notice)

*Ventures, Inc. v. QuikTrip Corp.*, 764 S.E.2d 595, 599 (Ga. Ct. App. 2014) (notice requirement requires that "*the relevant information is communicated*")

*Del Lago Ventures, Inc. v. QuikTrip Corp.*, 764 S.E.2d 595, 599 (Ga. Ct. App. 2014) (notice requirement requires that "the relevant information is communicated")

*Wallick v. Period Homes, Ltd.*, 555 S.E.2d 863, 868 (Ga. Ct. App. 2001), *aff'd*, 569 S.E.2d 502 (Ga. 2002) (notice requirement could be met if its "contemplated information" was "specified" in a communication).

John K. Larkins, Jr., GEORGIA CONTRACTS: LAW AND LITIGATION § 9:4 (2d ed.) ("If an obligation is a condition precedent, the consequence of noncompliance is the absence of an enforceable obligation")

**Defendant's basis for seeking the instruction:**  This charge is proper and necessary, including because the contract's phrase "provided that" clearly signals that the Plaintiff's performance of the prescribed notice was a condition precedent to the Defendant's duty to pay.  *See* John K. Larkins, Jr., GEORGIA CONTRACTS: LAW AND LITIGATION § 5:4 (2d ed.).  This makes sense: the obvious purpose of the notice prescribed by Section 1(C) was to ensure Defendant was informed of which investors Plaintiff had introduced or wall-crossed, so that Defendant would know which investors it could not raise capital from without paying Plaintiff millions of dollars.

**Plaintiff's basis for opposing the instruction**:  Putting aside that many of these cases do not regard notice, but regard performance, Defendant now argues that the Tail List was deficient because it "did not specify which of the potential investors [on the List] (if any) were, in fact, introduced," and "did not identify any potential investors who were wall-crossed or make any reference to wall-crossing." Pretrial Order at 35, 36. Plaintiff assumes it means to argue that Defendant had not received adequate "notice" under the contract, and therefore did not comply with its performance obligations.

Plaintiff opposes this additional instruction regarding "actual" versus "inquiry" because of the high risk of confusing the jury. Having now admitted that A&T SPV and Tech Opportunities LLC were on the tail list, Defendant now makes the related argument that Defendant had not gotten "actual notice" because it did not know that the list was a list of introduced or wall-crossed investors. Putting aside that there should be no dispute of fact that the list was a list of introduced or wall-crossed investors pursuant to section 1(c) of the agreement because the Tail List itself references section 1C, Defendant has misstated the law.

"Actual notice" under Georgia law has been stated much differently than: "to be actually informed of the thing, such that one immediately knows it." Instead, Georgia courts regularly hold that "[n]otice requirements must be reasonably construed. The key issue is whether the [Defendant] had actual notice[.]" *APAC-Georgia Inc. v. Dep't of Transp.*, 472 S.E.2d 97 (Ga. Ct. App. 1996). To determine actual notice, plaintiff must present evidence "'in the spirit of' the contract provision, presenting the factfinder with a question of whether that notice was sufficient to reasonably comply with the contract provisions." *Dep't of Transport. v. Dalton Paving & Const., Inc.*, 489 S.E.2d 329 (Ga. Ct.

App. 1997) (quoting *APAC-Georgia, Inc. v. Dep't of Transp.*, 472 S.E.2d 97 (Ga. Ct. App. 1996)).

Furthermore, such a dispute of fact "also presents a jury issue as to whether [Defendant], through its conduct, waived the notice provisions…. Courts will readily seize upon any fact or circumstance growing out of the conduct of the parties, tending to show a waiver of strict compliance[..]" *APAC-Georgia*, 472 S.E.2d, at 100. Here, as the Court has observed, Defendant provided the List to its later placement agent, which reasonable factfinders may find as an endorsement of the entire List.

To the extent that the Court wishes to include language regarding "actual" versus "inquiry" notice in the jury instructions, Plaintiff requests that the Court include the following:

**B.  Plaintiff's Proposed Additional Instruction on Notice Condition:**

Notice requirements must be reasonably construed. The question is whether the Defendant had notice of the Plaintiff's claims. In coming to that determination, you must decide whether Plaintiff acted within the spirit of the contract provision and provided enough notice to reasonably comply with the contract provisions. You may also consider whether Defendant through its actions waived strict compliance with the notice provisions in the Contract.

35

If you find that the Plaintiff did not prove that it gave enough notice to reasonably comply with the contract provisions or did not act within the spirit of the contract provision, then you must determine whether Defendant through its actions waived strict compliance with the notice provisions in the Contract. Only if Plaintiff neither gave enough notice to Defendant *and* Defendant waived strict compliance with the notice requirements in the placement agent agreement, may you find that Plaintiff failed to perform its contractual obligations to give notice.

**Authority:**  *APAC-Georgia Inc. v. Dep't of Transp.*, 472 S.E.2d 97 (Ga. Ct. App. 1996); *Department of Transport. v. Dalton Paving & Const., Inc.*, 489 S.E.2d 329 (Ga. Ct. App. 1997).

3.  **Charge 14: Implied Covenant of Good Faith and Fair Dealing**

A.  <u>**Plaintiff's Proposed Instruction on the Covenant of Good Faith and Fair Dealing**</u>**:**

I will now explain to you the second claim that the Plaintiff has brought, for breach of the implied covenant of good faith and fair dealing.

In addition to the express terms of a contract, the law provides that every contract contains an implied covenant of good faith and fair dealing. This implied covenant means that, even though not specifically stated in the contract, it is implied that each party to the contract must not engage in arbitrary or unreasonable conduct, which has the effect of preventing the other party to the contract from receiving the benefits of their bargain. Proof of a party's acting in bad faith, by engaging in dishonest or fraudulent conduct, also shows a violation of the implied covenant.

In order to prove that there has been a breach of the implied covenant of good faith and fair dealing, the plaintiff must prove to you that the defendant arbitrarily and unreasonably prevented plaintiff from receiving the benefit of its bargain. Plaintiff FT Global claims Defendant Future Fintech acted arbitrarily and unreasonably by evading performance of its tail obligations under the agreement, including failing to keep FT Global's list of investors confidential and failing to pay FT Global as required under section 1(c) of the Placement Agent Agreement. Plaintiff also proves breach of the implied covenant of good faith and fair dealing if you find that it has

shown that Future Fintech acted in bad faith by engaging in dishonest or fraudulent conduct.

If you find that Plaintiff prevails on this implied covenant claim, this means that you also found that Defendant breached the contract. If you find that Defendant prevailed on the implied covenant claim, Plaintiff will also prevail on the breach of contract claim.

Authority:

Georgia Code Ann. § 13-2-2.

*Carmichael v. Gonzalez*, 131 S.E.2d 149 (Ga. Ct. App. 1963)

*Overlook Gardens Props., LLC v. Orix, USA, LP*, 884 S.E.2d 433 (Ga. Ct. App. 2023).

*Time Warner Ent't Co., L.P. v. Six Flags Over Georgia, LLC*, 536 S.E.2d 397 (Ga. Ct. App. 2000) (parties to contract have an implied obligation to conduct themselves in good faith).

*Ahmed v. Air France-KLM*, 165 F. Supp. 3d 1302, 1314 (N.D. Ga. 2016) (evidence of bad faith statements by party representative sufficient to create issues of fact to sustain breach of covenant of good faith and fair dealing),

*Geico Indemnity Co. v. Whiteside*, 857 S.E.2d 654, 660 n.6 (Ga. 2021) ("Essentially, 'the duty of good faith and fair dealing requires a party in a contractual relationship to refrain from arbitrary or unreasonable conduct which has the effect of preventing the other party to the contract from receiving the fruits of the bargain.'").

*Wanna v. Navicent Health, Inc.*, 357 Ga. App. 140 (Ga. Ct. App. 2020).

**Plaintiff's basis for seeking the instruction**:  In addition to the Georgia law cases cited above, this Court has sustained Plaintiff's claim for breach of the implied covenant both on motion to dismiss and summary judgment. While Defendant objects to the inclusion of a claim, because Plaintiff's claim is live, it would be error not to give the jury

an instruction. Furthermore, Plaintiff is not seeking double recovery if it wins on both claims, so there is no prejudice to Defendant.

Plaintiff's proposed instruction illustrates for the jury that the implied covenant is violated when a party engages in arbitrary conduct, unreasonable conduct, or bad faith conduct that interferes with a counterparty's contractual rights.

Furthermore, the implied covenant is not an independent cause of action, and requires an accompanying breach of contract claim. Plaintiff therefore also seeks an instruction that if the jury finds a breach of the implied covenant it has also found a breach of the contract itself.

**Defendant's basis for opposing the instruction:** **(i)** The Court's jury-charge decision is not constrained by its prior rulings. *See Vintilla v. United States*, 931 F.2d 1444, 1447 (11th Cir. 1991); *Peralta v. Dillard*, 744 F.3d 1076, 1088 (9th Cir. 2014); **(ii)** Unlike before, Defendant now acknowledges that Plaintiff would be entitled to the commissions it seeks if Plaintiff proves that it introduced or wall-crossed ***Anson*** and ***Hudson Bay*** and gave the prescribed notice under Section 1(C) of the contract—all ***completely irrespective*** of any differences between Anson and A&T or between Hudson Bay and Tech Opportunities. Thus, it is impossible for the implied covenant to affect Plaintiff's entitlement to the commissions Plaintiff seeks. *See Cent. Baptist Church of Albany Georgia, Inc. v. Church Mut. Ins. Co.*, No. 1:16-CV-231 (LAG), 2022 WL 1076076, at *10 (M.D. Ga. Feb. 25, 2022) ("Under Georgia law, the test of bad faith within the meaning of the law in such cases is as of the time of trial, in the final analysis, and not at the time of refusal to pay upon demand." (cleaned up)); *see also* Authority In

39

App'x 3.B. **(iii)** This charge creates grave risk of prejudice, including because the jury will be "distracted" by "totally irrelevant" accusations of "corrupt motives and collusive behavior," and the jury may fail to grasp that ***"[Plaintiff] trying to point to [Defendant's] bad motives cannot create a breach of contract where none exists*.**" *Endurance Am. Specialty Ins. Co. v. Liberty Mut. Ins. Co.*, 34 F.4th 978, 984 & n.11 (11th Cir. 2022).


### B. <u>Defendant's Proposed\* Instruction on the Covenant of Good Faith and Fair Dealing:</u>

*\*Defendant objects to the jury receiving <u>any</u> instruction regarding the implied covenant of good faith and fair dealing, because the implied-covenant claim is entirely duplicative of the breach-of-contract claim. The following instruction is proposed only in the alternative, in the event that the Court decides to give some such instruction*:

> In addition to the express terms of a contract, the law implies a promise between the parties that they will not do anything to interfere with a party's right to receive the contract's benefits. However, any such implied promise does not obligate either party to take any action that is contrary to the express terms of the contract, and there can be no breach of such an implied promise where the defendant acts in accordance with the express terms of the contract.


<u>**Authority:**</u>

*Alabama Aircraft Indus., Inc. v. Boeing Co.*, No. 20-11141, 2022 WL 433457, at \*17 (11th Cir. Feb. 14, 2022) (approving identical jury instruction)

*Garrett v. Unum Life Ins. Co. of Am.*, 427 F. Supp. 2d 1158, 1162 (M.D. Ga. 2005) ("Although not actionable as an independent cause of action, the implied covenant of

good faith modifies, and becomes part of, the provisions of the contract itself." (cleaned up)).

*Overlook Gardens Properties, LLC v. Orix, USA, LP*, 884 S.E.2d 433, 442 (Ga. Ct. App. 2023) ("The implied covenant of good faith and fair dealing inheres in every contract and requires a party in a contractual relationship to refrain from arbitrary or unreasonable conduct which has the effect of preventing the other party to the contract from receiving the fruits of the bargain. It involves inferring contractual terms to handle developments or contractual gaps that neither party anticipated. And it is not an exception to the rule that courts will not alter the terms of a bargain sophisticated parties entered into willingly because a party now regrets the deal. Hence, the implied covenant does not apply when the subject at issue is expressly covered by the contract." (cleaned up))

*Ihesiaba v. Pelletier*, 448 S.E.2d 920, 923 (Ga. Ct. App. 1994) ("The implied duty of good faith and fair dealing requires both parties to a contract to perform their promises and provide such cooperation as is required for the other party's performance")

*Augustin v. Walker Lake Emergency Grp., PC*, 876 S.E.2d 373, 377 (Ga. Ct. App. 2022) ("there can be no breach of an implied covenant of good faith where a party to a contract has done what the provisions of the contract expressly give him the right to do.")

**Defendant's basis for seeking the instruction:**  Defendant maintains that no

implied-covenant charge should be given.  But, if the Court decides to give such a charge,

Defendant proposes this one because it correctly states Georgia law and would avoid at

least some of the extreme prejudice via distraction and confusion that would result from

Plaintiff's proposed implied-covenant charge.

**Plaintiff's basis for opposing the instruction:** While Plaintiff does not object to

the inclusion of statements conveying that "any implied promise does not obligate either

party to take any action that is contrary to the express terms of the contract," or that

"there can be no breach of such an implied promise where the defendant acts in

accordance with the express terms of the contract," Plaintiff seeks a more detailed

instruction that explains the elements of an implied covenant claim.

41

4. **Charge 18: Estoppel**

   A. **Defendant's Proposed Instruction on Estoppel:**

   A party is "estoped" from exercising its rights in a manner that would result in injustice against another party because the latter party was misled by the former party's deceptive or careless statements, actions, or silence when it had a duty to speak.

   Even if you have found that the Plaintiff has contractual rights to certain payments under the Placement Agent Agreement, granting estoppel will mean that Defendant does not need to make those payments.

   Before an estoppel can arise, Future Fintech must show by a preponderance of the evidence that it has been misled by either some intended deception in the conduct of or by conduct so grossly negligent that it amounted to fraud.

   However, those who seek estoppel must not only be free from fraud but must have acted in good faith and with reasonable diligence. If you find that the Defendant did not act in good faith or with reasonable diligence, then estoppel does not apply to excuse the Defendant from paying the Plaintiff..

Authority

*Balest v. Simmons*, 201 Ga. App. 605, 608, 411 S.E.2d 576, 579 (1991) (estoppel, including estoppel by silence, barred breach of contract claim)

*Claxton v. Adams*, 357 Ga. App. 762, 767, 849 S.E.2d 494, 499 (2020) ("In order for an equitable estoppel to arise, there shall generally be some intended deception in the conduct or declarations of the party to be estopped, or such gross negligence as to amount to constructive fraud, by which another has been misled to his or her injury.")

*Hollifield v. Monte Vista Biblical Gardens, Inc.*, 251 Ga. App. 124, 126, 553 S.E.2d 662, 666 (2001) (estoppel can be based on silence by a party with a duty to speak)

O.C.G.A. § 23-1-10

*Tybrisa Co. v. Tybeeland, Inc.*, 220 Ga. 442, 139 S.E.2d 302 (1964) (a party seeking equitable estoppel must "not only have been free from fraud but must have acted in good faith and reasonable diligence, otherwise no equity will arise in that party's favor");

*Calabro v. State Med. Educ. Bd.*, 640 S.E.2d 581, 583 (2006) ("the party who claims the benefit of an estoppel must not only have been free from fraud in the transaction, but must have acted with good faith and *reasonable diligence;* otherwise, no equity will arise in his favor") (emphasis in original).

*Dodson v. Kern*, 136 Ga. App. 522, 527, 221 S.E.2d 693 (1975) (Mere silence will not work an estoppel. The 'standing by must be under such circumstances as not only to afford an opportunity to speak, but also to create a real or apparent duty to speak.") (finding that the appellant was "a victim of his own negligence").

**Defendant's basis for seeking the instruction:**  This instruction correctly states the law and is warranted by the facts in light of Plaintiff's several false and misleading statements and omissions to Defendant in connection with the contract.

**Plaintiff's basis for opposing the instruction:**  Plaintiff opposes Defendant's instruction on estoppel, because there is no evidence supporting the idea that Defendant is entitled to estoppel here. First, Defendant's cases do not establish that estoppel is a defense to a breach of contract claim. *Balest v. Simmons*, for example, is not a case involving "classic" estoppel case, but a case in which a party was estopped from asserting a legal claim of breach of contract, when that claim was in contravention of a sworn admission in an affidavit filed with the Court.  *Balest v. Simmons*, 411 S.E.2d 576 (Ga. Ct. App. 1991).

Second, "[b]efore an equitable estoppel can arise, 'there must generally be some intended deception in the conduct or declarations of the party to be estopped, or such gross negligence as to amount to constructive fraud, by which another has been misled to his injury.'" Ga. Code Ann. § 24-14-29 (2023).  Defendant has no right to claim estoppel because they have no evidence of intended deception in the conduct of FT Global, or gross negligence. Rather, FT Global both gave Defendant the list of investors, and contacted Defendant as soon as FT Global knew that they had used investors on his list.

Instead, Defendant's articulated argument is that Plaintiff did not perform under the contract, and that it did not give sufficient notice that the list of investors provided was the list of introduced or wall-crossed investors. None of this amounts to gross negligence, much less the intended deception needed to sustain the estoppel argument.

Furthermore, Future Fintech could not have been misled to its injury, as it had superior knowledge—it had the private documentation reflecting names of the investors, which Plaintiff did not have.

**Charge 17: Damages**

**A.** **Plaintiff's Proposed Additional Language on Damages:**

"The same damages are recoverable for breach of the implied covenant of good faith and fair dealing as for the related breach of contract – the plaintiff will not receive double the damages even if he prevails on both claims."

Authority:

*Elliott v. Specialized Loan Servicing, LLC*, No. 1:16-CV-4804-TWT-JKL, 2019 WL 1198760, at *2 (N.D. Ga. Jan. 30, 2019) ("Georgia law prohibits a double recovery by Plaintiff in pursuing alternative theories of relief.")

**Plaintiff's basis for seeking the instruction**: Plaintiff hopes the jury will be instructed that while it has put forward two (related) claims of breach, it does not seek double recovery. That is, it is not looking to be paid twice even if it prevails on both claim 1 (breach of contract) and claim 2 (implied covenant of good faith and fair dealing). (By prevailing on claim 2, Plaintiff must prevail on claim 1 in order to receive damages).

**Defendant's basis for opposing the instruction**:   This language is not designed to avoid nor disclaim double-recovery, which can easily be done other ways.  Instead, this language erroneously and misleadingly fuses bad faith and breach.  It effectively encourages the jury to award Plaintiff millions of dollars that Plaintiff never earned

45

simply to punish the Defendant for alleged bad behavior.  The Eleventh Circuit recently found that this same "distraction method" had "worked with the jury" in another commercial contract dispute, and the Court stressed that "***bad motives cannot create a breach of contract where none exists***."  *Endurance Am. Specialty Ins. Co. v. Liberty Mut. Ins. Co.*, 34 F.4th 978, 984 & n.11 (11th Cir. 2022).  Further, Plaintiff's proposed instruction further confirms that its implied-covenant claim is duplicative of its breach-of-contract claim.

Each of the undersigned counsel for the parties hereby consents to entry of the foregoing jury instructions.

| | |
|---|---|
| */s/ Eric Lang* | */s/ Lea Dearing* |
| Counsel for Plaintiff | Counsel for Defendant |
| | |
| Eric Lang | Lea Dearing |
| Georgia Bar No. 435515 | Georgia Bar No. 922882 |
| LANG LEGAL GROUP, LLC | BERMAN FINK VAN HORN P.C. |
| 2566 Shallowford Road, Suite 104, No. 230 | 3475 Piedmont Road NE, |
| Atlanta, Georgia 30345 | Suite 1640 |
| (404) 384-2591 | Atlanta, GA 30305 |
| elang@langlegal.com | (678) 681-6014 |
| | ldearing@bfvlaw.com |
| */s/ Thomas J. Fleming* | |
| Counsel for Plaintiff | Amiad Kushner |
| | Xintong Zhang |
| Thomas J. Fleming | Ian Weiss |
| Jacqueline Y. Ma | Flora Fei (pro hac vice pending) |
| OLSHAN FROME WOLOSKY LLP | SEIDEN LAW LLP |
| 1325 Avenue of the Americas | 322 8th Avenue, Suite 1200 |
| New York, New York 10019 | New York, NY 10001 |
| (212) 451-2213 | (646) 766-1914 |
| TFleming@Olshanlaw.com | akushner@seidenlaw.com |
| JMa@Olshanlaw.com | |
| | *Attorneys for Defendant Future FinTech Group, Inc.* |

Plaintiff's Proposed Verdict Form (Revised 1-5-2024)

## THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| FT GLOBAL CAPITAL, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:21-cv-00594-JPB |
| | ) | |
| FUTURE FINTECH GROUP, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

### [PROPOSED] Special Verdict Form

**I.**   **Claims 1 and 2: Contract Liability**

### Question 1

Do you find from a preponderance of the evidence that Future Fintech breached its contract and/or breached the covenant of good faith and fair dealing with FT Global Capital, Inc.?

Answer "yes" or "no": _____

If your answer to this question is **no**, this ends your deliberations.

If you answered "yes" to Question 1, you must answer **Question 2.**

48

**<u>Question 2 (Damages)</u>**

What amount of damages (unpaid fees) does Defendant Future Fintech owe Plaintiff FT Global Capital for its breach claims on each of the following capital raises that Future Fintech made during the Tail Period:

December 2020 stock sale:  $_____

Warrant transactions:  $_____

January 2021 stock sale:  $_____

February 2021 stock sale:  $_____

April 2021 stock sale:  $_____

Does FT Global receive pre-judgment interest under Georgia law:

Answer "yes" or "no": _____

49

**II.** **Question 3 (Claim 3: Attorneys' Fees under Georgia Law)**

Do you find from a preponderance of the evidence that Future Fintech has

    **(i)**    acted in bad faith,

    **(ii)**    been stubbornly litigious, or

    **(iii)**    has caused FT Global Capital unnecessary trouble and expense,

such that FT Global Capital is entitled to receive its expenses of

litigation, including reasonable attorneys' fees?

Answer "yes" or "no": \_\_\_\_\_

SO SAY WE ALL

_____
Foreperson

Date: